STATE OF NORTH DAKOTA

COUNTY OF WILLIAMS

IN DISTRICT COURT

NORTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| The Westmoreland Company, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>SE/Z Construction, LLC, KLE Construction, LLC, Xtreme Electric Contractors, LLC, Strata Corporation, American Engineering Testing, Inc., Sandcreek Welding, Inc., The Sherwin-Williams Company,<br><br>Defendants. | Case No. 53-2013-CV-01395<br><br>**SECOND AMENDED COMPLAINT** |

[¶1]    Plaintiff The Westmoreland Company, Inc. ("Westmoreland"), for its Second Amended Complaint against the Defendants, alleges as follows:

### PARTIES

1.      Plaintiff Westmoreland is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of real estate development and leasing, and has its principal office at 200 Randolph Avenue SE, Huntsville, Alabama 35801-4874.

2.      Upon information and belief, Defendant SE/Z Construction, LLC ("SE/Z Construction") is a limited liability company authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of construction contracting, and has its principal office at 705 John Adams Parkway, Idaho Falls, Idaho 83401-4023.

Filed - Clerk of District Court
8/13/2014 5:26:10 PM
Williams County, ND

3.      Upon information and belief, Defendant KLE Construction, LLC ("KLE Construction") is a limited liability company authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of site development, land clearing, and underground utilities construction, and has its principal office at 425 Commercial Street, Mt. Vernon, Washington, PO Box 636, Burlington, Washington 98233-0636.

4.      Upon information and belief, Defendant Xtreme Electric Contractors, LLC ("Xtreme Electric") is a limited liability company authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of electrical contracting, and has its principal office at 5835 Interstate Avenue, Unit D, Billings, Montana 59101-6378.

5.      Upon information and belief, Defendant Strata Corporation ("Strata") is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of providing construction materials and services, and has its principal office at 728 Red Dot Place, PO Box 13500, Grand Forks, North Dakota 58208-3500.

6.      Upon information and belief, Defendant American Engineering Testing, Inc. ("American Engineering") is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of engineering and testing, and has its principal office at 550 Cleveland Avenue North, Saint Paul, Minnesota 55114-1804.

7.      Upon information and belief, Defendant Sandcreek Welding, Inc. ("Sandcreek Welding") is a corporation authorized to transact business in the State of North Dakota, is

2

engaged in the State of North Dakota in the business of welding, and has its principal office at 4598 South Wakerli Avenue, Idaho Falls, Idaho 83406.

8.    Upon information and belief, Defendant The Sherwin-Williams Company ("Sherwin-Williams") is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of selling paint and related products, and has its principal office at 101 West Prospect Avenue, Cleveland, Ohio 44115-1093.

9.    Upon information and belief, Defendant Williams Plumbing & Heating, Inc. ("Williams Plumbing") is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of plumbing and heating, and has its principal office at 2313 4th Ave. W #3, Williston, North Dakota 58801-3426.

10.    Upon information and belief, Defendant Camp Land Surveyors PLLC ("Camp Land Surveyors") is a professional limited liability company authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of professional surveying services, and has its principal office at 10840 HWY 85 N, PO Box 114, Alexander, North Dakota 58831-0114.

11.    Upon information and belief, Defendant Northern Improvement Company ("Northern Improvement") is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of highway heavy construction, and has its principal office at 4000 12th Ave NW, PO Box 2846, Fargo, North Dakota 58108-2846.

12.    Upon information and belief, Defendant Wutke, LLC is a limited liability company authorized to transact business in the State of North Dakota, is engaged in the State

3

of North Dakota in the business of fence installation, and has its principal office at 3465 HWY 93 N, Kalispell, Montana 59901.

13.    Upon information and belief, Defendant Cal-Dak Cabinets, Inc. is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of manufacturing cabinets and millwork, and has its principal office at 2410 30th Ave NW, PO Box 1088, Minot, North Dakota 59702-1088.

14.    Upon information and belief, Defendant Ace Fire Protection, LLC ("Ace Fire Protection") is a limited liability company authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of installation of fire suppression systems, and has its principal office at 2502 Evergreen Rd. N., Fargo, ND 58102-2117.

<u>**BACKGROUND**</u>

15.    On November 30, 2012, Westmoreland and SE/Z Construction entered into an Agreement for Final Design and Construction Services Including a Guaranteed Maximum Cost (Design/Build) ("Contract"), attached to this Complaint as **<u>Exhibit A</u>**. The Contract concerns the construction of a new FedEx Ground Package System facility and related improvements on Lot 4/Block 4 of the Bakken Industrial Park located in Williston, North Dakota 58801 ("Project").

16.    Pursuant to the Contract, SE/Z Construction is an independent general contractor that provides work for Westmoreland and is responsible for the hiring of subcontractors.

17.    Paragraph 11.a. of the Contract provides, in part, that "[a]ll portions of the Work that [SE/Z Construction] has not been accustomed to perform shall be performed under

4

subcontracts." Paragraph 11.b. of the Contract provides, in part, that "[a]ll subcontracts shall conform to the requirements of the [Contract's] General Conditions [for Construction]."

18. Paragraph I.A.2 of the Contract's General Conditions for Construction provides, in part, that "[t]he [Contract] do[es] not and shall not be construed to create any relationship, contractual or otherwise, between [Westmoreland] and any Subcontractor or Sub-subcontractor."

19. Paragraph III.R. of the Contract's General Conditions for Construction, entitled "Lien Indemnification," provides:

> If a notice of a lien, lien, or the like, alleging non-payment should be filed or served upon [Westmoreland] by a contractor, laborer, materialman or subcontractor on the Project, [Westmoreland] shall have the right to retain out of any payment to [SE/Z Construction] then due, or thereafter to become due, an amount sufficient to completely indemnify [Westmoreland] against said potential lien. In the event the lien should come to be perfected, [Westmoreland] may call upon [SE/Z Construction] to satisfy it and obtain its removal within ten days and upon his failure to do so may pay the amount of the lien from the retained funds and, within 30 days thereafter, pay the balance, if any, less [Westmoreland]'s expenses in the matter (including court costs and actual attorney's fees), to [SE/Z Construction]. [SE/Z Construction] specifically agrees in this event that [Westmoreland] may consider the amount of the lien as presumptively correct. In the event the lien is not perfected within the period of time set by law for the enforcement of liens, or within such extended time as the lienor may by law obtain, [Westmoreland] shall pay, without interest to [SE/Z Construction] whatever sums were retained, less [Westmoreland]'s expenses (including court costs and attorney's fees) in disproving the lien. [SE/Z Construction] shall also be responsible for the amount of any premium for any bond given by [Westmoreland] to obtain the discharge of any lien, or for the interest on any money deposited for the purpose of discharging any lien. [SE/Z Construction]'s obligations under this paragraph shall extend to the successors-in-title of [Westmoreland].

20. Since executing the Contract, SE/Z Construction has provided construction work to Westmoreland in connection with the Project. In doing so, SE/Z Construction hired KLE Construction, Xtreme Electric, Strata, American Engineering, Sandcreek Welding, and

**EXHIBIT "A"
Page 5 of 59**

Sherwin-Williams as subcontractors or suppliers to perform work for, or provide materials to, SE/Z Construction in connection with work under the Contract.

21.     Westmoreland fully compensated SE/Z Construction for the work performed under the Contract until at least October 29, 2013.

22.     Upon receiving notification that a subcontractor intended to file a construction lien arising out of SE/Z Construction's work, Westmoreland suspended payments to SE/Z Construction. The amount remaining unpaid under the Contract is $246,891.73 (the "Funds").

23.     On October 29, 2013, Xtreme Electric notified Westmoreland that Xtreme Electric believes it is owed $151,526.60 for work performed for SE/Z Construction under the Contract.

24.     On October 29, 2013, Strata notified Westmoreland that Strata believes it is owed $54,120.94 for work performed for SE/Z Construction under the Contract.

25.     On November 19, 2013, American Engineering notified Westmoreland that American Engineering believes it is owed $13,473.20 for work performed for SE/Z Construction under the Contract.

26.     On November 20, 2013, Sandcreek Welding notified Westmoreland that Sandcreek Welding believes it is owed $8,983.57 for work performed for SE/Z Construction under the Contract.

27.     On November 20, 2013, SE/Z Construction notified Westmoreland that SE/Z Construction believes it is owed $1,043,125.67 for work performed under the Contract.

**EXHIBIT "A"**
**Page 6 of 59**

28.    On November 21, 2013, Sherwin-Williams notified Westmoreland that Sherwin-Williams belies it is owed $3,404.93 for materials provided to SE/Z Construction under the Contract.

29.    On November 27, 2013, KLE Construction notified Westmoreland that KLE Construction believes it is owed $466,640.08 for work performed for SE/Z Construction under the Contract.

30.    On December 19, 2013, Westmoreland received notification that Williams Plumbing believes it is owed $18,817.15 for work performed for subcontractor or supplier CS Mechanical, 643 E. Broadway, Williston, ND 58801 and SE/Z Construction under the Contract. On March 5, 2014, Williams Plumbing filed a Construction Lien against the FedEx Facility, dated February 4, 2014, in the office of the Williams County Recorder, as Document No. 781094, for work performed for CS Mechanical and SE/Z Construction under the Contract in the amount of $18,817.15.

31.    On December 19, 2013, Westmoreland received notification that Camp Land Surveyors believes it is owed $29,164.00 for work performed for SE/Z Construction under the Contract. On February 7, 2014, Camp Land Surveyors filed a Contractor Claim of Lien against the FedEx Facility, dated February 4, 2014, in the office of the Williams County Recorder, as Document No. 779330, for work performed for SE/Z Construction under the Contract in the amount of $29,164.00.

32.    On March 12, 2014, Cal-Dak Cabinets, Inc. filed a Construction Lien against the FedEx Facility, dated March 10, 2014, in the office of the Williams County Recorder, as Document No. 781689, for work performed for SE/Z Construction under the Contract in the amount of $9,525.00.

7

33.    On April 4, 2014, Wutke, LLC filed a Construction Lien against the FedEx Facility, dated April 1, 2014, in the office of the Williams County Recorder, as Document No. 783086, for work performed for SE/Z Construction under the Contract in the amount of $115,036.

34.    On April 10, 2014, Northern Improvement filed a Construction Lien against the FedEx Facility, dated March 21, 2014, in the office of the Williams County Recorder, as Document No. 783478, for work performed for SE/Z Construction under the Contract in the amount of $251,431.00.

35.    On May 29, 2014, Ace Fire Protection filed a Construction Lien Statement against the FedEx Facility, dated May 15, 2014, in the office of the Williams County Recorder, as Document No. 786416, for work performed for SE/Z Construction under the Contract in the amount of $2,616.00.

**COUNT I**
**Declaratory Judgment (No Liens)**

36.    Westmoreland realleges and incorporates all previous paragraphs by reference.

37.    A controversy exists between the parties as to whether any liens filed (now or in the future) against the property on which SE/Z did work under the Contract are or would be invalid.

38.    Westmoreland is entitled to judgment pursuant to N.D.C.C. ch. 32-23 *et seq.*, declaring that no liens may be filed under N.D.C.C. ch. 35-27 against the property on which SE/Z Construction performed work under the Contract. Among other things, the judgment should declare that Westmoreland has fully compensated SE/Z Construction prior to

receiving any lien statements, and thus any lien filed against such property would be invalid under N.D.C.C. § 35-27-02.

## COUNT II
### Declaratory Judgment (Indemnity)

39.     Westmoreland realleges and incorporates all previous paragraphs by reference.

40.     A controversy exists between the parties as to whether SE/Z Construction must indemnify Westmoreland against the amount set forth in any current or future claims and/or lien filings by any third party conducting work or providing materials to SE/Z Construction in connection with the Contract ("Claims and Liens").

41.     Westmoreland is entitled to a judgment pursuant to N.D.C.C. ch. 32-23 *et seq.*, declaring that SE/Z Construction must "completely indemnify [Westmoreland] against" any potential or existing Claims and Liens, including "[Westmoreland]'s expenses…(including court costs and actual attorney's fees)" and "the amount of any premium for any bond given by [Westmoreland] to obtain the discharge of any lien, [and] the interest on any money deposited for the purpose of discharging any lien." Among other things, the judgment should declare that SE/Z must indemnify Westmoreland against any Claims and Liens.

## COUNT III
### Interpleader

42.     Westmoreland realleges and incorporates all previous paragraphs by reference.

43.     Westmoreland is aware of apparent disputes regarding amounts owing by SE/Z Construction for the Claims and Liens of the other Defendants. Westmoreland is also aware of an apparent dispute regarding whether SE/Z must indemnify Westmoreland against all such Claims and Liens. Pursuant to the terms of the Contract, including, but not limited to, Paragraph III.R. of the Contract's General Conditions for Construction, Westmoreland

9

**EXHIBIT "A"**
**Page 9 of 59**

suspended payment to SE/Z upon receiving notifications of the liens referenced in paragraphs 17 and 18 and pending resolution of the apparent disputes.

44.     Westmoreland has no means, other than this interpleader action, of protecting itself from litigation and is unable, without hazarding itself to multiple claims, to determine the validity of the Claims and Liens, or determine the parties' responsibility with regard to such Claims and Liens.

45.     Pursuant to the terms of the Contract, including, but not limited to, Paragraph III.R. of the Contract's General Conditions for Construction, Westmoreland asserts a claim to a portion of the Funds for Westmoreland's actual attorney's fees and court costs incurred in disproving or obtaining the discharge of any Claims and Liens, Westmoreland's costs in internal management time incurred in disproving or obtaining the discharge of any Claims and Liens, the amount of any premium for any bond given by Westmoreland to obtain the discharge of any lien, and the interest on any money deposited for the purpose of discharging any lien.

46.     Westmoreland seeks the Court's guidance in determining the proper allocation or apportionment of the Funds amongst itself and the Defendants. Therefore, Westmoreland seeks leave to deposit the Funds with the Court.

47.     Westmoreland does not in any respect collude with any of the Defendants concerning the matters in question here, nor does Westmoreland bring this action at the request of any Defendants, but rather brings this action on its own behalf in order to avoid being subjected to multiple claims for the Funds or any other liability to the Defendants.

48.     This action for interpleader is Westmoreland's only means of protecting itself from the aforesaid risks and claims.

**EXHIBIT "A"**
**Page 10 of 59**

[¶2]   **WHEREFORE,** Westmoreland requests as follows:

a)   That the Court declare that any current or future liens filed against the property on which SE/Z Construction performed work under the Contract are invalid and restrain the Defendants from filing any such liens;

b)   That the Court declare that SE/Z Construction must indemnify Westmoreland for any and all Claims and Liens;

c)   That the Court require the Defendants to interplead and state their respective claims herein and determine the respective interests of the Defendants to the Funds;

d)   That, upon Westmoreland depositing the Funds with the Court, Westmoreland be discharged of all liabilities to the Defendants with respect to all Claims and Liens;

e)   That the Court restrain the Defendants, and each of them, from commencing in any court any action against Westmoreland wherein the Defendants, or any of them, in any manner, seek to recover any portion of the aforesaid amounts, or to recover from Westmoreland any damages for failure to make any payments of the aforesaid amounts to any of the Defendants, or to recover from Westmoreland any amounts or damages, including costs and attorney's fees in connection with any of the Defendants' Claims and Liens;

f)   That Westmoreland be awarded its actual attorney's fees and court costs incurred in disproving or obtaining the discharge of any Claims and Liens, its costs in internal management time incurred in disproving or obtaining the discharge of any Claims and Liens, the amount of any premium for any bond

11

given by Westmoreland to obtain the discharge of any lien, and the interest on any money deposited for the purpose of discharging any lien;

g)      That Westmoreland be awarded its costs and attorney's fees in this action; and

h)      For such other and further relief as the Court deems just and proper.

Dated this ___13th___ day of August, 2014.

                                    VOGEL LAW FIRM

                                    BY: Robert J. Pathroff (#07759)
                                    US Bank Building
                                    200 North 3rd Street, Suite 201
                                    PO Box 2097
                                    Bismarck, ND  58502-2097
                                    Telephone:  701.258.7899
                                    Email:      rpathroff@vogellaw.com
                                    ATTORNEYS FOR PLAINTIFF

1924994.1

12

AGREEMENT FOR FINAL DESIGN
AND CONSTRUCTION SERVICES
INCLUDING A GUARANTEED MAXIMUM COST
(DESIGN/BUILD)



This Agreement is made this 30th day of November, 2012 by and between The Westmoreland Company, Inc., an Alabama corporation (hereinafter referred to as "Owner") and SE/Z Construction, LLC., a Idaho Limited Liability Company (hereinafter referred to as "Contractor").

WHEREAS, Owner has entered (or will enter) into a lease with FedEx Ground Package System, Inc., "FDXG" (hereinafter referred to as "Tenant") which requires construction of a new facility and related improvements on Lot 4/Block 4 of the Bakken Industrial Park located in Williston, North Dakota 58801, (the "Project") the location of which is better described in Exhibit J; and

WHEREAS, Owner requires the services of architects, engineers, and contractors to design and build the Project; and

WHEREAS, Contractor represents that it is experienced in building projects of this type and, more particularly, is experienced in operating as a design/build contractor and is ready, willing and able to perform the services called for herein.

NOW THEREFORE, in consideration of the premises and the mutual promises contained herein, the parties hereto agree as follows:

1.    Project Description.  Owner engages Contractor to perform design and construction services to complete the Project which are described in Exhibit A. It is the intention of the parties that the Contractor, at Contractor's expense, will perform all services and furnish all materials necessary to complete the Project which are described in Exhibit A.  It is the intention of the parties that the Contractor, at Contractor's expense, will perform all services and furnish all materials necessary to complete the Project in all respects, except as expressly set out herein.

2.    Design Responsibility and Scope of Work.  Contractor's design responsibilities and scope of work for completing the design and construction of the Project are set forth in Exhibit B hereto.

3.    Schedule.    Time is of the essence of the Agreement.   Contractor shall commence work on its obligations and shall progress and complete them in accordance with the schedule in Exhibit C.

4.    Guaranteed Maximum Cost and Contractor's Fee.

a.    Owner agrees to reimburse Contractor for its Costs incurred in completing the design and in constructing the Project as delineated in Article 5 hereof. These Costs shall be in addition to Contractor's Fee set forth below.

b.    Owner and Contractor agree that the Cost of the Work and the Contractor's Fee of 7% of the Cost of the Work is guaranteed not to exceed $3,226,325. The limit on the Cost of the Work and Contractor's Fee is referred to hereinafter as "Guaranteed Maximum Cost" or "GMC".

[SE/Z Construction, LLC]              Page 1                    [Williston, ND]

Filed - Clerk of District Court
12/16/2013 2:59:43 PM
Williams County, ND
5/20/2014 11:47:04 AM
Filed - Clerk of District Court
8/13/2014 5:26:10 PM
Williams County, ND

If the actual Cost of the Work as hereinafter defined plus the Contractor's Fee is less than the GMC, such savings shall accrue 50% to Contractor and 50% to Owner.

This fee shall be paid in installments which bear the same proportion to the total Contractor's Fee that each Invoice bears on GMC.

The parties hereto recognize and agree that it may be necessary or desirable from time to time for Owner to change the scope of Work provided for herein. Owner may change the scope of Work by notifying Contractor in writing of the change and the notice shall become a part of this Agreement. The Contractor shall be entitled to an allowance of 10% for Overhead and Profit for any additive change order made in writing over and above the Cost of the Work. Changes in the scope of Work which reasonably can be shown to require a schedule extension shall cause a day-for-day extension in the Project Schedule. All additive change orders shall increase the GMC by the Cost of the Work.

Owner shall be entitled to a deductive change order reducing the GMC for all Work deleted or made less expensive by Owner modification. Owner shall be entitled to reduce the Contractor's Fee by 5% of the amount of the reduction of the Cost of the Work.

5.   <u>Cost of the Work.</u>   The Cost of the Work shall include only those costs and expenses required for completion of the Work in accordance with the Contract Documents and which have been or will be paid by Contractor and as otherwise calculated in accordance with generally accepted accounting principles consistently applied. The Cost of the Work shall be charged to Owner at rates no more than those prevailing in the location of the performance of the Work and not higher than those charged to Contractor's most favored customers. As used herein, the Cost of the Work may also be referred to as the Contract Sum. The following items constitute the Cost of the Work if they are incurred by Contractor in the performance of the Work:

a.   Communications expenses for telegrams, telephone (both local and long distance), package express and other similar expenses when incurred in connection with the Work.

b.   The cost of items which are consumed in the performance of the Work including tools, temporary facilities, supplies, equipment and materials.

c.   The cost of removing debris.

d.   The cost (including transportation) of equipment, supplies and material to be incorporated into the Work.

e.   The cost of preventing or mitigating an emergency affecting the safety of persons or property.

f.   The cost of subcontracted work performed under written subcontracts which have been previously approved in writing by Owner and are otherwise in full compliance with the Contract Documents so long as the subcontractor is not affiliated by common control or ownership with Contractor.

**EXHIBIT "A"
Page 14 of 59**

g.      The cost of lodging, travel and subsistence necessarily incurred by Contractor's employees while directly performing the Work.

h.      The cost of permits required to perform the Work, royalties and infringement damages necessarily incurred in performing in accordance with the Contract Documents and any deposits lost for reasons other than Contractor's fault or neglect.

i.      Premiums for insurance and bonds required by the Contract Documents and directly applicable to the Project.  The Cost of the Work shall not include Contractor's comprehensive general liability insurance premiums or costs.

j.      The cost of leasing and/or renting machinery or equipment from third parties and the Contractor's actual depreciation expense for Contractor owned machinery or equipment required in the performance of the Work for the period of time the machinery or equipment was actually used in connection with the Work.

k.      The salaries of Contractor's personnel while stationed at the Project site, Contractor's own facilities or while traveling so long as these personnel are directly engaged in the performance of the Work.

l.      Wages of trade labor employed by Contractor and directly performing the Work in accordance with the Contract Documents and as dictated by either a collective bargaining agreement or a salary and wage schedule agreed upon in writing by Owner and Contractor in advance; provided, however, that no overtime will be allowed except as permitted in the General Conditions for Construction (Exhibit E).

m.      Fringe, welfare and other benefits, cost of contributions, assessments or taxes, unemployment insurance, social security and other items related to the salaries and wages payable under subparagraphs 5.k. and 5.l. above.  This payroll burden is hereby capped at no more than _45_ % of gross wages (unless otherwise approved in writing in advance by Owner), and Contractor shall furnish data sufficient to verify the appropriate actual burden.

n.      Taxes (sales and/or use) payable as a result of purchase of materials and/or the performance of the Work.

o.      The cost of uninsured casualties which are not the result of the fault or neglect of Contractor or any entity or person for whose conduct Contractor is responsible.

p.      Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by Owner.

6.      <u>Costs Not Included in the Cost of the Work.</u>   The following are not included in the Cost of the Work and will not be reimbursed:

a.      Contractor's cost of capital, money or interest charges incurred thereon.

b.      Contractor's equipment charges not set forth in Section 5.j.

c.      Contractor's general and/or administrative overhead or other overhead not expressly allowed in Article 5 above.

d.      Costs incurred as a result of the fault or neglect of Contractor or any entity or person for whose conduct Contractor is responsible including but not limited to the correction of defective or nonconforming work, disposal of materials and/or equipment incorrectly acquired, making good any damage to property or costs incurred as a result of Contractor's failure to carry insurance required by the Contract Documents.

e.      Contractor's office expenses other than those incurred at the site field office.

f.      The costs of Contractor's personnel at their offices other than the site field office except as described in Paragraph 5.k. above.

g.      Costs in excess of or not expressly authorized in Article 5 above.

h.      The costs and premiums under Contractor's comprehensive general liability insurance.

i.      Costs in excess of the GMC.

7.    <u>Progress and Final Payments</u>.

a.      By the first day of each month following commencement of work under this Agreement, Contractor shall submit an Invoice to Owner, sworn to if required by Owner, showing in complete detail all moneys paid out or costs incurred by him on account of the Cost to the Work during the previous month for which he is to be reimbursed under Article 5 and the amount of Contractor's Fee due as provided in Article 4.b., together with payrolls for all labor and all receipted bills for which payment has been received. These Invoices shall be in a form acceptable to Owner and shall be accompanied by such supporting data as may be required by Owner (including subcontractor and supplier data). Contractor shall include with each Invoice progress photos of the work performed over the previous month and photos of the work in place as of the date of the Invoice. Starting with the second Invoice, each Invoice shall be accompanied by a partial waiver of mechanic's lien in the amount of the Invoice conditioned upon payment.

b.      Upon approval of each Invoice or portion thereof by Owner, it shall pay ninety-five percent (95%) of the approved amount; however, in no event will Owner make any payment which will cause the total payments under this Agreement to exceed the GMC. Appropriate payments for Invoices which are in proper form and are accompanied by the required supporting data shall be made within 28 days of their receipt by Owner.

c.      Upon Owner's agreement that Project Final Completion has been achieved, Owner shall process a payment for any balance remaining due Contractor. Payment shall be made within 30 days of Owner's written approval of Contractor's final Invoice. At the time of this final payment, Contractor shall provide Owner with a final waiver of claims and mechanic's lien. Owner may use joint checks to pay Contractor to the extent of any balance due to any supplier or subcontractor.

8.  <u>Cash Discounts.</u>     All rebates or refunds, if any, shall accrue to the benefit of Owner. In addition, trade discounts, rebates or refunds and the proceeds from the return of surplus materials and equipment shall be for the benefit of Owner. Cash discounts shall accrue to the Contractor unless the Owner has deposited funds with the Contractor with which to make payments. Contractor shall inform the Owner of all purchases made by Contractor which are eligible for discount and the terms of the discount.

9.  <u>Access to Records.</u>     Contractor shall keep full records, accounts and books with regard to all materials, equipment and labor involved in the performance of the Work in accordance with generally accepted accounting principles. At a minimum, those records shall include the documents described on Exhibit K. Owner shall have access to Contractor's accounting records at all reasonable times and Contractor agrees to make such changes to its system of keeping these records as Owner may reasonably request in writing. All such records shall be preserved and Owner shall have access to them for three years after final payment to Contractor.

10.  <u>Key Personnel.</u>     Attached hereto is Exhibit D which lists by name and project position the personnel of Contractor and its subcontractors considered by Owner to be critical to the proper performance of this Agreement. Contractor shall designate a project manager who shall be its representative for the purpose of this Project and who shall have authority to take all actions required under this Agreement on behalf of Contractor. Contractor shall not remove or substitute the listed, key personnel without good cause shown and without the written consent of Owner which consent shall not be unreasonably withheld by Owner.

11.  <u>Subcontracts.</u>

    a.     All portions of the Work that Contractor's organization has not been accustomed to perform shall be performed under subcontracts. Subcontractors shall not be affiliated with Contractor by common control or ownership. Contractor shall request bids from subcontractors and shall deliver such bids to Owner. Contractor will then determine, with the approval of the Owner, which bids will be accepted. Key subcontractors identified as of the date of the execution of this Agreement are listed in Exhibit D.

    b.     All subcontracts shall conform to the requirements of the General Conditions. Subcontracts awarded on the basis of the Cost of the Work plus a fee shall also be subject to the provisions of this Agreement insofar as applicable. · All subcontracts shall be submitted to Owner for review and written approval before execution. Review and comment by Owner shall not constitute a waiver of any objection Owner may have to the subcontract or subcontractor. Owner may object to any subcontractor or subcontract.

12.  .  <u>General Conditions for Construction.</u>  Attached hereto as Exhibit E are the General Conditions for Construction. To the extent consistent with this Agreement, these general conditions form a part of it and shall be adhered to by the parties hereto. However, any authority the Architect has to make decisions on behalf of Owner or represent Owner is expressly reserved to Owner.

13.  <u>Confidentiality and Ownership of the Design.</u> Contractor     recognizes     that     in performing under this Agreement, it will be given access to Owner's premises, processes and documents as required for performance of this Agreement. Contractor agrees as follows with regard

to any and all information and documents it comes into possession of or produces while performing hereunder.

  a.  To keep in confidence and prevent disclosure to any persons or organizations outside its respective organization, or to any persons within its organization not having a need to know, all information provided to Contractor by Owner or its designee, provided, however, that Contractor shall not be liable for disclosure or use of such information if it:

    (1)  was in the public domain at the time it was disclosed; or

    (2)  was known to Contractor at the time of receipt or

    (3)  is disclosed to the U.S. Government in the performance of the obligations of either party related to this Agreement; or

    (4)  was independently developed by Contractor; or

    (5)  becomes known to Contractor from a source other than Owner without breach of this Agreement by Contractor.

  b.  To label all information provided to it by Owner and all notes, files, documents and other data developed in the course of performance hereunder as follows:

  "OWNER PROPRIETARY AND PRIVATE INFORMATION

  This data shall not be disclosed, duplicated or used, in whole or in part, for any purpose other than in connection with the Project under which it was provided or developed without the express, written permission of Owner."

  c.  At the conclusion of performance under this Agreement, to turn over to Owner copies of all notes, tapes, drafts, files, data, drawings and every other tangible piece of information collected or prepared while performing hereunder. Copies of tapes where the information has been incorporated into notes or drawings need not be turned over to Owner.

  d.  To refrain from the use or reuse of any designs or documents created or prepared while performing hereunder without the specific, current, written permission of Owner. Owner may use or reuse any such designs or documents without notice or compensation to Contractor. All such documents and associated intellectual property rights are the property of Owner.

  e.  To treat all the obligations listed in this paragraph 13 as continuing obligations which will survive the completion or termination of performance under this Agreement and to take all necessary steps to insure compliance with this provision by Contractor's employees and subcontractors.

14.  <u>Insurance and Bonds.</u>

[SE/Z Construction, LLC]    Page 6    [Williston, ND]

**EXHIBIT "A"
Page 18 of 59**

      a.     Contractor shall purchase with its own funds and maintain throughout the life of this Agreement the minimum types and amounts of insurance set forth on Exhibit F.

      b.     Contractor shall purchase and maintain bonds in accordance with the requirements set forth on Exhibit G, if required by Owner.

15.     <u>Lender Agreement</u>.  Owner may request that Contractor enter into a contract with Owner's lender ("Lender").  The contract may require that:

      a. Contractor consent to an assignment of this Agreement to Lender;

      b. Contractor's lien rights, if any, shall be subordinate to Lender's liens on any of Owner's property;

      c. Contractor shall represent that Owner and Contractor are in good standing under this Agreement (or specifically identify those matters not in good standing);

      d. Contractor give Lender notice of any future breach of this Agreement and an opportunity to cure the breach; and

      e. Contractor shall permit Lender to inspect the Project and any of Contractor's records related to the Project.

By way of example and not limitation, Exhibit H sets forth an example of the form of such a Contract.

16.     <u>Fiduciary Duties.</u>  Contractor accepts the relationship of trust and confidence for the benefit of Owner.  Contractor covenants with Owner to use Contractor's best skill and judgment in furthering the interest of Owner.  Contractor agrees to furnish efficient business administration and supervision for the benefit of Owner.  Contractor agrees to perform the work in an expeditious and economical manner consistent with the interest of Owner.  Contractor shall serve as a fiduciary for the benefit of Owner with respect to the Project and matters related thereto.

17.     <u>Miscellaneous Provisions.</u>

      a.    <u>Entire Agreement</u>.  This Agreement, the Contract Documents listed herein, and the exhibits and attachments hereto set forth all the covenants, provisions, agreements, conditions and understandings between the parties and there are no covenants, promises, agreements, conditions or understandings either oral or written, between them other than are herein set forth.

      b.    <u>Governing Law</u>.  This Agreement shall be governed by the laws of the state in which the Project is located both as to interpretation and to performance.

      c.    <u>Assignment</u>.  Neither party hereto may assign its interest or obligations hereunder without the written consent of the other.  Notwithstanding the forgoing, Owner may assign its rights and obligations hereunder to a subsidiary or affiliate under common control and Contractor hereby consents to any such assignment.

[SE/Z Construction, LLC]            Page 7           **EXHIBIT "A"** [Williston, ND]

    d.    <u>Terms</u>.    Unless otherwise agreed, terms in this Agreement shall have the same meaning as those in the General Conditions for Construction.

    e.    <u>Exhibits</u>.    Any and all exhibits referred to in this Agreement are hereby incorporated herein by reference and are made a part hereof as if they were included in the text hereof.

    f.    <u>Notices</u>.    Any notice required to be given by the parties hereto shall be sent to the person and address shown on Exhibit I hereto by certified mail, return receipt requested, or delivered in person.

    g.    <u>Intended Beneficiaries</u>.    The Parties acknowledge and agree that Owner's successors-in-title are intended beneficiaries of this Agreement.

18.    <u>Conditions Precedent to Owner's Obligations</u>.    Each of Owner's obligations hereunder is subject to the following conditions precedent:

    a.    Closing on the land and all financing necessary to permit Owner to proceed with the Project; and

    b.    Execution of a lease between the Owner and the proposed tenant, upon terms and conditions satisfactory to Owner, and satisfaction of all conditions precedent in the lease for the benefit of the Owner and/or the proposed tenant.

In the event these conditions are not met or waived by Owner, then Owner may terminate this Agreement by giving written notice to Contractor, in which event neither party shall have any further liability to the other.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

OWNER                          CONTRACTOR

The Westmoreland Company, Inc.      SE/Z Construction, LLC

By:_____       By:_____


Attest:_____      Attest:_____



# EXHIBIT "A"

## PROJECT DESCRIPTION

Contractor shall, at its sole cost and expense, design and construct a building and all associated improvements on the Premises in accordance with the plans and specifications attached hereto as Exhibit A-1 through A-18 with the exception of exclusions and clarifications noted in Exhibit A-19.

Exhibit A-1:  Williston, ND "Site Plan" (SHT C-1) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-2:  Williston, ND "Building Plan" (SHT A-1) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-3:  Williston, ND "Office Plans" (SHT A-2) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-4:  Williston, ND "Schedules" (SHT A-3) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-5:  Williston, ND "Elevations" (SHT A-4) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-6:  Williston, ND "Electrical Plan" (SHT T-1) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-7:  Williston, ND "Details" (SHT D-1) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-8:  Williston, ND "Details" (SHT D-2) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-9:  Williston, ND "Details" (SHT D-3) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-10:  Williston, ND "Details" (SHT D-4) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-11:  Williston, ND "Details" (SHT D-5) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-12:  Williston, ND "Electrical Plan" (SHT E-1) Prepared by FedEx Ground Package System, Inc., dated 9-12-12;

Exhibit A-13:  Williston, ND "Specifications for Manual Build-To-Suit Station Prepared by FedEx Ground Package System, Inc., dated 10-2-12;

Exhibit A-14:  Security Entrance Layout and Equipment Detail prepared by the Westmoreland Company;

Exhibit A-16:  Geotechnical Investigation by Materials Testing& Inspection, Inc., dated July 31, 2012;

Exhibit A-17:  Phase I Environmental Site Assessment by Materials Testing& Inspection, Inc., dated September 5, 2012;

Exhibit A-18:  ALTA/ACSM Land Title Survey prepared by Camp Land Surveyors, PLLC, dated October 7, 2012.

Exhibit A-19:  Project Clarifications.

**EXHIBIT "A"
Page 21 of 59**

EXHIBIT "A-19"

PROJECT CLARIFICATIONS

Contractor shall, at its sole cost and expense, design and construct a building and all associated improvements on the Premises in accordance with the plans and specifications attached hereto as Exhibit A-1 through A-18 with the exception of exclusions and clarifications noted below:

1.   All construction drawings and documents are to be approved by the required local, state, and federal authorities; the Owner; and Owner's Tenant; and shall be based upon the FedEx Ground Package System, Inc. Prototype Plans and Specifications (Exhibits A-1 through A-14), and the Geotechnical Engineering Evaluation (Exhibit A-16).

2.   Overhead door signage shall be numbered in accordance with Exhibit A-5 (Sheet A-4) and Exhibit A-7 (Sheet D-2, Detail 10).

3.   All unpaved and disturbed areas will be top-soiled and seeded as required by local requirements.

4.   The Light (Type II) and Heavy Duty (Type I) pavement section thicknesses. All asphalt concrete, aggregate base, and fill material shall meet or exceed the requirements of the IDOT Standards and Specifications, latest edition. ALL SUBGRADE (Building and Pavement), FILL MATERIAL, AGGREGATE BASE, AND ASPHALT CONCRETE SHALL BE COMPACTED AS STATED IN THE GEOTECHNICAL ENGINEERING REPORT DATED JULY 31, 2012, PREPARED BY MATERIALS TESTING & INSPECTION.

5.   The cost for ALL Engineering, Architectural, MEP, and Pre-engineered Metal Building Design and As-Builts (Record Drawings) are included.

6.   Construction surveying and staking, and As-Built (ALTA/ASCM) survey (building and pavement expansion areas only) are included.

7.   Construction testing for soil compaction, aggregate base compaction, asphalt concrete compaction, and concrete testing are included.

8.   A "dry" fire sprinkler system will be furnished and installed for the new facility.

9.   Security equipment, conduit, and wiring required by FedEx Ground Package System, Inc.'s security subcontractor are excluded with the exception of the items required in the new Security Station Area,.

10.  The cost of all utilities and their extensions from Energy Street to the site are included in this GMC Agreement. Utility Company fees are excluded.

11.  Fire suppression of and lighting systems for the material handling (conveying) systems are excluded.

12.  Facility telephone and computer system wiring, paging and security systems, back-up electrical generator, and an uninterrupted power source (UPS) system, other than the UPS for the computer room are excluded.

13.  Special exhaust and smoke removal systems beyond that required by code are excluded.

14.  The Contractor shall provide project updates and digital photographs of the project to the Owner via email each Friday upon commencement of work and until a final Certificate of Occupancy is issued.

This project is a "Zero Change Order Project". The only project change order requests that will be considered by the Owner and subsequently priced by the Contractor for approval will be those which are initiated by FedEx Ground Package System, Inc. or Owner with the following exceptions: (a) scope changes for work not included on the final and approved (City, State, Owner, and Tenant) plans and specifications; (b) Force Majeure as described in Exhibit E; (c) environmental conditions not caused by Contractor; and (d) archaeological discovery.

## EXHIBIT "B"

### DESIGN RESPONSIBILITY AND SCOPE OF WORK

**A.**   **Design Responsibilities.**

1.   Contractor shall be responsible for the professional quality, technical accuracy and the coordination of all designs, drawings, specifications, and other services furnished under this Agreement.   Contractor shall, without additional compensation, correct or revise any errors or deficiencies in its designs, drawings, specifications, and other services.

2.   Owner's review, approval, acceptance of, or payment for any of the services required under this Agreement shall not be construed to operate as a waiver of any rights under law for any damages to Owner caused by Contractor's negligent performance or omission of any of the services to be furnished under this Agreement.

3.   At no cost to Owner, Contractor shall assist Owner in the investigation and defense of any claim which arises from the designs prepared by Contractor and are the result of Contractor's alleged or actual errors, omissions or negligence.

4.   Owner reserves the right to inspect Contractor's work in progress at Contractor's office.   Contractor shall revise its work in accordance with the written directions of Owner's authorized representative and shall not deviate from designs or concepts approved by Owner. However, if Owner orders the revision of work which Owner has previously approved in writing, the cost of such revision shall be in addition to the GMC provided for herein and the GMC shall be increased accordingly.

5.   In the interest of cost consciousness and value engineering, Contractor shall be alert for and shall identify high cost, low value items or systems.   Improved cost/benefit ratios shall be sought in the design effort taking into consideration such relevant factors as initial cost, availability, durability, reliability, maintenance, energy consumption and future uses of the Project facilities.

6.   The design of architectural, structural, mechanical, electrical, civil, or other engineering disciplines and features of the Work shall be accomplished or reviewed and approved by architects or engineers registered to practice in the particular professional field involved and in the state in which the Project is located.

**B.**   **Basic Services.**

1.   Based on Exhibit A, Contractor shall submit Construction Documents for review and approval by Owner and Owner's tenant, if any.   Construction Documents shall include technical drawings (including building reaction/load drawings if a pre-engineered building is included in the Project); schedules, diagrams and specifications, setting forth in detail the requirements for construction of the Work, and shall:

   a.   develop the intent of Exhibit A in greater detail;

   b.   provide information necessary and customary for the use of those in the building trades; and

[Williston, ND]

**EXHIBIT "A"**
**Page 23 of 59**

c.      include documents required for regulatory agency approvals.

2.     Contractor shall identify the requirements for approvals and permits of the applicable government authority and shall file documents required to obtain necessary approvals and permits with Owner's cooperation. At Contractor's expense, Contractor shall pay for all permits and approvals required for the Project.

3.     Contractor shall provide or arrange for and shall pay for design services, professional and trade labor, materials, equipment, tools, construction equipment and machineries, water, heat, utilities, transportation and other facilities and services necessary for the proper execution and completion of the Work, either temporary or permanent and whether or not to be incorporated into the Work.

4.     Contractor shall be solely responsible for all construction means, methods, techniques, sequences, procedures and safety precautions and shall coordinate all of the foregoing.

5.     Contractor shall prepare and maintain detailed records on the progress of the Work, shall keep Owner informed on the progress of the Work and shall promptly respond in writing to all requests by Owner for information.

6.     Contractor shall promptly correct work which does not conform to the Construction Documents and shall do so at his own expense.

7.     Unless otherwise specified, Contractor warrants to Owner that materials and equipment incorporated in the Work will be new and that the Work will be of good quality, free from faults and defects, and completely in conformance with the Construction Documents. Work not conforming to these requirements shall be corrected in accordance with Owner's Standard General Conditions for Construction.

8.     If a state sales tax is levied upon Owner's payment to Contractor such sales tax shall be separately shown on each of Contractor's Invoices and Owner shall pay it to Contractor. All other taxes on the Work or portions thereof shall be the obligation of Contractor and included within the GMC.

9.     Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and all lawful orders of any public authority as well as private deed restrictions and covenants.

10.    Contractor shall pay any royalties and license fees and shall defend and hold harmless Owner from any suits or claims for infringement of patent rights or other intellectual property rights arising out of the Project and shall save Owner harmless from any loss on account thereof.

11.    Contractor shall be fully responsible to Owner for the acts, errors or omissions of Contractor's employees and any other persons or entities for whom or whose performance Contractor is responsible.

[Williston, ND]

**EXHIBIT "A"**
**Page 24 of 59**

12.     Contractor shall not unreasonably encumber the site with his materials or equipment and he shall confine his operations to areas permitted by law, ordinance, permits, directions of Owner's representative and Construction Documents.  At all times Contractor shall keep the Project site free from accumulations of waste materials and rubbish.  All waste materials and rubbish shall be removed from the Project site as well as all of Contractor's tools, construction equipment, machinery, surplus materials and vehicles at the completion of the Work.

13.     Contractor shall prepare Change Orders for Owner's review, comment, and approval.  If Owner approves, it shall execute the Change Order in accordance with the General Conditions for Construction.  If Owner disagrees, Contractor shall proceed with Work under a reservation of rights and may commence dispute resolution in accordance with the Contract.  Contractor shall have authority to make minor changes in the design and construction consistent with the intent of this Agreement and not involving an adjustment in the GMC or an extension of the Project Schedule.  Contractor shall promptly inform Owner, in writing, of minor changes in the design and construction.

14.     Contractor shall promptly notify Owner in writing when he believes he has achieved Substantial Completion.  Owner shall inspect the Work and, if Owner agrees that Substantial Completion has been achieved, Owner and Contractor shall agree in writing upon:

      a.     The punchlist (a detailed list of work left to be done before Contractor has achieved Final Completion);

      b.     The date by which the punchlist is to be completed; and

      c.     The responsibility of each party for security, maintenance, heat, utilities, damage to the Work and insurance.

If Owner does not agree that Substantial Completion has been achieved, it shall so notify Contractor in writing and shall describe in detail those items of work which must be completed in order for Substantial Completion to be achieved.

15.     Contractor shall promptly notify Owner in writing when he believes he has achieved Final Completion.  Owner shall inspect the Work and, if Owner agrees that Final Completion has been achieved, Owner and Contractor shall so document this agreement in writing.

16.     Contractor shall maintain in good order at the site an up-to-date set of the following documents:  A record copy of the Construction Documents, drawings, specifications, product Data, samples, submittals, shop drawings, modifications, change orders, daily job logs, and other similar documents.  All of the foregoing shall be marked currently to record changes made during construction.  Contractor shall prepare and submit to Owner "as-built" record drawings and an "as-built" ALTA/ACSM Land Title Survey in both hard copy and digital copy format (AutoCAD 2000 format).  On Final Completion of the design and construction of the Project and prior to final payment, but under no circumstance shall exceed forty-five (45) calendar days, these documents shall be delivered to Owner and shall be certified by Contractor in a form approved by Owner.  Should these documents not be delivered within forty-five (45) calendar days, Contractor shall pay to Owner the sum of $2,500 as liquidated damages for each calendar day of delay beyond the forty-five (45) calendar days required in Paragraph 16 above.

17.    As-built drawings shall consist of a revised set of drawings submitted by Contractor upon completion of the Project and shall reflect all changes made in the specifications and working drawings during the construction process.  As-built drawings shall show the exact dimensions, geometry, elevation and location of all elements of the work completed under this contract agreement.

## EXHIBIT "C"

### SCHEDULE

1.      The work to be performed under the Agreement shall be commenced immediately after Owner gives the Contractor notice to proceed.

2.      Subject to adjustments authorized by Owner, Substantial Completion and Certificate of Occupancy shall be achieved no later than **August 30, 2013**. Subject to adjustments authorized by Owner, completion of the project punchlist generated **August 30, 2013**, shall be achieved no later than **September 30, 2013**.

3.      The following Project deadlines will be met or Contractor will be in default:

A.      **March 8, 2013 (Material Handling):** So that the building shall be erected, weather-tight with concrete floor in place with permanent power available, all overhead doors and personnel doors in place, building secure, and Lessee's conveyor system may be timely installed, Contractor shall complete the work in the following categories:

      1.      Earthwork shall be completed;

      2.      Foundation, concrete pillars and concrete perimeter walls shall be in place;

      3.      Distribution Area concrete slab shall be in place;

      4.      Distribution Area floor slab shall be sealed;

      5.      Building structure, roofing, and wall panels shall be erected, and roof insulation installed;

      6.      All overhead and personnel doors, including hardware (lockable), as required to provide a secure building shall be in place;

      7.      Underslab utilities, trench drains, and trench drain covers shall be in place;

      8.      Permanent electric power distribution, equipment and devices shall be available with main power panel energized;

      9.      All Distribution Area overhead utilities, including conduit and wiring, shall be installed;

      10.     Distribution Area overhead lighting shall be operational;

      11.     Fire protection piping shall be installed;

      12.     Contractor shall provide a drivable access way from the existing facility entrance to one (1) _new_ overhead dock door and one (1) _new_ drive-in door for truck deliveries of conveyor system equipment; and

      13.     Site fencing modifications, if any, shall be completed in order to maintain



site security.

B.  **August 30, 2013 (Certificate of Occupancy):**   In addition to those items required for the receipt of Certificate of Occupancy, the following work shall be completed:

1.  Remaining earthwork shall be completed;

2.  Remaining Distribution Area overhead utilities shall be operational;

3.  Dock equipment, including bent checkered plates, dock bumpers and dock seals, and dock lights and fans, shall be installed;

4.  Office Area expansion and modifications shall be installed; and

5.  Asphalt yard shall be completed.

4.   In addition to all other rights and remedies of Owner hereunder, Contractor agrees to indemnify and hold harmless Owner from and against the rights of Tenant under those portions of the lease between Owner and Lessee for any delays in completion of the Project.  Those remedies include the right of Lessee to complete the work and charge the costs to Owner (Lessor), the right of Lessee to collect liquidated damages from Owner (Lessor) in the amount of $2,500 per day, and the right of Lessee to terminate the Lease.  This indemnification will extend to all claims, damages, losses and expenses, including reasonable attorney's fees.

In addition to the indemnification set forth above, Contractor shall pay to Owner the sum of $2,500 as liquidated damages for each calendar day of delay beyond the dates required in Paragraphs 2 and 3 above.  The sum set forth herein is intended to compensate Owner for lost rent and interest charges and other expenses and not as a penalty.

EXHIBIT "C"                    Page 2                    [Williston, ND]

**EXHIBIT "A"**
**Page 28 of 59**

## EXHIBIT "D"

## CONTRACTOR'S KEY PERSONNEL AND SUBCONTRACTORS

### Contractor's Key Personnel

| Name | Project Position |
|------|------------------|
| Mike Tracy | General/Project Superintendent |
| Steve Zambarano | Project Manager / President |

### Contractor's Key Subcontractors

| Name | Project Responsibility |
|------|------------------------|
| Nucor Building Systems | PEMB Supplier |
| KLE Construction | Earthwork |
| Northern Improvements | Paving |
| KLE Construction | Curbs, Walks, and Ramps |
| KLE Construction | Building Foundations |
| KLE Construction | Interior Concrete Flatwork |
| KLE Construction | Exterior Concrete Flatwork |
| Overhead Door of Minot | Overhead Doors |
| Fairborn, USA | Dock Equipment |
| Ultimate Steel Erectors | PEMB Erector |
| CS Mechanical | Plumbing |
| CS Mechanical | HVAC |
| Ace Fire Protection | Fire Suppression |
| Xtreme Electric | Electrical |
| American Engineering & Testing | Testing |
| TBD | Landscaping |

**EXHIBIT "A"**
[Williston, ND]
**Page 29 of 59**

### EXHIBIT "E"

## GENERAL CONDITIONS FOR CONSTRUCTION

I.   CONTRACT DOCUMENTS

    A.   Definitions:

        1.   The Contract Documents.  The Contract Documents include and are the Agreement between Owner and Contractor, any exhibits thereto including these General Conditions for Construction, supplementary and other conditions (if any), the drawings, the specifications and any addenda issued prior to execution of the Contract and all modifications issued after execution of the Contract.  Modifications include amendments to the Contract agreed to and executed by both parties thereto, Change Orders issued pursuant to the Contract, written interpretations of the Contract Documents by Owner and written orders for minor changes by Owner.  Except to the extent that the above documents are included in bid documents, the bid documents (including any preliminary proposals submitted by Contractor) are not Contract Documents.

        2.   The Contract.  The Contract is the agreement between Owner and Contractor for the performance of the Work in accordance with the Contract Documents.  Modifications to the Contract must be made in accordance with the General Conditions for Construction.  The Contract Documents do not and shall not be construed to create any relationship, contractual or otherwise, between Owner and any Subcontractor or Sub-subcontractor.

        3.   The Work.  The Work is the process by which the construction called for in the Contract Documents is accomplished.  The Work includes all labor, materials and equipment required to construct the Project.

        4.   The Project.   The Project is the total construction contemplated by the Contract Documents.

    B.   Contract Execution, Intercorrelation and Interpretation:

        1.   Contract Execution.  The Agreement between Owner and Contractor shall be executed no less than in duplicate.  If the General Conditions for Construction, other conditions of the Contract, drawings, specifications or any other Contract Documents are neither signed by the parties to the Agreement for construction nor attached to the Agreement for construction, then Owner shall identify such Documents.

        2.   Intercorrelation.  Contractor's execution of the Agreement is a representation that he has fully satisfied himself as to the nature of the site of the Project, the local conditions existing thereabouts and what the site and these conditions mean to him in the light of the Contract Documents.  Contractor's execution of the Agreement for construction is a representation that he is fully acquainted with existing structures, soil conditions, obstructions, grades, excavations and fill at the Project site and its environs.  Because of the foregoing representation, Contractor agrees to make no claim against Owner for any site conditions which differs from Contractor's expectation or plans.

        3.   Interpretation.  The Contract Documents are to be interpreted to include all items necessary for the proper and complete performance of the Work and construction of the Project.  The Contract Documents are complementary.  That which is required by one contract

[Williston, ND]

**EXHIBIT "A"**
**Page 30 of 59**

document shall be as binding as if required by all of the Contract Documents. Work that is reasonably inferable from the Contract Documents shall be required if it is consistent with the intent of the Contract Documents. Work not covered in the Contract Documents which is inconsistent with the Contract Documents will not be required. Separating the Contract Documents or portions thereof into divisions and the arranging or numbering of drawings shall not control Contractor in dividing the Work among his subcontractors or in scheduling the Work. Terms, expressions and abbreviations used in the Contract Documents shall have the meaning given them in the General Conditions for Construction or, if not defined therein, they shall have the meaning generally recognized in the construction industry.

      C.     Contract Documents:

The Contract Documents, shop drawings and other submittals of Contractor and any copies thereof are and shall remain the property of Owner. They are for use only on this Project and they may not be used by anyone but Owner on any other Project. Contractor may retain one set of Contract Documents at the conclusion of the Project. All other copies of the Contract Documents shall be accounted for and returned to Owner prior to Owner's obligation to make Final Payment.

## II. OWNER

      A.     Definition:

Owner of the Project has the same meaning as the Owner identified in the Agreement between Owner and Contractor, or Owner's permitted assigns. Owner may also act (which action may include title ownership of the Project) through one of its Divisions or Subsidiaries, any of which shall be considered the Owner for the purposes of this Agreement. Owner is referred to herein as "Owner".

      B.     Duties and Responsibilities:

      1.     <u>Authorized Representatives</u>. Owner shall designate in writing its authorized representatives and shall set forth the limits of their authority. Owner shall designate a Project Manager who shall have the authority to act for Owner as follows:

      (a)     Act as liaison between Owner and Contractor.

      (b)     Make field decisions on behalf of Owner and/or make decisions of Owner known.

      (c)     Suspend Contractor's operations for any conduct or course of conduct in violation of the requirements of the Contract Documents.

      (d)     Inspect and approve specified details and inspect for adherence to design and completeness of details shown on Contract Documents.

      (e)     Examine documents, shop drawings, catalog cuts, samples and other submittals and render written decisions pertaining thereto promptly

EXHIBIT "E"                      Page 2

[Williston, ND]

**EXHIBIT "A"**
**Page 31 of 59**

so as to avoid unreasonable delays in the progress of Contractor's work.

        2.    <u>Surveys and Soil Reports</u>.  Upon Contractor's written request, Owner shall provide Contractor with any surveys of the site or soil reports in Owner's possession.  Owner disclaims any warranty of the adequacy or accuracy of such documents.  Contractor is required to make his own inspection of the site and environs (see Paragraph I.B.2.) and may not rely upon such Owner-furnished data (see Paragraph I.B.2.).

        3.    <u>Approvals and Permits</u>.  Owner shall cooperate with Contractor in applying for and obtaining required approvals, easements and other similar things required for the conduct of the Work and the completion of the Project.  However, Contractor is solely responsible for obtaining and paying for all building permits.

        4.    <u>Drawings</u>.  Owner shall provide to Contractor only the Drawings which the Contract Documents specifically required to be furnished by Owner and such Drawings shall be provided to Contractor free of charge.   Scale details shall govern over general drawings, and large scale details shall govern over small scale details.  Sizes, elevations and locations of existing facilities to which connections are to be made shall be verified at the Job Site by Contractor and the Subcontractors involved in said connections prior to beginning the Work.

        All drawings not specifically required by the Contract Documents to be provided by Owner shall be supplied by Contractor including specifically without limitation Contractor's Shop Drawings as specified herein.  All Drawings supplied by Contractor even though said Drawings are not considered Shop Drawings shall be subject to the provisions hereof concerning review and approval.

        Where, because of a minor error or omission in the Drawings, something manifestly necessary to the completion of the Work is not shown on the Drawings, it is agreed that the intent of Owner and Contractor is that such omitted material or Work shall be supplied by Contractor as a part of the Work and without additional compensation.

        C.    Right to Reject the Work:

        Owner shall have authority to reject Work which does not conform to the Contract Documents.  Whenever, in Owner's reasonable opinion, it is necessary or advisable for the implementation of the intent of the Contract Documents, Owner will have authority to require special inspection or testing of the Work in accordance with the provisions of the Contract Documents; whether or not such Work be then fabricated, installed or completed.

        D.    Owner's Right to Stop the Work:

        If, in the reasonable belief of Owner, Contractor is performing defective work, is failing to correct defective work or is otherwise failing to carry out the Work in accordance with the Contract Documents, then Owner may serve a written notice upon Contractor that he is to stop the Work, or the portion of it described in the notice, until such time as the cause for such stop order has been eliminated.  In no event shall Owner's right to stop the Work obligate Owner to do so for the benefit of Contractor or any other entity or person and Contractor shall have no claim for damage by reason

thereof.

     E.     Right to Carry Out the Work:

If Contractor should fail to prosecute the Work properly (including the failure to man the job due to labor disputes of any type) or fail to perform any provision of the Contract Documents, including unauthorized schedule delay, Owner, after five days written notice to Contractor without correction, may, without prejudice to any other rights or remedy it may have, have such deficiencies made good by others, and may deduct the cost thereof from the payment then or thereafter due to Contractor.

III.    CONTRACTOR

     A.     Definition:

Contractor is identified by name and address in the Agreement between Owner and Contractor and is referred to throughout the Contract Documents as if singular in number and masculine in gender. The term Contractor means either Contractor or his authorized representative, as applicable.

     B.     Errors or Omissions in the Contract Documents:

The Contract Documents are to be thoroughly reviewed and examined by Contractor and any error, inconsistency or omission discovered as a result of this review shall be reported in writing to Owner. Performance of any portion of the Work without Contract Documents, and, where required, approved shop drawings, product data or samples shall be done at Contractor's sole risk.

     C.     Management, Supervision and Procedures:

Contractor shall use his best skill and attention in managing, supervising and directing the Work. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and safety precautions and for the coordination of all of the Work called for in the Contract Documents. Contractor is solely responsible for the acts, omissions and defaults of his employees, Subcontractors and any other person or entity involved in or performing any of the Work called for in the Contract Documents. Inspection of the Work by Owner, approval of the Work by Owner and payment for the Work by Owner shall not relieve Contractor of any of his obligations to perform the Work strictly in accordance with the Contract Documents.

     D.     Contractor's Labor and Materials:

Contractor shall purchase or otherwise arrange for and shall pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities or services required for the complete and workmanlike performance of the Work, including but not limited to temporary and permanent structures whether or not incorporated or to be incorporated into the Work. A force of skilled workers sufficient to accomplish the Work shall be maintained at the Project site at all times and Contractor shall be responsible for maintaining order and discipline among this work force and that of his Subcontractors.

EXHIBIT "E"                      Page 4

[Williston, ND]

**EXHIBIT "A"**
**Page 33 of 59**

Unskilled workers shall not be permitted on the site and Contractor shall remove from the Project any worker about whom Owner makes a reasonable objection.

All workers shall be skilled in the work to which they are assigned, and all work shall be performed under the supervision of an experienced and competent foreman. Contractor shall submit a weekly manpower report to Owner throughout the course of the Work, which shall show the number of tradesmen of each trade working at the site of the Work during the prior week, the number of straight time and over-time hours of each trade worked, and to what portions of the Work such labor was applied.

E.   Materials to be New:

Contractor, by execution of the Contract Documents, warrants to Owner that all materials and equipment furnished under the Contract will be new unless otherwise specified on the Contract Documents, and that all Work will be performed in accordance with the Contract Documents. Failure of Contractor to perform in accordance with this warranty shall be considered grounds for default. Owner may require Contractor to furnish written evidence satisfactory to Owner as to the kind and quality of materials and equipment. The warranty contained in this paragraph is separate from and in addition to any other warranty contained in the Contract Documents.

F.   Sales and Use or Use Taxes:

If a state sales tax is levied upon Owner's payment to Contractor, such sales tax shall be separately shown on each of Contractor's Invoices and Owner shall pay it to Contractor as part of the Contract Sum.

G.   Building Permits, Fees and Notices:

Unless stated to the contrary on the Contract Documents, Contractor shall apply for, obtain and pay for any and all required building permits and for all other approvals, governmental fees, certificates of occupancy, licenses and inspections necessary for the proper execution and completion of the Work. Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority. Contractor shall make certain that the Contract Documents are in accordance with applicable laws, statutes, building codes and other regulations. In the event Contractor believes that any of the Contract Documents are at variance therewith in any respect, he shall promptly notify Owner in writing and any necessary changes shall be accomplished by an appropriate modification to the Contract Documents. Contractor shall assume full responsibility for any work it performed while knowing or having reason to know that the work is contrary to any laws, ordinances, rules or regulations.

At or before Owner's final acceptance of the Work, Contractor shall deliver to Owner all certificates, receipts or other evidence of approval, acceptance or payment of fees which may be required to establish the compliance of the Work with all applicable codes, statutes, rules, regulations and ordinances.

H.   Allowances:

If the Contract Documents so provide, Contractor shall include in the Contract Sum all

EXHIBIT "E"                                    Page 5                          [Williston, ND]

**EXHIBIT "A"**
**Page 34 of 59**

allowances. Allowance items shall be incorporated into the Work in such quantities and for such amounts of money and by such persons or contractors as Owner may direct, in writing. These allowances shall cover the cost to Contractor, less any applicable trade discount, of the materials and equipment required by the allowance delivered to the Project site and all applicable taxes.

The Contract Sum and not the applicable allowance shall include Contractor's cost for unloading and handling on the site, labor, installation cost, overhead, profit and any other expenses contemplated for the original allowance. The Contract Sum shall be adjusted accordingly by Change Order whenever the actual cost is more than or less than the applicable allowance.

I.   Superintendent:

Contractor shall at all times have some competent person, approved by Owner, on the site of the Work to receive instructions and to act with authority for Contractor. Said person shall be the "Superintendent." The Superintendent shall not be changed without the consent of Owner except where the Superintendent proves to be unsatisfactory to Contractor or ceases to be in Contractor's employ. Contractor shall maintain on the Work such supervision, craftsmen, and laborers as in the opinion of Owner are adequate in skills and in numbers to prosecute the Work expeditiously and satisfactorily. Should the management of the work on the Project be unsatisfactory, Contractor shall replace the personnel so responsible, at the request of Owner, after adequate reasons for the replacement have been given Contractor by Owner. Contractor's Superintendent in charge of the Work shall represent Contractor and all directions given to him or his authorized representatives by Owner shall be as binding as if given to Contractor.

J.   Progress Schedule:

Contractor, immediately after being awarded the Contract, shall prepare and submit for Owner's information an estimated progress schedule for the Work. The progress schedule shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work. This schedule shall show the following:

(1)   The start and finish date of each activity.

(2)   The anticipated percent of completion at the end of each month.

Any activity having a duration of more than fifteen (15) working days shall be segmented into fifteen (15) day increments. The schedule after being approved by Owner's Project Manager shall be updated by Contractor monthly or as deemed necessary by Owner's Project Manager. Contractor shall do what is necessary to maintain the agreed upon completion dates, such as working additional time, overtime, and/or with additional forces without additional cost to Owner. Failure of Contractor to comply with the above approved detail construction schedule may be deemed a default of the Contract. Owner's Project Manager has the right to require work done or material assembled on the job in a definite sequence.

K.   Overtime Work:

Owner shall have the right, in its sole discretion and at all times during the progress of the work, to direct Contractor by written notice to work overtime (the term overtime as used herein

[Williston, ND]

**EXHIBIT "A"
Page 35 of 59**

being deemed to mean hours of labor in excess of the normal work day or week as described in the Agreement). If so directed by Owner, Contractor agrees to work overtime and, provided that Contractor shall not have made default in the performance of any of Contractor's obligations under the Contract Documents, Owner agrees to increase the Contract Sum for the actual additional premium portion of the wages incurred and paid by Contractor, at rates approved by Owner in advance in writing, plus such taxes as may be imposed by law on such additional premium portion of the wages and plus the additional cost to Contractor for compensation and liability insurance premiums on such additional premium portion of the wages. Nothing contained in the Contract Documents shall be so construed as to require Owner to make any payments whatsoever for the cost of such overtime as Contractor may necessarily incur or pay in order to fulfill Contractor's obligation to complete the Work within the time limit as set forth in the Agreement.

 L. Documents, Samples and Submittals:

 For delivery to Owner at the conclusion of the Work, Contractor shall maintain in good order at the Project site record copies of all Drawings, Specifications, Addenda, Change Orders and other Modifications and shall mark them to show all deviations from them made during construction and Contractor shall also maintain Shop Drawings, Product Data, Samples and all other Submittals. The above items shall also be available to Owner at his reasonable request.

 M. Shop Drawings, Product Data, Samples and other Submittals:

 1. Definitions:

 Shop Drawings are drawings, diagrams, schedules and other data prepared specifically for the Work by Contractor or any Subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams, catalog cuts and other information furnished by Contractor to illustrate a material, product, equipment, or system for some portion of the Work.

 Samples are actual physical specimens of materials, equipment or workmanship for some portion of the Work.

 Submittals are any or all of the above defined items.

 2. Review, Approval and Submission:

 All submittals which, under the Contract Documents, Contractor is required to provide, whether prepared originally by Contractor or someone else, shall be reviewed, stamped with Contractor's approval and submitted to Owner with reasonable promptness and in such sequence as to cause no delay in the Work or in the work of Owner or any separate contractor. By approving and providing to Owner a submittal, Contractor represents that he has determined and verified all materials, field measurements, and field construction criteria related to the submittal, or will do so, and that he has checked and coordinated the information contained within such submittal with the requirements of the Work and of the Contract Documents. Unless Contractor has specifically informed Owner in writing at the time of submission that a submittal contains a deviation from the

requirements of the Contract Documents, Contractor shall not be relieved of responsibility for such deviation by Owner's approval of the submittal. In addition, Contractor will not be relieved from responsibility for errors or omissions in submittals by Owner's approval thereof.

With regard to all resubmitted shop drawings, product data, samples or other submittals, Contractor shall in writing direct specific attention to revisions or other deviations which are different from or in addition to those required by Owner on previous submittals.

If Contractor commences work on any portion of the Work requiring submission of a shop drawing, product data, sample or other submittal prior to its submission to and approval by Owner, such commencement shall be at Contractor's sole risk.

N.      Use of the Project Site and Cleaning Up:

1.      Contractor shall not unreasonably encumber the site with his materials or equipment and he shall confine his operations to areas permitted by law, ordinance, permits, the directions of Owner's representative and the Contract Documents. All regulations and rules of Owner which may be in effect at the site of the Work regarding employment, passes, badges, smoking, fire prevention, signs, and conduct on the property shall be observed by Contractor, his Subcontractors and their employees. Contractor shall remove from the Work any employee not reasonably satisfactory to Owner. Contractor shall at all times endorse discipline and good order among his and his Subcontractor's employees, and shall not employ on the Work any person not skilled in the work assigned to him. Contractor shall not execute the Work in any manner which will, in the opinion of Owner, hinder, interfere with, molest or delay the prosecution of the Work, the operation of Owner at the site, or the Work of any other contractor employed by Owner. Contractor shall confine its apparatus, equipment, storage of materials and operation of the workmen to the limits indicated by local ordinances, permits, or by direction of Owner, and shall not unreasonably encumber the premises with materials or equipment.

2.      At all times Contractor shall keep the Project site free from accumulations of waste materials or rubbish. All waste materials and rubbish shall be removed from the Project site as well as all of Contractor's tools, construction equipment, machinery, surplus materials and vehicles at the completion of the Work. If for any reason, Contractor fails to completely clean up the Project site at the completion of the Work, Owner may do so and the cost thereof shall be charged to Contractor.

O.      Cutting and Patching:

Cutting or patching of work that may be required to complete the Project in accordance with the Contract Documents shall be the responsibility of Contractor. Contractor shall endeavor not to damage or endanger any portion of the Work or the work of Owner or any separate contractor or any existing structure by cutting, fitting, patching or otherwise altering any work or by excavation. If Contractor shall damage any such work, Contractor shall promptly and completely restore same to its original condition. Except with the written consent of Owner and of any other affected contractor, Contractor shall not cut or otherwise alter the work of Owner or any separate contractor. Contractor shall not unreasonably withhold from Owner or any separate contractor his consent to their cutting or otherwise altering the Work.

[Williston, ND]

**EXHIBIT "A"**
**Page 37 of 59**

P.     Royalties and Patents:

With regard to all products and processes called for by the Contract Documents, Contractor shall pay for any and all applicable royalties and license fees, shall defend all suits or claims for infringement thereof and shall save Owner harmless from loss on account thereof.

Q.     Indemnification:

To the fullest extent permitted by law, Contractor shall indemnify, defend and hold harmless Owner, its officers, employees and agents from and against any and all claims, suits, losses, costs and demands including litigation expenses, counsel fees and liabilities incurred in connection therewith, arising out of injury to, or death of, any person whatsoever or damage to property of any kind by whom so ever owned or any economic loss of any kind to anyone, to the extent caused by the acts, errors or omissions of Contractor, or any firm, entity or other person for whose acts or omissions Contractor is responsible, including all suppliers and subcontractors hired by Contractor, or any of them, while engaged in the performance of the Work or any activity associated therewith or relative thereto. This indemnification obligation shall not be limited in any way by the amount or type of insurance carried by Contractor or any Subcontractor or by the amount of damages, compensation or benefits payable under workers' compensation acts, disability benefit acts or other employee benefit acts.

R.     Lien Indemnification:

If a notice of lien, lien, or the like, alleging non-payment should be filed or served upon Owner by a contractor, laborer, materialman or subcontractor on the Project, Owner shall have the right to retain out of any payment to Contractor then due, or thereafter to become due, an amount sufficient to completely indemnify Owner against said potential lien. In the event the lien should come to be perfected, Owner may call upon Contractor to satisfy it and obtain its removal within ten days and upon his failure to do so may pay the amount of the lien from the retained funds and, within 30 days thereafter, pay the balance, if any, less Owner's expenses in the matter (including court costs and actual attorney's fees), to Contractor. Contractor specifically agrees in this event that Owner may consider the amount of the lien as presumptively correct. In the event the lien is not perfected within the period of time set by law for the enforcement of liens, or within such extended time as the lienor may by law obtain, Owner shall pay, without interest to Contractor whatever sums were retained, less Owner's expenses (including court costs and attorney's fees) in disproving the lien. Contractor shall also be responsible for the amount of any premium for any bond given by Owner to obtain the discharge of any lien, or for the interest on any money deposited for the purpose of discharging any lien. Contractor's obligations under this paragraph shall extend to the successors-in-title of Owner.

S.     Publicity and Confidential Information:

Contractor shall not publicize its involvement in the Work for Owner or supply any person with information concerning the facility without prior written approval from Owner except where necessary to carry out the obligations under the Contract Documents. Contractor shall not use or supply to any third person any information relating to any manufacturing process or trade secret of Owner which Contractor may have acquired in the course of this Project.

T.    Owner Furnished Material:

In the event that property, materials or articles of any type are furnished by Owner to Contractor hereunder, or in connection herewith, Contractor assumes complete liability therefore, unless otherwise provided in the Contract Documents.

U.    Notice of Labor Disputes:

1.    Whenever Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay its timely performance on the Project, Contractor shall immediately give written notice thereof, including all relevant information and respect thereto, to Owner.

2.    Contractor agrees to insert the substance of this clause, including this paragraph, in any subcontract hereunder, except that each such subcontractor shall provide that in the event its timely performance is delayed or threatened by any actual or potential labor dispute, the subcontractor shall immediately notify his next higher tier subcontractor, or the prime Contractor, as the case may be, of all relevant information with respect to such dispute.

V.    Records and Communications:

1.    _Records_.  Before Contractor's Work begins, procedures for keeping and distributing orderly and complete records of the Work and its progress shall be established to the satisfaction of Owner.  The procedures so established shall be followed throughout the course of the Work unless Owner and Contractor mutually agree in advance and in writing to revise the procedures.

2.    _Communications_.  Before Contractor's Work begins, complete procedures for communications between and among Owner and Contractor shall be established to the satisfaction of Owner.  The procedures so established shall be followed throughout the course of Work unless Owner and Contractor mutually agree in advance and in writing to revise the procedures.

W.    Compliance with Laws and Regulations:

By execution of this Agreement, Contractor warrants:  (a) that all of the Work will be provided and produced in compliance with all requirements of the Fair Labor Standards Act of 1938, as amended, and (b) that all the Work shall comply with the applicable federal standards prescribed by the Occupational Safety and Health Act of 1970, as amended, and (c) that all chemical substances and products containing chemical substances will comply with the applicable federal standards prescribed by the Toxic Substances Control Act (TSCA) and regulations promulgated under it, and (d) Contractor will comply with all applicable laws, rules and regulations of federal, state and local governments and agencies thereof including but not limited to all environmental laws, Executive Orders 11246 (Equal Employment Opportunity), Executive Order 11458 (Minority Business Enterprises), Public Law 93-112, Section 402 (The Vietnam Era Veterans Readjustment Act of 1974), and Public Law 95-507, Section 211 (Contract Opportunities for Certain Small Business Concerns) and all rules and regulations passed pursuant thereto which are hereby incorporated herein by this reference, unless this Project is exempt pursuant to said

[Williston, ND]
**EXHIBIT "A"**
**Page 39 of 59**

Executive Orders or Acts and regulations issued thereunder.

IV.     SUBCONTRACTORS AND SUB-SUBCONTRACTORS

    A.     <u>Definitions</u>:

        1.     A Subcontractor is a person or entity which as a direct contract with Contractor to perform any portion of the Work at the Project site. The term Subcontractor means a Subcontractor or his authorized representative. The term Subcontractor does not include any separate contractor or his subcontractors.

        2.     A Sub-subcontractor is a person or entity which has a direct or indirect contract with a Subcontractor to perform any portion of the Work at the Project site. The term Sub-subcontractor means a Sub-subcontractor or an authorized representative thereof.

    B.     Subcontracting:

Contractor shall not perform with its own forces portions of the Work which it does not customarily so perform. Prior to the commencement of the Work at the Project site, Contractor shall furnish to Owner in writing the names of the persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each of the principal portions of the Work. As soon as practicable thereafter, after consultation with Owner, Owner will notify Contractor in writing whether or not Owner takes reasonable objection to any such proposed Subcontractor. Once Owner has given Contractor written notice of their reasonable objection, Contractor shall not subcontract to the person or entity to whom the objection has been made.

If Contractor has relied upon the bid or proposal of a subcontractor which Contractor, in good faith, believes is fully qualified to perform that portion of the Work and Owner takes reasonable objection to the subcontractor upon whose bid or proposal Contractor has relied, then Contractor shall submit a substitute subcontractor to whom Owner have no objection. The Contract Sum shall be increased or decreased by the difference in cost occasioned by the substitution and the appropriate Modification issued.

    C.     Subcontract Documents:

Contractor shall employ each Subcontractor with a written subcontract document such that each Subcontractor is bound to Contractor by the terms of the Contract Documents and assumes toward Contractor all of the obligations and responsibilities which Contractor assumes toward Owner under the Agreement between Contractor and Owner. Contractor shall be obligated to submit a copy of the subcontract or agreement that will be used for each Subcontractor to the Owner for approval. The subcontract agreement shall bind the Subcontractors by the terms set forth in the Contract Documents specifically focusing on quality, record keeping, warranties, insurance and scheduling. Contractor's agreement with each of his Subcontractors shall preserve and protect the rights of Owner under the Contract Documents as to the portion of the Work assigned to each Subcontractor and the subcontracting of that portion of the Work shall not diminish the rights of Owner against Contractor and those that Contractor has against Owner. Each Subcontractor shall similarly engage its Sub-subcontractors. Contractor shall make available to his Subcontractors sufficient copies of the Contract Documents and each Subcontractor shall make sufficient copies of

the Contract Documents available to his Sub-subcontractors. Subcontracting shall in no way lessen or affect Contractor's obligations to Owner under the Contract Documents.

V.     WORK DONE BY OWNER OR BY OTHERS

    A.     Owner's Right to Perform Work and to Engage Others:

    Work related to the Project may be performed by Owner's own forces or under separate contracts let by Owner. Any such performance by Owner or a separate contractor shall not, in and of itself, be ground for a claim for delay or additional cost by Contractor. However, if Contractor is actually delayed by Owner or a separate contractor he shall be entitled to an extension of time if provided for elsewhere in these General Conditions for Construction.

    B.     Cooperation:

    Owner, Contractor and each separate contractor shall cooperate with one another in the use of the site, storage of their materials and equipment and the execution of their work and shall connect and coordinate their work as required by the Contract Documents. Work which will be performed by Owner or any separate contractor and upon which Contractor depends for proper execution of his portion of the Work shall be inspected by Contractor promptly upon its completion and apparent discrepancies or defects in such other work shall be reported in writing to Owner. If Contractor does not make such a report within a reasonable time after the completion of the work upon which his Work depends, except as to latent defects, this shall constitute Contractor's acceptance of such work done by Owner or a separate contractor. The cost of correcting any work which was not done properly and of which timely notice was given shall be the responsibility of the party who performed it.

    Owner, Contractor and all separate contractors shall diligently endeavor not to damage the work of others. If any such damage takes place, it shall be promptly corrected at the expense of the party causing the damage. If Contractor damages the work of a separate contractor, then Contractor shall promptly settle the matter directly with the other contractor and shall hold Owner harmless from any and all effects of such damage.

    Contractor is obligated to clean up the Work in accordance with other provisions of these General Conditions. Owner and separate contractors shall similarly clean up in the areas of their work. Owner reserves the right to clean up and charge the cost thereof to the contractors responsible if a dispute arises between Contractor and any separate contractors as to their responsibility for cleaning up. Owner's determination shall be final.

VI.     SCHEDULE

    A.     Definitions:

    1.     <u>Date of Commencement</u>. The Date of Commencement of the Work is the date established in the Notice to Proceed from Owner to Contractor. If no Notice to Proceed is issued, it shall mean the date of execution of the Agreement between Owner and Contractor or such other date as may be established therein.

**EXHIBIT "A"**
**Page 41 of 59**

2.   <u>Date of Substantial Completion</u>. The Date of Substantial Completion of the Work or designated portion thereof is the date of the Certificate of Occupancy when construction is sufficiently complete, in accordance with the Contract Documents, so that Owner's tenant can occupy or utilize the Work or designated portion thereof for the use for which it is intended.

3.   <u>Date of Final Completion</u>. The Date of Final Completion of the Work is the date approved by Owner when all work called for in the Contract Documents is complete and all other terms and conditions of the Contract Documents applicable to Contractor have been fulfilled.

4.   <u>Day</u>. The term Day as used in the Contract Documents shall mean calendar day unless otherwise specifically designated.

B.   Progress and Completion:

Time is of the essence of the Agreement for construction between Owner and Contractor. Contractor shall begin the Work on the Date of Commencement, man the Project site with adequate forces and achieve Substantial Completion within the Project's schedule. Thereafter, Final Completion shall be achieved as expeditiously as possible.

C.   Force Majeure and Extensions of Time:

In the event that either Owner or Contractor shall be delayed or hindered in or prevented from performance of any act required herein by reason of unavoidable labor dispute, unavoidable inability to procure materials, failure of power, restrictive governmental laws and regulations, riots, insurrections, war, fire, adverse weather conditions not reasonably anticipatable, other unavoidable casualties or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under the Contract Documents, then performance of such acts shall be excused for the period of the delay and the period for the performance of any such acts shall be extended for an equivalent period. If Owner or any separate contractor employed by Owner delays Contractor, this shall be considered an event of force majeure. However, in no event shall Contractor be entitled to any compensation for any force majeure delay other than the extension of the Project schedule described above.

Contractor's claims, if any, for extension of time must be made in writing to Owner not more than five working days after Contractor has notice of the delay. Thereafter, Contractor must provide full details and supporting documentation with regard to the cause of the delay within 15 working days of the initial notice of the delay to Owner. If either the initial notice or the supporting documentation are not filed with Owner in writing within the time periods specified, the claim for delay shall be deemed to be waived. If the cause for the delay is a continuing one, then only one claim is necessary. Contractor's supporting documentation to Owner shall include an estimate of the probable effect of the delay on the progress of the Work and the Project schedule.

Unless otherwise specified in the Contract Documents, any delay in the giving of Owner's interpretations or decisions shall not give rise to a claim for delay until 15 days after Contractor's written request for them and the failure of Owner to provide the requested interpretation within an additional ten (10) working days.

VII.   PROGRESS AND FINAL PAYMENTS

    A.    Contract Sum:

        The Agreement between Owner and Contractor sets forth the Contract Sum as a firm fixed Construction Price or a Guaranteed Maximum Construction Price or Guaranteed Maximum Cost, as the case may be. The Contract Sum, including authorized adjustments thereto, is the total (or maximum, as the case may be) amount payable by Owner to Contractor for the performance of the Work under the Contract Documents.

    B.    Schedule of Values:

        Before submitting his first Invoice to Owner, Contractor shall submit to Owner a schedule of values allocated to the various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as Owner may require.

    C.    Invoices:

        1.    <u>Submission</u>.   In accordance with the Payments or Progress and Final Payments (as the case may be) Articles in the Agreement between Owner and Contractor, Contractor shall submit to Owner an itemized Invoice, notarized if required, supported by such data substantiating Contractor's right to payment as Owner may require.

        If approved in advance by Owner, payments will be made on account of materials or equipment not yet incorporated in the Work but delivered, suitably stored and protected at the Project site. With the advance written approval of Owner, payments will similarly be made for materials or equipment suitably stored, protected and identified to the Project at some other location. Payments for materials or equipment stored on or off the Project site shall only be made upon submission by Contractor of bills of sale or such other procedure satisfactory to Owner to establish Owner's title to such materials or equipment or otherwise protect Owner's interest, including applicable insurance, bonded warehouse storage and transportation to the Project site where those materials and equipment are stored off the Project site.

        Title to all Work, materials and equipment covered by an Invoice will pass to Owner either by incorporation in the construction or upon the receipt of payment by Contractor, whichever occurs first, free and clear of all liens, claims, security interest or encumbrances, hereinafter referred to as "liens". Contractor warrants the above title and that no work, materials or equipment covered by an Invoice will have been acquired by Contractor, or by any other person for whose performance Contractor is responsible, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the seller or otherwise imposed by Contractor or such other person.

        2.    <u>Owner Review</u>.   Owner will, within twenty-eight (28) days after the receipt of a Contractor Invoice, review it for accuracy, completeness and conformance with the status of work completed and material stored.

[Williston, ND]

**EXHIBIT "A"**
**Page 43 of 59**

3.    <u>Owner Payments</u>.  Following Owner's review as to the amount to be paid with regard to an Invoice, Owner shall make payment as set forth in Owner-Contractor Agreement or, if Owner does not agree with the Invoice, it will so notify Contractor in writing.

D.    Payments to Subcontractors:

Upon receipt of payment from Owner, Contractor shall promptly pay each Subcontractor out of the amount paid to Contractor on the account of such Subcontractor's work, the amount to which said Subcontractor is entitled, reflecting the percentage actually retained, from payments to Contractor on account of such Subcontractor's work.  By an appropriate agreement with each Subcontractor, Contractor shall require each Subcontractor to make payments to his Sub-subcontractors in a similar manner.  If requested, Owner may furnish to any Subcontractor or Sub-subcontractor information regarding the percentages of completion or the amounts Invoiced for by Contractor and the amounts paid by Owner.  However, Owner shall not have any obligation to pay or see to the payment or use of any monies to any Subcontractor except as may otherwise be required by law; however, Owner may pay Contractor and any Subcontractor by joint check for any reason and all such payments shall be credited against Owner's obligations hereunder.

Owner's opinion as to amounts due Contractor, the approval of a progress payment, and actual progress payments made shall not constitute an acceptance of any work not in accordance with the Contract Documents.

E.    Substantial Completion:

As soon as Contractor considers that the Work, or a designated portion thereof which Owner has previously indicated it will accept, is Substantially Complete as defined in Article VI, Contractor shall prepare for submission to Owner a punch list of items to be completed or corrected. The failure to include any items on the punch list does not alter the responsibility of Contractor to complete all work in accordance with the Contract Documents.  Owner shall then inspect the Work or designated portion thereof to determine if it is Substantially Complete as defined in the Contract Documents and to verify the accuracy and completeness of the punch list.  Owner will then fix a reasonable time within which Contractor shall complete the items on the punch list.  Warranties required by the Contract Documents shall commence on the Date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in a written agreement between Owner and Contractor.

F.    Final Completion and Final Payment:

When Contractor believes that the Work is ready for final inspection and acceptance, he shall prepare the final Invoice and send it to Owner along with his statement that, in his opinion, the Work is complete.  Owner and Contractor will promptly make an inspection, and Owner shall determine whether the Work is acceptable under the Contract Documents and all the terms and conditions of the Contract Documents have been fulfilled.

Contractor shall not be paid his final payment or any remaining retained percentage until Contractor submits to Owner (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which Owner and its property might in any way be responsible, have been paid or otherwise satisfied, (2) consent to final payment by

EXHIBIT "E"                              Page 15                              [Williston, ND]

**EXHIBIT "A"**
**Page 44 of 59**

Contractor's surety, if required, (3) all other data required by Owner establishing payment or satisfaction of all such obligations, including but not limited to, receipts, releases and waivers of lien arising out of the Contract, and (4) all other required documents (including but not limited to warranties and as-built drawings). Contractor may furnish a bond satisfactory to Owner (or, if applicable, its permitted assigns or successors-in-title) to indemnify it against any potential lien if a Subcontractor refuses to furnish a release or waiver required by Owner. Contractor shall refund to Owner, its permitted assigns, or successors-in-title all monies that the same may be compelled to pay in discharging a lien, including all costs and reasonable attorney's fees, if any such lien remains unsatisfied after all payments are made. The making of final payment shall constitute a waiver of all claims by Owner except those arising from: (1) unsettled liens, (2) faulty or defective work, (3) failure of the work to comply with the requirements of the Contract Documents or (4) the terms of any warranties required by the Contract Documents.

The acceptance of final payment by Contractor shall constitute a waiver of all claims by Contractor except those previously made in writing, made fully in accordance with the Contract Documents and identified by Contractor in writing as unsettled at the time of the final Invoice.

VIII.   SAFETY AND SECURITY

A.   Safety Programs:

Contractor shall be responsible for developing, implementing, maintaining and supervising all safety programs in connection with the Work and the Project site to the complete satisfaction of Owner's Project Manager.

B.   Safety Precautions:

Contractor is responsible for taking all reasonable safety precautions to prevent injury or death to persons or damage to property. These obligations extend to the protection of all employees on the Work and all other persons who may be affected by the Work in any way. Protection of property includes the Work and all materials and equipment to be incorporated into it, whether in storage on or off the site, under the care, custody or control of Contractor or any person or entity for whom Contractor is responsible. In addition, protection of property includes other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

Contractor shall ascertain and comply with all requirements to give notices and shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury or loss. Contractor shall ascertain the requirements for and shall erect and maintain, as required by law and/or existing conditions, all reasonable safeguards for safety and protection, including but not limited to, posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent property.

If the Work involves any ultrahazardous activities or the use or storage of explosives or other hazardous materials or equipment, Contractor shall exercise the utmost care and shall carry on such activities under the supervision of properly qualified and licensed personnel.

EXHIBIT "E"                     Page 16                     [Williston, ND]

**EXHIBIT "A"**
**Page 45 of 59**

Any and all damage or loss to any property caused in whole or in part by Contractor or any person or entity for whose performance Contractor is responsible shall be promptly remedied at the expense of Contractor.

A responsible member of Contractor's organization shall be designated in writing to Owner as Contractor's safety officer. This person's duties shall include the compliance with this Article VIII and, if this person is not Contractor's Superintendent, then this person shall report directly to the Superintendent.

Contractor shall not load or permit any part of the Work to be loaded in such a way as to endanger persons or property.

C.     Emergencies:

With regard to any emergency endangering persons or property, Contractor shall act, at his discretion, to prevent or, at least, minimize the injury to persons or damage to property. Additional compensation to Contractor or extension of time, if any, claimed on account of emergencies shall be determined as provided in Article IX hereof.

D.     Security:

Unless Contractor is otherwise notified in writing by Owner, all Owner property and premises are to be secure as possible. Contractor shall abide by all security requirements communicated to him in writing by Owner. Contractor's failure to comply with these requirements in any way shall be grounds for termination for default.

IX.     CHANGES IN THE CONTRACT DOCUMENTS DURING CONSTRUCTION

A.     Change Orders:

1.     Definition:  A Change Order is a written order to Contractor signed by Owner authorizing a change in the Work and/or an adjustment on the Contract Sum and/or an adjustment in the Contract Schedule, and issued after execution of Owner-Contractor Agreement. Only with a Change Order may the Contract Sum or the Contract Schedule be changed. A Change Order signed by Contractor evidences his agreement with the Change Order including, but not limited to, any adjustment in the Contract Sum and/or the Contract Schedule included therein.

2.     Owner-Ordered Changes.     Without invalidating Owner-Contractor Agreement, Owner may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and/or the Contract Schedule being adjusted accordingly, if necessary. All such changes in the Work must be authorized by a Change Order and must be performed in accordance with the Contract Documents.

3.     Cost of Changes.  A Change Order may result in an increase, decrease or no change in the Contract Sum. The cost or credit, if any, to Owner resulting from a Change Order shall be determined in one or more of the following ways: (a) By an agreement between Owner and Contractor on a lump sum amount which shall include all items necessary for completion of the Change Order work (including but not limited to design services, labor, material equipment and

EXHIBIT "E"                              Page 17

other costs); (b) by using the unit prices included in the Contract Documents or otherwise agreed upon by Owner and Contractor; (c) by an agreement between Owner and Contractor and the Work shall be performed on the basis of its cost plus a mutually acceptable fixed fee; or (d) by the method set forth below.

If Owner and Contractor cannot resolve the cost of the change by any of the methods set forth above, Contractor, upon receiving a written order signed by Owner, shall promptly proceed with the work involved. Thereafter, Owner shall determine the cost of such work on the basis of the reasonable expenditures and savings of those performing the work and attributable to the change, including, increase or decrease in the Contract Sum, and an adjustment for overhead and profit as provided in the contract. In all cases except under subparagraph 3(a) above, Contractor shall keep an itemized accounting together with appropriate supporting data for inclusion in a Change Order. Such data shall be presented to Owner in such form as he may require. Unless otherwise agreed or provided in the Contract Documents, cost of the Work is limited to the following: cost of materials, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance and fringe benefits required by agreement or custom; workers' compensation insurance; bond premiums; rental cost of equipment and machinery; and the additional cost of supervision and field office personnel directly attributable to the change. The amount of credit to be allowed by Contractor to Owner for any deletion or change which results in a net decrease in the Contract Sum will be the amount of the actual net cost as confirmed by Owner. If both additions and deletions to the Work are involved in any one change, the allowance for overhead and profit shall be computed on the net increase or decrease, if any, with respect to that change.

      4.    <u>Unit Prices</u>. If unit prices are stated in the Contract Documents or are otherwise agreed to between Owner and Contractor, and if the quantities originally contemplated are so greatly different from those included in a Change Order that the application of the previously agreed upon unit prices to the quantities of work proposed will cause substantial inequity to either Owner or Contractor, then the applicable unit prices shall be equitably adjusted.

      B.    Minor Changes in the Work:

Owner has authority to order minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Schedule. All such minor changes must be consistent with the intent of the Contract Documents. Minor changes shall be ordered in writing, shall be binding on Contractor and Contractor shall promptly carry them out.

X.    QUALITY CONTROL

      A.    Standards of Quality:

Before Contractor's Work begins, standards of workmanship quality shall be established to the satisfaction of Owner's Project Manager. Unless otherwise specifically provided for in the Specifications, all equipment, materials and articles incorporated in the Work are to be new and of the best grade of their respective kind for the purpose.

Where several materials are specified by name for one use. Contractor may select for use any one of those specified. No substitution of materials, articles, or processes required under the

EXHIBIT "E"              Page 18           [Williston, ND]

Agreement shall be made without written approval of Owner's Project Manager. Samples of materials and mock-ups shall be submitted for approval when so directed.

B.    Unacceptable Employees:

Owner may require Contractor to remove from the Work such employees as it may deem incompetent, careless, insubordinate, or inimical to the public interest.

C.    Warranty:

Contractor warrants that all work performed under this Contract shall be free from defects in workmanship or materials, shall conform to the requirements of the Specifications and other Contract Documents, and shall be fit and sufficient for the purposes expressed in or reasonably to be inferred from, the Contract Documents. Contractor shall, at no expense to Owner, correct any failure to fulfill the above warranty which may appear at any time within two years (or, in the case of items as to which a longer warranty period is set forth in the Specifications, within such longer period) after the Date of Substantial Completion. In any event, the warranty herein expressed shall not be sole and exclusive and is additional to any other warranties express or implied.

D.    Tests:

Contractor is responsible for timely notice to Owner with regard to the carrying out of any inspection, test or approval required in the Contract Documents, applicable laws, ordinances, rules, regulations or the order of any public body having jurisdiction over the Project. The timely notice to Owner shall be that Contractor is ready to perform or arrange for the performance of the test or inspection and gives Owner the opportunity to observe such inspection, testing or approval. The cost of all such inspections, tests or approvals required by the Contract Documents or public authorities shall be borne by Contractor. The cost of all other inspection, test or approvals shall be borne by Owner except as provided in the paragraph below.

If, in the reasonable opinion of Owner, any Work requires special inspection, testing or approval not mentioned in the Contract Documents, Owner shall in writing instruct Contractor to order such special inspection, testing or approval and Contractor shall give notices provided above. If such special inspection or testing indicates that the Work inspected does not comply with the requirements of the Contract Documents, Contractor shall bear all costs thereof, including the cost of the testing and the cost to repair or replace the Work, made necessary by the failure of the Work inspected to be in accordance with the Contract Documents. If such special inspection or testing does not reveal a failure of the Work to comply with the Contract Documents then Owner shall bear such costs and an appropriate Change Order shall be issued.

All required certificates of inspection, testing or approval shall be obtained by Contractor and promptly delivered to Owner.

E.    Uncovering of Work:

If Contractor covers any Work which Owner requested the opportunity to inspect or covers it contrary to the Contract Documents, if required in writing by Owner, Contractor shall uncover this Work for Owner's inspection and all costs of such uncovering and covering after inspection

shall be borne by Contractor. If Owner requests that Contractor uncover any portion of the Work that Owner had not specifically requested to observe prior to being covered, then if such Work is found to be in accordance with the Contract Documents, the cost of uncovering and covering it after inspection shall be charged to Owner and the appropriate Change Order issued. If such Work is found not to be in accordance with the Contract Documents, Contractor shall pay the cost of uncovering and covering it after inspection.

F.      Correcting Defective Work:

All Work rejected by Owner as defective or as failing to conform to the Contract Documents whether observed before or after Substantial Completion and whether or not then fabricated, installed or completed shall be promptly corrected by Contractor. Contractor shall be responsible for all costs of correcting such defective and nonconforming Work, including but not limited to the compensation for Owner's additional services made necessary thereby, if any.

If Contractor fails to correct defective or non-conforming work, Owner may correct it at the expense of Contractor. In addition, if Contractor does not proceed with the correction of defective or non-conforming work within a reasonable period of time, Owner may remove it and store it at the expense of Contractor. If Contractor fails to pay the cost of such removal and storage within 10 days of written notice from Owner, Owner may sell the work by any means it chooses and, after satisfying its expenses incurred herein, shall pay the balance remaining, if any, to Contractor. If the proceeds of such a sale do not cover all costs which Contractor should have borne, the difference shall be charged to Contractor.

G.      Two Year Warranty:

In addition to any special or longer warranties required by the Contract Documents, if, within two years after the Date of Substantial Completion of the Work or designated portion thereof, any of the Work is found to be defective or not in accordance with the Contract Documents, Contractor shall correct it promptly after receipt of a written notice from Owner to do so unless Owner has previously given Contractor a written acceptance of such condition or deviation from the Contract Documents. This obligation shall survive termination of the Contract. Owner shall give notice of defects or deviations hereunder promptly after discovery of the condition.

All warranties granted under or pursuant to the Contract Documents may be assigned from time to time by Owner to one or more parties including Owner's lenders or tenant or a purchaser of the Project.

Nothing contained herein shall be construed to establish a period of limitation with respect to any other obligation which Contractor might have under the Contract Documents. The establishment of the time period of one year after the Date of Substantial Completion or such longer period of time as may be prescribed by law or by the terms of the Contract Documents relates only to the specific obligation to correct the Work, and has no relationship to the time within which his obligation to comply with the Contract Documents may be sought to be enforced, in court or otherwise, nor to the time in which proceedings may be commenced to establish Contractor's liability with respect to his obligations other than specifically to correct the Work.

EXHIBIT "E"                         Page 20                         [Williston, ND]

H.      Acceptance of Defective or Non-Conforming Work:

At Owner's sole option it may accept defective or non-conforming work. Owner may do so instead of requiring the removal and correction of such work, in which case a Change Order will be issued to reflect an appropriate reduction in the Contract Sum, or, if the amount is determined after final payment, it shall be paid by Contractor to Owner.

## XI.    CLAIMS BY CONTRACTOR

In accordance with the Contract Documents, Contractor may make a claim for increase in the Contract Sum if he has valid grounds therefore and he shall give Owner written notice thereof within five working days after the occurrence giving rise to such a claim. This notice shall be given by Contractor before proceeding to execute the Work, except in an emergency endangering life or property in which case Contractor shall proceed in accordance with paragraph VIII C. The full and complete details of the claim (sufficient for Owner to determine the validity and value of the claim, if any), its causes and all supporting data shall be given to Owner in writing within 15 working days of the occurrence giving rise to the claim. No claim shall be valid unless so made and Contractor waives all claims not made in accordance with these General Conditions. If Owner and Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined by dispute resolution under paragraph XII. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order.

## XII.   DISPUTES

In the event a dispute between Owner and Contractor arises under Owner-Contractor Agreement or performance thereunder, the matter shall be resolved by negotiation between Owner's Project Manager and Contractor's Project Manager. If these people are unable to resolve the matter, then any controversy or claim arising out of or relating to the Contract Documents, or the breach thereof, or the Project generally, shall be settled by litigation. If Owner is the prevailing party in any litigation, Owner shall be entitled to recover from Contractor all damages, costs and expenses, including management time and actual attorney's fees, incurred in connection with the dispute. The prevailing party in any litigation shall be entitled to recover all damages, costs and expenses, including management time and actual attorney's fees, incurred in connection with the dispute.

## XIII.  SUSPENSION OF THE WORK

Owner may order Contractor, in writing, to suspend all or any part of his Work hereunder for such period of time as Owner may determine to be appropriate for its convenience.

If the performance of all or any part of the Work is, for an unreasonable period of time, suspended by the written order of Owner, an adjustment shall be made for any increase in cost of performance of this Agreement necessarily caused by such suspension, and the Agreement modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension to the extent that performance would have been suspended by any other cause, including the fault or negligence of Contractor. No adjustment shall be made for any other suspension (whether implied, constructive or oral).

EXHIBIT "E"                    Page 21·                   [Williston, ND]

## XIV.    TERMINATION OF CONTRACTOR

Owner may, by written notice to Contractor, terminate this Agreement in whole or in part at any time, for convenience or because of the failure of Contractor to fulfill its contractual obligations. Upon receipt of such notice, Contractor shall: immediately discontinue all services affected (unless the notice directs otherwise), and deliver to Owner copies of all data, drawings, specifications, reports, estimates, summaries, and such other information and materials as may have been accumulated by Contractor in performing the Work whether completed or in process.  Purchase orders, subcontracts and other agreements entered into by Contractor in support of his performance of the Work shall include a provision whereby they may be assigned to Owner.  If this Agreement is terminated, Contractor shall assign to Owner all such purchase orders, subcontracts and agreements requested by Owner.  In addition, Contractor shall turn over to Owner all work in progress and materials.

If the termination is for the convenience of Owner, an equitable adjustment in the compensation of Contractor shall be made, but no amount shall be allowed for anticipated profit, unperformed services or intangibles.

If the termination is due to the failure of Contractor to fulfill his contractual obligations, Owner may take over the Work and prosecute the same to completion by contract or otherwise and Owner shall be compensated by Contractor for any losses or costs it incurs by virtue of this termination for failure to perform.

[Williston, ND]

**EXHIBIT "A"**
**Page 51 of 59**

EXHIBIT "F"

## CONTRACTOR'S INSURANCE REQUIREMENTS

A.    The Contractor shall purchase with its own funds or provide and maintain throughout the life of this Agreement the minimum types and amounts of insurance set forth below which insurance shall provide worldwide coverage of Contractor's operations:

| | | |
|---|---|---|
| 1. | Worker's Compensation and Occupational Disease Insurance-- | Statutory Limits |
| 2. | Employer's Liability-- | $500,000 per person |
| 3. | General Liability, including | combined single limit $1,000,000 each occurrence |
| a. | comprehensive form | |
| b. | premises—operations | |
| c. | products/completed operations hazards | |
| d. | contractual insurance | |
| e. | broad from property damage | |
| f. | independent contractors | |
| g. | personal injury | |
| 4. | Automobile Liability | combined single limit $1,000,000 each occurrence |
| 5. | Builder's Risk | The amount of this Contract |
| | | Owner will contribute a maximum of $1,000 to deductible for all claims under the builder's risk policy. |

**Contractor carries a $2,000,000 umbrella policy**

(All risks except burglary, provided however, that Contractor shall be solely responsible for any loss of property at the site, including Contractor's personal property, due to burglary).

B.    Additional Insured.

Owner and Owner's designated Lender shall be named as additional insured on Contractor's general and automobile liability insurance policies which shall also include a severability of interest or cross liability provision.  The language in the policies and/or endorsements naming the Owner as an additional insured shall include this sentence:

"The inclusion herein of any person or entity as an additional insured shall not affect any right such person or entity would have as a claimant hereunder if not so included."

C.    The Contractor shall supply Owner with certificates evidencing the fact that all of the above coverages are in force throughout the life of this Agreement and that Owner will receive at least 30 days advance notice of any change in or cancellation of any coverage.

EXHIBIT "F"                                Page 1                                [Williston, ND]

## EXHIBIT "G"

## PERFORMANCE AND LABOR/MATERIAL PAYMENT BOND REQUIREMENTS

1.   If required by Owner or Owner's designated Lender, separate Performance and Labor/Material Payment Bonds shall be submitted in duplicate at the time this agreement is executed or when required thereafter.

2.   The bonds shall be made out in favor of Owner and Owner's designated Lender (or such other Lenders as designated by Owner) as joint obligees.

3.   The bonds shall be made out for the amount of the Guaranteed Maximum Cost.

4.   The bonds shall remain in effect until all obligations under the Agreement have been completed.

5.   The bonds shall be written in the form of AIA Document A312, and the attorney-in-fact who executes the bonds shall affix thereto an original, certified and current copy of his Power of Attorney.

6.   The bonds, in the form stated above, shall be with a surety acceptable to Owner and licensed to do business in the state where the project is located.

[Williston, ND]

**EXHIBIT "A"
Page 53 of 59**

## EXHIBIT "H"

### FORM OF LENDER AGREEMENT

### AGREEMENT OF GENERAL CONTRACTOR

THIS AGREEMENT OF GENERAL CONTRACTOR (hereinafter referred to as "Agreement"), made _____ ___, 20__, by _____ (herein called "Contractor"), in favor of _____ (herein called "Bank"),

**BACKGROUND**

WHEREAS, Bank, pursuant to the terms and conditions of the Loan Agreement dated _____ _____, 20__ between _____ ("Owner") and Bank (the "Loan Agreement"), will be providing financing for the construction of a project (the "Project") on certain premises (the "Property"), both as more particularly described in the Loan Agreement; and

WHEREAS, Contractor and Owner have entered into a construction contract dated _____ (the "Contract") for the construction of the Project on the Property; and

WHEREAS, it is a condition to Bank's making the loan described in the Loan Agreement (the "Loan") that Contractor enter into this Agreement, on which Agreement Bank will be relying in advancing the Loan pursuant to the Loan Agreement.

**NOW, THEREFORE,** in consideration of the premises contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

**Construction Contract.** Contractor represents and warrants that: (i) the Contract is in full force and effect, is valid and enforceable, and has not been altered, modified or amended; (ii) neither Contractor nor, to the best of Contractor's knowledge, Owner are in default under any of the terms, covenants or conditions of the Contract; (iii) Contractor is not prohibited under any law, agreement, judgment or permit from performing any of its obligations under the Contract; (iv) no action has been brought or, to the best of Contractor's knowledge, is threatened which in any manner is likely to interfere with the performance of any of Contractor's obligations under the Contract; and (v) Contractor has full power and authority to execute and deliver this Agreement.

**Agreement to Perform.** Contractor agrees, at the request of Bank and without regard to any prior default of Owner under the Contract, to continue to perform under the terms of the Contract if Bank should undertake to complete or cause the completion of the Project, provided that Contractor shall be paid in accordance with the Contract for any work, labor and material rendered on Bank's behalf following such request.

**Modification and Amendments.** Contractor agrees that, without the prior written consent of Bank: (i) no modifications to the Contract shall be made; (ii) no

changes in the Bank approved plans, specifications, working drawings or cost breakdowns for the Project shall be made; (iii) no changes in the nature, amounts or payees of any disbursement request submitted to Bank shall be made; (iv) the Contract will not be terminated; and (v) no release of the Contractor by Owner shall be operative or effective as to Bank.

**Contractor's Covenants.** Contractor agrees: (i) to give Bank prompt written notice at Bank's address as set forth above of any defaults by Owner under the Contract and to give Bank, at the sole option of Bank, the right (but not the obligation) to cure any defaults by Owner under the Contract for a period of thirty (30) ays after receipt by Bank of notice of such default; (ii) not to assign its rights and obligations under the Contract without the prior written consent of Bank; (iii) to pay and discharge all liens or claims for labor and materials furnished in connection with the construction of the Project pursuant to the Contract; (iv) to fully complete the Project in a good and workmanlike manner on or before the completion date specified in the Contract, subject to an permitted delays as set forth in the Contract; (v) that in the event any of the Loan proceeds are disbursed under the Loan Agreement directly to Contractor, Contractor will receive such advances as a trust fund for the work to be performed under the Contract and Contractor will apply such sums first to such payment before using any part of such advances for any other purpose; (vi) that Bank shall have no liability to Contractor either under the Contract, this Assignment thereof, or otherwise, for any act or omission occurring prior to such time as Bank elects in writing to assume the future obligations of Owner under the Contract; and (vii) to furnish to Bank, upon request, complete, current and correct lists of all subcontractors and material suppliers of the Project.

**Inspection of Project.** Contractor will permit Bank or its agents at any time (i) to enter upon and inspect the work or construction at the Project and (ii) in the event that any mechanics' or materialmen's liens are filed against the Project, or other questions are raised concerning Contractor's performance relating to the Project, to examine such portions of Contractor's books and records as relate to the Project or the Contract, as Bank or its agents may require.

**Subordination.** Contractor further agrees that any present or future lien rights Contractor may have shall be subject and subordinate at all times to the lien of Bank's mortgage on the Property, as the same may be hereafter modified, spread, supplemented, extended or otherwise altered.

**Miscellaneous Provisions.** Contractor agrees to the following: (i) The provisions hereof shall be binding upon and inure to the benefit of Contractor and Bank and their respective heirs, personal representatives, successors and assigns; (ii) Any notices, demands or requests shall be sufficiently given to Contractor, if in writing and mailed or delivered to the address of Contractor shown above or to another address as provided herein, and to Bank, if in writing and mailed or delivered to _____ or such other address as Bank may specify from time to time, and in the event that Contractor

EXHIBIT "K"                    Page I                          [Williston, ND]

**EXHIBIT "A"**
**Page 55 of 59**

changes Contractor's address, the Contractor shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid.  Notices to Bank must include the mail code.  (iii) This Agreement may not be changed, terminated or modified orally or in any manner other than by an instrument in writing signed by the parties hereto; (iv) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Agreement; (v) This Assignment shall be governed by and construed under the laws of the jurisdiction where the Property is located; and (vi) Contractor by execution and Bank by acceptance of this Agreement agree to be bound by the terms and provisions hereof. (vii) Final Agreement.  This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties.  There are no unwritten agreements between the parties.

IN WITNESS WHEREOF, Contractor has duly signed and sealed this agreement as of the day and year first above written.

CONTRACTOR

By: _____

Name: _____

Title: _____


BANK

By: _____

Name: _____

Title: _____

EXHIBIT "K"                              Page 1                              EXHIBIT "A" [Williston, ND]

Case 17-40291-JDP    Doc 104-1    Filed 09/04/20    Entered 09/04/20 15:06:17    Desc
Exhibit A - Second Amended Complaint    Page 57 of 59

# EXHIBIT "I"

## NOTICES

To Owner:

The Westmoreland Company, Inc.
ATTN:   Jada R. Leo
200 Randolph Avenue
Huntsville, AL 35801-4899
FAX:          (256) 539-2053
PHONE:    (256) 539-5533

To Contractor:

SE/Z Construction, LLC
ATTN:   Steve Zambarano
705 John Adams Parkway
Idaho Falls, ID 83401
FAX:          (208) 528-2316
PHONE:    (208) 528-9449

EXHIBIT "I"                                          Page 1

EXHIBIT "A"
[Pocatello, ID]
Page 57 of 59

EXHIBIT "J"

## LEGAL DESCRIPTION

Lot 4, Block 4 Bakken Industrial Park Subdivision. Being a Portion of the W1/4SE1/4,NE1/4SW1/4 Section 24, Township 155N, Range 101W 5TH Pm, Williston, Williams County, North Dakota.

EXHIBIT "J"                    Page 1

[Williston, ND]

**EXHIBIT "A"
Page 58 of 59**

## EXHIBIT "K"

## CONTRACTOR RECORDS

The following records related to the Project will be made available to Owner at Owner's request for a period of three (3) years after final payment to Contractor:

1. Payroll
2. Subcontracts
3. Subcontractors billings
4. Subcontractor payments
5. Lien waivers
6. Material purchase order
7. Material purchase payments
8. Daily job log

[Williston, ND]

**EXHIBIT "A"**
**Page 59 of 59**