**STATE OF NORTH DAKOTA**

**COUNTY OF WILLIAMS**

**IN DISTRICT COURT**

**NORTHWEST JUDICIAL DISTRICT**

| | |
|---|---|
| The Westmoreland Company, Inc., <br><br> Plaintiff, <br> v. <br><br> SE/Z Construction, LLC, KLE Construction, LLC, Xtreme Electric Contractors, LLC, Inc., Sandcreek Welding, Inc., Strata Corporation, The Sherwin-Williams Company, Williams Plumbing & Heating, Inc., Camp Land Surveyors PLLC, Northern Improvement Company, Wutke, LLC, Cal-Dal Cabinets, Inc., Ace Fire Protection, LLC, <br><br> Defendants. | Case No. 53-2013-CV-01395 <br><br><br> **AFFIDAVIT OF ELECTRONIC SERVICE AND BY MAIL** |

STATE OF MONTANA    )
                                          )    SS
COUNTY OF GALLATIN  )

[¶1]    I hereby certify that on September *17th*, 2014, the following documents:

1. **Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended Counterclaim, and Crossclaims (with Exhibits 1-5)**

Were electronically filed with the Court's Odyssey System and that Odyssey will electronically serve a copy of said document the following persons pursuant to Rule 3.5(e) of the North Dakota Rules of Court:

Daniela E. Pavuk
dpavuk@crowleyfleck.com
Alan C. Bryan
abryan@crowleyfleck.com
**Attorneys for SE/Z Construction, LLC**

David Tschider
dtschider@tschider-smithlaw.com
**Attorney for KLE Construction**

Ryan C. McCamy
rmccamy@nilleslaw.com
**Attorney for The Sherwin-Williams Company**

Allen J. Flaten
allenflaten@northdakotalaw.net
**Attorney for Strata Corporation**

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Affidavit of Electronic Service and by Mail
Page 1 of 2

**EXHIBIT "D"**
**Page 1 of 52**

Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND

Robert J. Pathroff
rpathroff@vogellaw.com
**Attorney for Plaintiff Westmoreland
Company, Inc.**

[¶2]    Service was also made by placing a true and correct copy thereof by first class mail, addressed as follows:

Sandcreek Welding, Inc.
Attn: Steve Almondinger
4598 South Wakerli Avenue
Idaho Falls, ID  83406

Dirk Jensen, Registered Agent
Ace Fire Protection, LLC
2502 North Evergreen Road
Fargo, ND  58102

Thomas D. McCormick, Registered Agent
Northern Improvement Company
4000 NW 12th Avenue
PO Box 2846
Fargo, ND  58108-2846

Williams Plumbing & Heating, Inc.
2313 4th Avenue West #3
Williston, ND  58801-3426

Camp Land Surveyors PLLC
10840 Highway 85 North
PO Box 114
Alexander, ND  58831-0114

Dan Gefroh, Registered Agent
Wutke, LLC
919 South 7th Street, Suite 503
Bismarck, ND  58501

Gary Price, Registered Agent
Cal-Dak Cabinets, Inc.
2410 30th Avenue NW
PO Box 1088
Minot, ND  58108-2846

[¶3]    To the best of Affiant's knowledge, the addresses above given was the actual post office addresses of the parties intended to be so served.  The above document was duly mailed in accordance with the provisions of the Rules of Civil Procedure.

Margaret C. Weamer

[¶4]    Subscribed and sworn before me this _17th_ day of September, 2014 by Margaret C. Weamer.

Dated this _17_ day of September, 2014.

ALEXANDER MILLER
Notary Public
for the State of Montana
Residing at:
Bozeman, Montana
My Commission Expires:
February 03, 2018

Notary Public for the State of Montana

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Affidavit of Electronic Service and by Mail
Page 2 of 2

**EXHIBIT "D"
Page 2 of 52**

STATE OF NORTH DAKOTA

IN DISTRICT COURT

COUNTY OF WILLIAMS

NORTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| The Westmoreland Company, Inc., <br><br> Plaintiff, <br> vs. <br><br> SE/Z Construction, LLC, KLE Constructions, LLC, Xtreme Electric Contractors, LLC, Strata Corporation, Sandcreek Welding, Inc., The Sherwin-Williams Company, Williams Plumbing & Heating, Inc., Camp Land Surveyors PLLC, Northern Improvement Company, Wutke, LLC, Cal-Dal Cabinets, Inc., Ace Fire Protection, LLC, <br><br> Defendants. | Case No. 53-2013-CV-01395 <br><br><br> DEFENDANT XTREME ELECTRIC CONTRACTORS, LLC'S ANSWER TO SECOND AMENDED COMPLAINT, FIRST AMENDED COUNTERCLAIM, AND CROSSCLAIM |

[¶1] Defendant Xtreme Electric Contractors, LLC, ("Xtreme Electric") answers the Second Amended Complaint as follows:

1. Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶1, 2 and 3 of the Second Amended Complaint, and therefore denies the same.

2. Xtreme Electric admits the allegations contained in ¶4 of the Second Amended Complaint regarding its status as a limited liability company authorized to transact business in the State of North Dakota and engaging in the business of electrical contracting in North Dakota. Xtreme Electric affirmatively states that its principal office is currently located at 298 West Bridge, Blackfoot, Idaho 83221.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 1 of 10

**EXHIBIT "D"**
**Page 3 of 52**
Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND

3.      Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of the Second Amended Complaint, and therefore denies the same.

4.      To the extent that all allegations contained in ¶¶ 17, 18, and 19 purport to describe the contents of writings, the contents of those writings speak for themselves, and therefore, no further response is required.  To the extent a response is required, Xtreme Electric denies the allegations as alleged.

5.      Xtreme Electric admits the allegation contained in ¶20 of the Second Amended Complaint that SE/Z Construction hired Xtreme Electric as a subcontractor to perform work for SE/Z Construction, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in ¶20 of the Second Amended Complaint, and therefore denies the same.

6.      Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶21 and 22 of the Second Amended Complaint, and therefore denies the same.

7.      Xtreme Electric admits the allegations contained in ¶23 of the Second Amended Complaint that Notice of Intention to File Construction Lien was given to The Westmoreland Company, Inc. ("Westmoreland") on October 29, 2013, and that the amount stated in the Notice that was due and owing was $151,526.60.  Xtreme Electric affirmatively alleges that for purposes of responding to the interpleader claim, the amount currently due for labor and materials provided is $168,288.60.  **Exhibit 1**, attached.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 2 of 10

**EXHIBIT "D"
Page 4 of 52**

8.      Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 of the Second Amended Complaint, and therefore denies the same.

9.      In response to ¶36, Xtreme Electric incorporates all its preceding statements and allegations as set forth herein.

10.     Xtreme Electric denies the allegations contained in ¶¶37 and 38 of the Second Amended Complaint.

11.     In response to ¶39, Xtreme Electric incorporates all its preceding statements and allegations as set forth herein.

12.     Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶40 and 41 of the Second Amended Complaint, and therefore denies the same.

13.     In response to ¶42, Xtreme Electric incorporates all its preceding statements and allegations as set forth herein.

14.     Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶¶43, 44 and 45 of the Second Amended Complaint, and therefore denies the same.

15.     Xtreme Electric denies the allegations contained in ¶46 of the Second Amended Complaint.

16.     Xtreme Electric lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in ¶47 of the Second Amended Complaint, and therefore denies the same.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 3 of 10

**EXHIBIT "D"**
**Page 5 of 52**

17.    Xtreme Electric denies the allegations contained in ¶48 of the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

18.    Westmoreland's Second Amended Complaint fails to state a claim upon which relief can be granted.

19.    Westmoreland's damages, if any, in whole or in part, are the result of its own breaches of contract, negligence, or fault not attributable to Xtreme Electric.

20.    Westmoreland failed to mitigate its alleged losses and damages.

21.    Westmoreland's claims are barred in whole or in part, by the doctrine of waiver, estoppel and/or laches.

22.    Westmoreland's claims are barred by the doctrine of unclean hands.

23.    Westmoreland's claims are barred as against public policy.

24.    Xtreme Electric reserves the right to assert additional affirmative defenses which may be appropriate as discovery and litigation proceeds in this case.

## FIRST AMENDED COUNTERCLAIM AGAINST THE WESTMORELAND COMPANY, INC. AND CROSSCLAIM AGAINST DEFENDANT SE/Z CONSTRUCTION, LLC

### General Allegations

25.    Upon information and belief, Westmoreland is a corporation authorized to transact business in the State of North Dakota, is engaged in the State of North Dakota in the business of real estate development and leasing, and has its principal office at 200 Randolph Avenue SE, Huntsville, Alabama 35801-4874.

26.    Upon information and belief, Defendant SE/Z Construction, LLC ("SE/Z") is a limited liability company authorized to transact business in the State of North Dakota in the

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended Counterclaim, and Crossclaim
Page 4 of 10

business of construction contracting, and has its principal office at 705 John Adams Parkway, Idaho Falls, Idaho 83401-4023.

27.     Xtreme Electric is a limited liability company authorized to transact business in the State of North Dakota in the business of electrical contracting, and has its principal office at 298 West Bridge, Blackfoot, Idaho 83221.

28.     On March 18, 2013, SE/Z and Xtreme Electric entered into a Subcontract, attached as **Exhibit 2**, wherein Xtreme Electric agreed to provide labor and materials for electrical services as a subcontractor to SE/Z's agreement with Westmoreland to construct a FedEx facility, Station 588, in Williston, North Dakota, (the "Property").  Article I of the Subcontract, p. 2, provided that Xtreme Electric would be paid $228,780.00 for its services and materials.

29.     Xtreme Electric provided all labor and materials for electrical services pursuant to the Subcontract.

30.     SE/Z failed to pay Xtreme Electric for the labor and materials provided pursuant to the Subcontract.

31.     On October 29, 2013, Xtreme Electric served a Notice of Intention to File Construction Lien on both SE/Z and Westmoreland wherein Xtreme Electric informed SE/Z and Westmoreland that Xtreme Electric was owed $151,526.60 for labor and materials provided pursuant to the Subcontract.  **Exhibits 3** and **4** respectively, attached.

32.     On November 20, 2013, Xtreme Electric filed a Construction Lien in the Williams County Clerk and Recorder's Office for labor and materials provided to construct FedEx Station 588 pursuant to the Subcontract with SE/Z.  **Exhibit 5**, attached.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 5 of 10

**EXHIBIT "D"**
**Page 7 of 52**

33.     Xtreme Electric has not been paid the amount due and owing for labor and materials provided pursuant to the Subcontract.

## COUNTERCLAIM AGAINST WESTMORELAND

### I.     ENFORCEMENT AND FORECLOSURE OF CONSTRUCTION LIEN

34.     Xtreme Electric incorporates all its preceding statements and allegations as set forth herein.

35.     Xtreme Electric has provided services and materials that have been incorporated into the Property for which Xtreme Electric has not received payment in the amount of $151,526.60, plus interest.

36.     Xtreme properly provided Notice of Intention to file Construction Lien on both SE/Z and Westmoreland.  A true and correct copy of those Notices are attached hereto as **Exhibits 3** and **4**, respectively.

37.     On November 20, 2013, Xtreme Electric filed a Construction Lien against the Property under Document No. 774453, in the records of the Clerk and Recorder for Williams County, North Dakota for $151,526.60.  A true and correct copy of the filed Construction Lien is attached as hereto as **Exhibit 5**.

38.     Xtreme Electric timely filed it Construction Lien within ninety (90) days after last furnishing services and materials to the Property.

39.     Xtreme Electric was required to engage the services of an attorney to foreclose this Construction Lien and is entitled to the award of its reasonable attorney's fees and costs incurred in connection with this action, together with the costs of preparing and filing the Construction Lien.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 6 of 10

40.     Xtreme Electric is entitled to enforce its Construction Lien for the full amount

stated in its Construction Lien, plus interest accruing on this amount at a reasonable interest rate

and its attorney's fees and costs.

## II.     UNJUST ENRICHMENT

41.     Xtreme Electric incorporates all its preceding statements and allegations as set

forth herein

42.     In the alternative, Westmoreland has been unjustly enriched by the nonpayment of

the fair and reasonable value of materials and services provided by Xtreme Electric.

43.     Westmoreland was enriched and received a benefit when it accepted the materials

and services from Xtreme Electric without paying the full and fair value for the work performed

by Xtreme Electric.

44.     Xtreme Electric has been impoverished by providing services and materials to

Westmoreland in connection with its work on the Property for which Westmoreland has failed to

fully and fairly pay for.

45.     Xtreme Electric's impoverishment is a direct result of Westmoreland's

nonpayment for the full and fair value of the work performed by Xtreme Electric.

46.     There is no justification for the enrichment of Westmoreland and the

impoverishment of Xtreme Electric.

47.     It would be inequitable and unjust for Westmoreland to retain the value of the

materials and services provided by Xtreme Electric without payment to Xtreme Electric for the

full and fair value of the material and services that Xtreme Electric provided to Westmoreland.

48.     To the extent that there is no alternative remedy provided by law, Xtreme Electric

is entitled to its claim for unjust enrichment.

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 7 of 10

**EXHIBIT "D"
Page 9 of 52**

49.     Xtreme Electric has suffered damages as a result of Westmoreland's unjust enrichment including the value of the materials and services that Xtreme Electric provided to Westmoreland, together with interest provided by law.

## CROSSCLAIM AGAINST SE/Z CONSTRUCTION, LLC

## I.     **BREACH OF CONTRACT**

50.     Xtreme Electric incorporates all its preceding statements and allegations as set forth herein

51.     SE/Z has failed and refused to perform pursuant to the Subcontract in that it has not paid Xtreme Electric as required by the Subcontract despite repeated demands to do so, and despite proper service of Notice of Intention to File Construction Lien and the subsequent filing of a Construction Lien against the property to which Xtreme provided labor and materials pursuant to the Subcontract.

52.     By reason of SE/Z's breach of the Subcontract, Xtreme Electric has sustained damages in the amount of $168,288.60 plus interest, attorney's fees and costs.

[¶2]    WHEREFORE, Xtreme Electric prays for the following relief:

1.      That the Court dismiss all claims asserted by Westmoreland against Xtreme Electric, and enter judgment in favor of Xtreme Electric and against Westmoreland on all claims asserted by Westmoreland;

2.      That the Court declare the Construction Lien filed against the property improved for FedEx Station 588 in Williston, North Dakota, valid;

3.      That the Court declare and determine the priority of any other construction liens on the Property;

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 8 of 10

**EXHIBIT "D"
Page 10 of 52**

4. That the Construction Lien be foreclosed pursuant to the law and practice of this Court and the proceeds of the foreclosure be applied to the payment of the amount due to Xtreme Electric;

5. That the Court enter judgment in favor of Xtreme Electric and against Westmoreland in the amount of $151,526.60 plus interest and reasonable attorney's fees incurred in connection with its foreclosure of the Construction Lien;

6. In the alternative, that the Court enter judgment in favor of Xtreme Electric on its claim against Westmoreland for unjust enrichment;

7. In the alternative, for a determination that Xtreme Electric's claim and interest in the funds interplead by Westmoreland is $168,288.60 and enter judgment for Xtreme Electric in that amount plus costs;

8. That the Court enter judgment in favor of Xtreme Electric and against SE/Z for its breach of the Subcontract in the amount of $168,288.60 plus interest, attorney's fees, and costs; and

9. For such other relief that the Court deems just and proper.

DATED this 17th day of September, 2014.

Margaret C. Weamer (*pro hac vice*)
TARLOW & STONECIPHER, PLLC
1705 West College Street
Bozeman, Montana 59715
Phone: (406) 586-9714
Fax: (406) 586-9720
mweamer@lawmt.com

and

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended Counterclaim, and Crossclaim
Page 9 of 10

Clark J. Bormann (ID# 04655)
BORMANN, MYERCHIN, MONASKY &
ESPESETH, LLP
P.O. Box 995
Bismarck, ND  58502-0995
Phone: (701) 250-8968
Fax: (701) 250-8982
cbormann@bmmelaw.com

Attorneys for Xtreme Electric

*The Westmoreland Company, Inc. v. SE/Z Construction, LLC, et al.*
Defendant Xtreme Electric Contractors, LLC's Answer to Second Amended Complaint, First Amended
Counterclaim, and Crossclaim
Page 10 of 10

**EXHIBIT "D"**
**Page 12 of 52**



Please Remit Payments to:
PO Box 343
Iona, ID 83427-0343
(406) 437-1835
mtaylor@xtremelec.com

# Statement

1/17/2014

SEZ Construction
705 John Adams Parkway
Idaho Falls, ID 83401

| | | | | | $168,288.60 | |
|---|---|---|---|---|---|---|
| | 41304 - FedEx Williston- | | | | | |
| 06/27/2013 | INV #2582, Due 07/27/2013, Orig. Amount $34,317.00. | | | | 1,715.85 | 1,715.85 |
| 07/15/2013 | INV #2655, Due 08/14/2013, Orig. Amount $57,195.00. | | | | 2,859.75 | 4,575.60 |
| 08/22/2013 | INV #2672, Due 08/22/2013, Orig. Amount $137,268.00. | | | | 137,268.00 | 141,843.60 |
| 09/12/2013 | INV #2694, Due 09/12/2013, Orig. Amount $15,505.00. | | | | 15,505.00 | 157,348.60 |
| 11/19/2013 | INV #2728, Due 11/19/2013, Orig. Amount $10,940.00. | | | | 10,940.00 | 168,288.60 |

| | | | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 10,940.00 | 0.00 | 157,348.60 | $168,288.60 |

Exhibit 1

Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND



Please Remit Payments to:
PO Box 343
Iona, ID 83427-0343
(406) 437-1835
mtaylor@xtremelec.com

# Statement

| Date |
|---|
| 12/18/2013 |

SF-Z Construction
705 John Adams Parkway
Idaho Falls, ID 83401

| Amount Due | Amount Enc. |
|---|---|
| $177,188.33 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| | 41304 - FedEx Williston- | | |
| 06/27/2013 | INV #2582. Due 07/27/2013. Orig. Amount $34,317.00. | 1,715.85 | 1,715.85 |
| 07/15/2013 | INV #2655. Due 08/14/2013. Orig. Amount $57,195.00. | 2,859.75 | 4,575.60 |
| 08/22/2013 | INV #2672. Due 08/22/2013. Orig. Amount $137,268.00. | 137,268.00 | 141,843.60 |
| 09/12/2013 | INV #2694. Due 09/12/2013. Orig. Amount $15,505.00. | 15,505.00 | 157,348.60 |
| 10/01/2013 | INV #FC 25. Due 10/01/2013. Orig. Amount $2,856.72. Finance Charge | 2,856.72 | 160,205.32 |
| 11/15/2013 | INV #FC 32. Due 11/15/2013. Orig. Amount $3,491.84. Finance Charge | 3,491.84 | 163,697.16 |
| 11/19/2013 | INV #2728. Due 11/19/2013. Orig. Amount $10,940.00. | 10,940.00 | 174,637.16 |
| 12/16/2013 | INV #FC 34. Due 12/16/2013. Orig. Amount $2,551.17. Finance Charge | 2,551.17 | 177,188.33 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|
| 0.00 | 13,491.17 | 3,491.84 | 2,856.72 | 157,348.60 | $177,188.33 |

Exhibit 1

## EXHIBIT "D"
## Page 14 of 52

# SUBCONTRACT

**SUBCONTRACT NO. :Williston, ND FedEx Facility: Station 588**
**SUBCONTRACTOR: Xtreme Electric, Inc.**
**TRADE : Electrical**              **PHASE CODE: 16100**
**PROJECT NAME:  Williston, ND FedEx Facility: Station 588**

This SUBCONTRACT is entered into this Monday, March 18, 2013  by and between SE/Z Construction, LLC, 705 John Adams Parkway, Idaho Falls, Idaho 83401, hereinafter known as "Contractor" and Xtreme Electric, Inc., PO Box 343, Iona, ID  83427, hereinafter known as "Subcontractor".  Whereas, the Contractor has entered into a contract, hereinafter called the "Principal Contract" with The Westmoreland Company, Inc., 200 Randolph Avenue, Huntsville, AL, 35801 hereinafter called the "Owner", for the construction of the Williston, ND FedEx Facility: Station 588 located at Bakken Industrial Park Subdivision, Lot 4, Block 4, Corner of Energy Street and Oil Avenue, Williston,, ND 58801  and;

Whereas, it is to the mutual advantage of the parties hereto that certain phases of the work provided for in said Principal Contract be performed by a Subcontractor:

Now, therefore, in consideration of the premises and the mutual promises, agreements and conditions hereinafter set forth, the parties hereto do mutually agree as follows:

ARTICLE I:
The Subcontractor shall, for and on behalf of the Contractor, fulfill and perform such part of the work of said Principal Contract as is hereinafter set forth. The Subcontractor shall furnish at its expense all labor, materials, equipment, services, permits, licenses, assessments, fees, supervision, transportation, freight, repairs, supplies, taxes, insurance and everything else of any nature whatsoever necessary to complete its work under this Subcontract in accordance with the terms of the Principal Contract, Specifications, The Westmoreland Company RFP Letter Dated May 30, 2012 (Round 1), Amendments/Addenda, and Prototypical Plans prepared by FedEx Ground, Facilities & Material Handling Systems, 1000 FedEx Drive, Moon Township, PA 1510 dated September 12, 2012; and Plans prepared  by Castlos Design Group, 3901 Kirby Drive, Suite 600, Houston, TX 77098 (Permit Set Dated December 20, 2012)  and Plans prepared by Mason & Stanfield , Inc., 826 3rd. Street South, Nampa, ID 83851(Stamped January 4, 2013 by the Engineer)  and in accordance with good construction practices, the following:

EXCEPT AS LISTED UNDER EXCLUSIONS AND/OR SPECIAL CONDITIONS BELOW, FURNISH AND INSTALL ALL ELECTRICAL COMPLETE, INCLUDING BUT NOT LIMITED TO, TEMPORARY POWER, BUILDING AND SITE LIGHTING, BUILDING POWER AND ALL REQUIRED EQUIPMENT CONNECTIONS, FANS AT DOCK DOORS, RADIANT UNIT HEATERS, CONDUITS FOR LOW VOLTAGE, PHONE/DATA, AND SECURITY CONNECTIONS; OVERHEAD DOOR STATUS SIGNALS / TRAFFIC SIGNALING SYSTEM, FIRE ALARM, CONCRETE FOR TRANSFORMERS, LIGHT POLES INCLUDING LIGHT POLE BASES, ELECTRICAL SERVICE TO THE BUILDING FROM THE ROAD INCLUDING ALL TRENCHING AND BACKFILL REQUIRED, AND BLOCK HEATERS COMPLETE FOR THE CONSTRUCTION OF THE PROJECT INCLUDING BUT NOT LIMITED TO ALL WORK DESCRIBED IN SPECIFICATION DIVISION 2-2.4, DIVISION 16 COMPLETE, AND AS SHOWN OR CALLED FOR ON THE PLANS

ALL WORK SHALL BE IN STRICT ACCORDANCE WITH THE PLANS AND SPECIFICATIONS AS PREPARED BY THE FIRMS NOTED AT PARAGRAPH 1 OF ARTICLE I ABOVE.

LIST OF EXCLUSIONS:  BONDS, TEMPORARY POWER TO SUBCONTRACTOR TRAILERS, SANITARY FACILITIES, EXHAUST FANS, UTILITY COMPANY FEES, DUMPSTER (SUBCONTRACTOR WILL DISPOSE OF ITS WASTE IN A DUMPSTER TO BE PROVIDED BY THE CONTRACTOR), TELEPHONE AND DAT EQUIPMENT, MOTOR CONTROLS FOR MECHANICAL EQUIPMENT,

SPECIAL CONDITIONS:

1. THE SUBCONTRACTOR SHALL PROVIDE AND MAINTAIN A DRUG FREE WORK PLACE PROGRAM IN ACCORDANCE WITH LOCAL AND STATE REGULATIONS.

2. THE SUBCONTRACTOR SHALL BE BOUND BY THE GENERAL CONDITIONS FOR CONSTRUCTION AS PART OF THE CONTRACT BETWEEN THE CONTRACTOR AND THE OWNER, THE WESTMORELAND COMPANY, INC. RFP LETTER DATED MAY 30, 2012; MATERIALS TESTING AND INSPECTION

Page No. 1

**EXHIBIT "D"**
**Page 15 of 52**

Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND

Exhibit 2

GEOTECHNICAL ENGINEERING REPORT DATED JULY 31, 2012; AND THE TECHNICAL SPECIFICATIONS DATED OCTOBER 2, 2012  CONTAINED THEREIN. IN THE EVENT OF A CONFLICT, THE MOST STRINGENT REQUIREMENT SHALL APPLY.

THE SUBCONTRACTOR SHALL RECEIVE FOR THE PERFORMANCE OF THE ABOVE WORK THE SUM OF TWO HUNDRED TWENTY EIGHT THOUSAND SEVEN HUNDRED EIGHTY AND 00/100 DOLLARS ($228,780.00). THIS PRICE INCLUDES ALL APPLICABLE TAXES.

The Subcontractor is required to coordinate its work with all applicable trades to ensure that no conflicts with completing the project will arise. It is acknowledged that this Subcontract supersedes all prior proposals & agreements, whether written or verbal. SEE ATTACHED PROPOSAL 435-4 DATED JANUARY 17, 2013 AFTER THE SUPPLEMENTAL CONDITIONS WITH EMAIL CORRESPONDENCE PROVIDING CLARIFICATIONS AND AGREEMENT WHICH BECOME A PART OF THIS SUBCONTRACT.

The Subcontractor shall perform layout for its own work, and cutting and patching as necessary to complete its work in accordance with the Principal Contract.

ARTICLE II:
The Subcontractor shall commence the work to be performed hereunder as scheduled by the Contractor and shall thereafter prosecute the same diligently and shall complete the work required in coordination with the other subcontractors and good construction procedures, and strictly in accordance with the Contractor's construction schedule. To be included as a future attachment to this Subcontract will be a working CPM schedule. The schedule will be developed and updated in accordance with the applicable contract specifications and with input from the Subcontractor. The working CPM schedule will reflect the plausible durations and sequence of construction necessary to complete the Project to meet the milestone dates as shown at Attachment 1 unless time extensions are issued by the Owner. The Subcontractor hereby acknowledges that Liquidated Damages in the amount of $2,500.00 for each calendar day of delay in completion of all contract work may be assessed by the Owner. Subcontractor(s) responsible for any delays which result in Liquidated Damages being assessed will be backcharged for Liquidated Damaged assessed by the Owner.

Without relieving the Subcontractor of the above time requirements and responsibilities, and only upon prior written approval of the Contractor, Subcontractor may commence the work sooner than shown on the schedule for its own convenience.

The  Contractor shall have the right at any time to delay or suspend the whole or any part of the work therein contracted to be done without compensation to the Subcontractor, provided that additional time commensurate with the delay shall be allowed the Subcontractor for completing its work. Similarly, the Contractor may adjust the construction schedule to advance the start time of any given activity provided the duration allowed for that activity is not reduced.

The Subcontractor shall keep himself informed at all times not only of the progress of its work, but of the progress of the job as a whole and of the work of others which may affect or be affected by its own progress.

At all times while work is being performed by the Subcontractor on the jobsite, the Subcontractor shall have available a qualified representative on the Project to coordinate its work with  the Contractor and other subcontractors, and any instructions given to said representative shall have the same force and effect as if given to the Subcontractor.  The Contractor reserves the right to require the dismissal from the jobsite of any employee of the Subcontractor whose behavior is judged to be detrimental to the Project.

Also, it is noted that the Subcontractor's office representative for other than field decisions addressed in the preceding shall be  **Blake Larsen**  (208-313-3003), and any substitution for the field supervisor and/or the office representative shall be submitted in writing to the Contractor for review in sufficient time to preclude impacting the project.

The work to be performed by the Subcontractor will require complete integration and coordination, with respect to time, location, schedule, and with work performed by other persons involved in the Project, including but not limited to the Contractor, other subcontractors, the Owner, FedEx Ground Package System, Inc., and suppliers.

Subcontractor agrees to cooperate fully with, and to not interfere with the operations of the aforementioned. Subcontractor acknowledges that it may be necessary for its work to be commenced and prosecuted prior to or in conjunction with other work to be performed and that it is vital and necessary that Subcontractor performs its work diligently and expeditiously so the Contractor and others will not be delayed in the performance of their work.

Subcontractor agrees to attend all weekly coordination meetings while Subcontractor is performing work on the Project. Subcontractor's attendance at weekly coordination meetings shall begin two (2) weeks prior to the time that the Subcontractor commences to perform work in any way relating to the Project and continue until Subcontractor has fully completed its work on the Project.

Subcontractor understands and agrees that the Owner, FedEx Ground Package System, Inc.  and/ or Contractor may occupy or use the Project or a portion thereof before Subcontractor's work is completed and accepted by the Owner. Subcontractor shall not be entitled to any additional compensation or time extension on account of such occupancy or use.

Prior to commencing work or any part thereof, Subcontractor shall notify Contractor in writing of any defect, deficiency, or incompatibility of any

Page No. 2

Exhibit 2

work performed by others in connection with the Project which would in any manner affect the performance or quality of Subcontractor's work. Failure to notify Contractor shall bar any claim by Subcontractor for additional compensation, damages, an extension of time, or other relief relating to the affected work which otherwise may have been available to Subcontractor. This notification also applies to errors, omissions and/or discrepancies which may be present in the Plans and Specifications.

No "breaks" or stoppages of work shall be allowed, including, but not limited to stoppages due to strikes, picketing authorized or not, or any other labor problems. Shop practices detrimental to jobsite work are prohibited

## ARTICLE III:

Time is of the essence of this contract, and Subcontractor recognizes and acknowledges that the Contractor and the Owner will sustain monetary damages if the whole or any part of the job be delayed through the failure of the Subcontractor to perform the work required in accordance with the Subcontract, Principal Contract, Plans and Specifications. In case of such failure by the Subcontractor, the Contractor may, at its option, upon seventy-two (72) hours written notice (FAX OR E-MAIL TO THE SUBCONTRACTOR SATISFIES THIS REQUIREMENT) to the Subcontractor, take any steps the Contractor deems advisable to see that such job is promptly completed, including the right to secure necessary labor, materials, appliances, or to utilize any of the same and other equipment belonging to the Subcontractor, wherever located, which the Contractor believes necessary to protect its interests in completing this portion of the Subcontractor's work, without, by so doing, waiving any right of action which the Contractor may have against the Subcontractor or its surety. NO NOTICE IS REQUIRED IF IMMINENT DANGER EXISTS OR A SAFETY HAZARD EXISTS THAT MUST BE REMEDIED IMMEDIATELY TO ELIMINATE THE HAZARD.

The Contractor may withhold all moneys presently owing or to become due the Subcontractor thereafter, and may use said moneys to complete or have completed any unfinished Subcontract work. The Contractor may charge to the Subcontractor all costs, including overhead, and profit necessary to complete the Subcontract work. The Subcontractor and/or its sureties shall be liable to the Contractor for any liquidated or other damages assessed against the Contractor or costs incurred by the Contractor because of such failure of the Subcontractor and for any costs incurred by the Contractor in the settlement of claims against the Subcontractor or the Contractor, including a reasonable attorney's fee .If more than one party contributes to the delay, then costs and damages will be apportioned by the Contractor.

## ARTICLE IV. A:

The Subcontractor agrees that in making its bid  it has examined the Principal Contract, Plans and Specifications , the Project Site, and documents as referenced at Article I and has not relied upon any representations by the Contractor.

Subcontractor acknowledges that it has satisfied itself as to the nature and location of the work, the general and local conditions, including but not limited to those bearing upon the availability, transportation, disposal, handling, and storage of materials and equipment; the availability and quality or condition of labor, water, electrical power, and roads; the uncertainties of weather, river stages, or similar physical conditions at the site; the conformation of the ground, existing facilities, and improvement; the character of equipment and facilities needed preliminary to and during the prosecution of the work and assumes the risk thereof; and has further satisfied itself as to the hazards likely to arise from weather conditions and those inherent in the work and assumes the risk thereof.

The Subcontractor agrees to be bound to the Contractor by the terms of the Principal Contract, the General Conditions, the Plans and Specifications,  and to assume toward the Contractor all of the obligations and responsibilities that the Contractor, by those documents, assumed toward the Owner.

The Subcontractor having thoroughly reviewed the Plans and Specifications   AS A CO NTRACTOR is aware of no omissions and errors which might affect the costs of the work and/or materials to be performed. Should there be any claim by the Subcontractor for extras from alleged errors or omissions, the cost of the performance of such extra work or materials shall be borne by the Subcontractor, unless such cost is recognized and agreed to by the Architect and/or the Owner in writing as a bona fide extra, and only then shall the costs of said extra work or material be borne by the Contractor; provided, however, the Subcontractor has complied with the following paragraph. All questions and/or clarifications are to be submitted to the Contractor in a timely manner to support the Contractor's Construction schedule. The Subcontractor is not to correspond directly with the Owner or the Owner's Representative without the Contractor's prior approval. Failure to comply with this requirement will relieve the Contractor of all responsibility of directions given, including, but not limited to compensation for Changes, Claims and/or Time Extensions.

The Subcontractor agrees to make all claims for extras, for extensions of time, and for damages, delays or otherwise, if any, to the Contractor in the manner provided for in the General Conditions of the Principal Contract governing like claims by the Contractor upon the Owner; excepting that the time within which the Subcontractor shall make said claims shall be five(5 )days from the date the Subcontractor becomes aware of the matter, or should have reasonably been aware of the matter. By failing to provide proper notification of Claims and/or request for contract adjustment within the specified time period, the Subcontractor waives all rights for same. The Contractor shall not be liable to the Subcontractor for any change, modification or extra to the Subcontractor's work resulting from the Owner's actions or directions, unless and until the Owner pays the Contractor for said change, modification or extra.

## ARTICLE IV.B: DISPUTES

(a)  In the event of a dispute between the Subcontractor and the Contractor, the Subcontractor agrees to be bound to the same terms and conditions that the Contractor is bound to with the Owner governing disputes, including administrative proceedings. The Subcontractor agrees to be bound to all decisions made under the terms and conditions of the Principal Contract.

(b)  As a condition precedent to the right to assert any Claims the Subcontractor may have against the Contractor, Subcontractor shall provide written notice to Contractor of any such Claim within five (5) days of the date of the occurrence of the event causing or otherwise giving rise to the Claim. Subcontractor's failure to provide such notice, for any reason, shall constitute a waiver of such Claim.

Page No. 3

Exhibit 2

**EXHIBIT "D"**
**Page 17 of 52**

(c)  The Subcontractor agrees that any claims made by it based (in whole or in part) as a result of the acts or omissions of the Owner, its engineer, or other agents of the Owner, shall be submitted to the Contractor.  The Contractor shall then present the claim to the Owner for resolution under the terms of the Principal Contract.  The Subcontractor has the full responsibility for the preparation of such claims and the Subcontractor shall bear the complete expense of preparing and presenting its claim, including attorneys' fees.

(d)  Until final resolution is reached between the Owner and the Contractor of any claims involving the Subcontractor's rights, the Subcontractor agrees that it will not pursue or will stay any legal proceeding until final resolution under the terms of the Principal Contract.  The Subcontractor also agrees to be bound to the complete terms of any final resolution.

(e)  The Subcontractor agrees that it shall not be entitled to any more than is awarded the Contractor for the Subcontractor's portion of the work for any claim, less the Contractor's own direct expenses, overhead and mark ups.  All amounts received by the Contractor from the Owner as a full satisfaction and discharge of a claim involving the Subcontractor shall also be a full satisfaction and discharge of the Subcontractor's claims against the Contractor for the acts or omissions of the Owner, its engineer or its agents.

(f) The Subcontractor shall first pursue and fully exhaust the dispute procedures set forth in the Principal Contract before commencing any other action against the Contractor it may have arising out of the performance of the Subcontract.

(g)  The Subcontractor agrees and shall proceed diligently with its work under the Subcontract pending final resolution of any claim or dispute when directed to do so by the Contractor.

(h)  In the event amounts received from the Owner or its agents for claims require apportionment among two or more claimants (including the Contractor), the Subcontractor agrees to be bound by the Contractor's determination, made in good faith, of the amounts to be apportioned between claimants.

(i) In the event of any disputes between the Contractor and Subcontractor arising out of or in any way relating to this Subcontract, the substantially prevailing party will be entitled to recover from the other party all costs and expenses incurred in connection with the dispute, whether or not a suit or action is instituted, including, without limitation, reasonable attorney and expert witness fees, whether during arbitration, at trial, on appeal, or denial of any petition for review, or in connection with the enforcement of any judgment.

ARTICLE V:
Should the Subcontractor fail promptly to pay those furnishing materials and/or labor at its direction on this project,  the Contractor may notify the Subcontractor in writing of any such failure, requesting the Subcontractor to remedy such failure within seventy-two hours.  If the Subcontractor fails to remedy such failure within seventy-two (72) hours (FAX OR E-MAIL NOTICE SATISFIES THIS REQUIREMENT), the Contractor may withhold all moneys presently owing or to become due the Subcontractor thereafter, and may use said moneys to pay the unpaid laborers, materials, suppliers and subcontractors, if any.   The foregoing shall be in addition to any other remedies for breach of contract which the Contractor may have by reason of any failure of Subcontractor.

The Contractor shall have a lien upon all of the Subcontractor's materials and equipment on the job to secure payment of all the Subcontractor's unpaid labor, materials, or its subcontractors.  Subcontractor shall pay a reasonable attorney's fee, together with any costs incurred by the Contractor in the event of default in or breach of any of the terms or provisions of this agreement.

ARTICLE V(a) : NOT USED

ARTICLE VI:
Payment by the Contractor to the Subcontractor shall be made as the work progresses and pursuant to requests for payment received from the Subcontractor near the end of each month.  Applications for payment must be submitted on the form which the Subcontractor must request from the Contractor before the start of Subcontract work.  Failure to submit the pay application on the proper form will result in returning the application unprocessed.

Said application for payment shall be accompanied by properly executed lien waivers or other evidence satisfactory to the Contractor that all labor and materials furnished by the Subcontractor to that date have been paid for .  Releases from the Subcontractor's sub-tier Subcontractors and Suppliers will be required on a monthly basis. These are to accompany the Subcontractor's Release and Payment Application. See Attachment  2  for the Release form to be used. There are no exceptions unless prior approval is provided by Steve Zambarano of SEIZ Construction.  Payment shall then be made for the work covered in said application and as approved  by the Contractor and after receipt of payment for said work from the Owner. Payment by Owner to Contractor shall be a condition precedent to Subcontractor's right to receive payment from Contractor .  The Subcontractor's application for payment shall be received in Contractor's Idaho Falls office by the 25th. day of the month.  Any invoice received after the date due will not become due or payable until the following payment cycle.  The payments made pursuant to said requests shall be deemed partial payments, but shall not include 5% which shall be retained out of each payment until final completion, acceptance and payment by the Owner.  Until such final payment by the Owner, the work and Subcontract of the Subcontractor shall not be deemed completed.

Payment will be made to Subcontractor for work actually performed and completed, as measured and certified to by the Owner, Architect or Engineer, at the prices specified, which shall be accepted by Subcontractor as full compensation for furnishing all material and for doing all work contemplated and embraced in this Subcontract, for all loss and damage arising out of the nature of the work aforesaid, and for all risks of every description connected with the work, and for all expenses incurred by Subcontractor by or in consequence of the suspension or discontinuance of

Page No. 4

Exhibit 2

the work

The determination of the amount of work performed and to be paid for shall be made by Owner's representative and shall be binding and conclusive. However, if Owner does not measure the work, Contractor's good faith measurement of work performed shall be binding on Subcontractor. No compensation shall be paid to Subcontractor for work not approved and accepted by Owner and Contractor, and Subcontractor will make no claim against Contractor based upon any estimates or calculations other than those made by Owner and for which payment has been made by Owner to Contractor.

Subcontractor agrees that payments received for the performance of this Subcontract shall be used solely for the benefit of persons supplying labor, materials, supplies, equipment, or services exclusively for this Project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements, or funds involved in this Project or against any bond or other security posted by Contractor or Owner. All money paid to Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of such persons and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations arising under this Subcontract have been fully discharged and all claims arising therefrom have been fully paid.

Provided the Subcontractor is paid as provided for elsewhere in this Subcontract, Subcontractor will defend and hold Contractor and Owner harmless from any lien or claim arising out of nonpayment by Subcontractor of obligations incurred in connection with the work covered by this Subcontract. Subcontractor further agrees that if any lien(s), claim(s), or statutory withholding notice(s) shall be filed for work done or materials furnished by or for Subcontractor, Subcontractor shall, within five (5) days thereafter, at its own cost and expense, cause such lien(s), claim(s), or withholding notice(s) to be discharged; and Subcontractor's failure to do so shall be an event of default under this Subcontract. Any payments not so made by Subcontractor when earned or due may be made by Contractor and deducted from moneys at any time earned or due to Subcontractor.

Partial or final payment by Contractor to Subcontractor shall not operate as an approval or acceptance of work performed or materials furnished by Subcontractor.

Acceptance of Subcontractor's work shall occur only when the work is finally accepted by formal action of the Owner or authorized representative. All prior partial payments shall be subject to correction in the final payment.

Contractor reserves right to make payment to Subcontractor and its sub-subcontractors or suppliers by joint check . As a condition precedent to any payment becoming due to Subcontractor under the Terms of this Subcontract, Subcontractor shall provide to Contractor a list of all sub-subcontractors and suppliers of any tier, including the name, address, telephone number, union affiliation and price of the contract or purchase order. This list is to be attached to the executed copy of this Subcontract. Updated lists to be provided as the Subcontractor completes it buyout.

Acceptance of final payment by Subcontractor shall constitute a waiver by Subcontractor and its surety of any and all claims against Contractor, its surety, Owner, and the Project property arising out of or otherwise relating to this Subcontract.

ARTICLE VII:
No additions, deletions to, or modification of the Subcontract shall be valid unless in writing and signed by an authorized representative of the Contractor. No extra compensations shall be paid to nor credits allowed the Subcontractor, except as may be agreed upon in writing by the Contractor and Subcontractor prior to the performance of the work for which the extras or credits are claimed. The authorized representatives of the Contractor are limited to the following: Mr. Steve Zamberano.

The Subcontractor, notwithstanding any disagreement as to the amount of payment for any additional work or change in the Plans and Specifications properly ordered by the Contractor or by the Owner through the Contractor, shall proceed with the performance of the work required, and may make a claim for extra compensation in accordance with the appropriate Article set forth above. The Contractor shall not be liable for any such work or materials rendered in good faith by the Subcontractor, unless it has been properly authorized in writing in accordance with the above provisions.

ARTICLE VIII:
The Subcontractor will remedy immediately upon demand by the Contractor, any defects in the Subcontractor's work. The Subcontractor will be obligated upon demand by the Contractor to remedy any defects in its work or pay any damage to other work resulting from said defects appearing within two (2) years from date of final acceptance of the Principal Contract. However, it is understood and agreed that where the Plans, Specifications or General Conditions require a longer period of guarantee, said longer guarantee shall continue for such longer period.

ARTICLE IX:

The Subcontractor will comply with all applicable safety laws and regulations, with all federal, state and local laws applicable to the work hereunder, including Worker's Compensation Insurance, Unemployment, Social Security Laws, tax requirements and all permits and requirements.

The Subcontractor shall indemnify and save harmless, and defend the Contractor, FedEx Ground Package System, Inc. and the Owner (including their agents and employees while acting in the course of their employment or scope of their duties as such) from all claims, suits, actions of every name, kind and description, brought for or on account of injuries to or death of any person or for damage to property during the progress of the work or at any time before the completion and final acceptance resulting from the construction of the work, or by or in

Page No. 5

Exhibit 2

EXHIBIT "D"
Page 19 of 52

consequence of any negligence in guarding the work, or use of improper materials in construction of the work, caused or claimed to be caused by any act, omission, fault or negligence which the Subcontractor, its employees or agents, are legally liable for arising out of the performance of the Subcontract.

The Subcontractor agrees to hold the Owner, FedEx Ground Package System, Inc., Contractor and other Subcontractors on the above project harmless from any and all accidents, damages, liens, suits, judgments and any and all matters of action resulting from the Subcontractor's breach of the said Subcontract, and from the Subcontractor's negligence or failure fully to perform said Subcontract work.

At any time before final settlement or adjudication of any loss, damage, liability, claim demand, suit, or cause of action for which Subcontractor hereby agrees to indemnify and defend Contractor, Contractor may withhold from any payment due or to become due to Subcontractor the reasonable value of any such liability, including actual or anticipated legal expenses, as determined solely by Contractor.

(a) INDEMNIFICATION  The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively.  To the fullest extent permitted by law, Subcontractor shall carry commercial general liability insurance on ISO form CG 00 01 10 01 (or a substitute form providing equivalent coverage) and the Subcontractor shall provide the contractor with a Certificate of Insurance and Additional Insured Endorsement on ISO form CG 20 10 11 85 (or a substitute form providing equivalent coverage) or on the combination of ISO forms CG 20 10 10 01 and CG 20 37 10 01 (or substitute forms providing equivalent coverage) naming the Contractor and the Owner as Additional Insureds thereunder.  See Attachment 3 for Sample Form.  Additional Insured coverage shall apply as primary insurance with respect to any other insurance afforded to Owner and contractor.  The coverage available to the Contractor and Owner, as Additional Insureds, shall not be less than $1 million Each Occurrence, $2 million General Aggregate (subject to a per project general aggregate provision applicable to the project), $2 million Products/Completed Operations Aggregate and $2 million Personal and Advertising Injury limits.  Such insurance shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract).  There shall be no endorsement or modification of the Commercial General Liability form arising from pollution, explosion, collapse, underground property damage or work performed by subcontractors.  All coverage shall be placed with an insurance company duly admitted in the State of North Dakota and shall be reasonably acceptable to Contractor.  All Subcontractor insurance carriers must maintain an A.M. Best rating "A-" or better.  Coverage shall be afforded to the Additional Insureds whether or not a claim is in litigation.

SUMMARY OF COMMERCIAL GENERAL LIABILITY insurance providing combined single limits of liability in the following amounts:

| | |
|---|---|
| General Aggregate Limit: | $2,000,000 |
| Products-Completed Operations Limit: | $2,000,000 |
| Personal Injury Limit: | $1,000,000 |
| Per Occurrence Limit: | $1,000,000 |

The insurance coverage required under paragraph one shall be of sufficient type, scope, and duration to ensure coverage for the Contractor or Owner for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of the Contractor or Owner in relation to the Project.  Subcontractor agrees to maintain the above insurance for the benefit of Contractor and Owner for a period of ten years, or the expiration of the Statute of Limitations pursuant to Code of Civil Procedure, Section 337.15, whichever is later.

Each Certificate of Insurance shall provide that the insurer must give the Contractor at least 30 days' prior written notice of cancellation and termination of the Contractor's coverage thereunder.  Not less than two weeks prior to the expiration, cancellation or termination of any such policy, the Subcontractor shall supply the Contractor with a new and replacement Certificate of Insurance and Additional Insured endorsement as proof of renewal of said original policy.  Said new and replacement endorsements shall be similarly endorsed in favor of Contractor and owner as set forth above.

Additionally, and prior to commencement of the Work, the Subcontractor shall provide the Contractor with a Certificate of Insurance showing liability insurance coverage for the Subcontractor and any employees, agents, or Sub-Subcontractors of the Subcontractor for any Worker's Compensation, Employer's Liability and Automobile Liability. In the event any of these policies are terminated, Certificates of Insurance showing replacement coverage shall be provided to Contractor.  Coverage shall be no less than the following:

Page No  6

Exhibit 2

**EXHIBIT "D"**
**Page 20 of 52**

(1) WORKERS' COMPENSATION and Employers' Liability Insurance. As required by law affording thirty (30) days written notice to Contractor prior to cancellation or non-renewal, providing coverage of not less than $100,000 for bodily injury caused by accident and $500,000 for bodily injury by disease.

Waiver of Subrogation: Subcontractor shall obtain from each of its insurers a waiver of subrogation on Commercial General Liability in favor of Contractor and Owner with respect to Losses arising out of or in connection with the Work.

The policy shall include the Contractor (SE/Z Construction, L.L.C.);  The Westmoreland Company, Inc.; FedEx Ground Package Systems, Inc. as Additional Named Insureds ,  on ISO for Endorsement CG 20 10 11 85 or CG 20 26 11 85 and must include this Subcontract as an "insured Contract" in the policy definitions.  The policy cannot be of the "Claims-made" type.  Completed Operations Insurance shall be maintained for not less than 24 months after completion of this Subcontract.

(2) AUTOMOBILE LIABILITY to include any owned, hired, non-owned and employer's non-ownership contingent liability, if automobiles are used in the performance of the work under this Subcontract or may be driven on the Project site.  $1,000,000 combined property damage and bodily injury.

(3) BOILER AND MACHINERY INSURANCE: The Subcontractor shall purchase and maintain boiler and machinery insurance which shall specifically cover such insured items during installation and until final acceptance by the Owner.  The insurance shall include interest to f the Owner, Contractor, Subcontractors and Sub subcontractors in the work.  The Owner and Contractor shall be named insured.

(4) As noted previously, SUBCONTRACTOR agrees to furnish Contractor with a certificate(s) of insurance evidencing insurance coverage prior to commencement of the work for workers' compensation, employer's liability, commercial general liability insurance, automobile liability insurance, and such other insurance as may be required by the Principal Contract.    The certificate(s) of insurance shall include a thirty (30) day notice of cancellation clause.

If the certificate is on other than an insurance industry standard Accord Form  25-3 (3/93), the certificate must certify the following:

    -Blanket contractual liability insurance or specific contractual insurance coverage the liability assumed under this Subcontract.

    -XCU Insurance (explosion, collapse and underground property damage  insurance) only if Subcontractor's work performed under the Subcontract includes any explosives, excavation or underground work.

    -Personal injury liability insurance at limits of $2,000,000.

In lieu of certifying these coverages on the certificate, a letter from the authorized agent of the Insurance Company indicating these coverages are provided in the policy will suffice.

(5) Equivalent insurance coverage must be obtained from each of the Subcontractor's sub-subcontractors or suppliers, if any, before permitting them on the site of the Project.  Otherwise, their protection must be included within the Subcontractor's insurance policies.

(6) It is understood and agreed that the insurance coverage and limits, required above, shall not limit the extent of the Subcontractor's responsibilities and liabilities specified within the Principal Contract or by law.

(7) Contractor may furnish, erect or provide equipment, appurtenances and devices, motorized or otherwise, for its use to complete the Principal Contract with the Owner. Should the Subcontractor use such items, the Subcontractor agrees to insure against either any claims or injury or damage caused by items while in its care, custody or control naming Contractor as an insured party.  Liability limits shall be the same as in (2) above.  Physical Damage Insurance against damage to the items themselves shall be on a "Replacement Cost" basis waiving subrogation against this Contractor.

(8) It is understood and agreed authorization is hereby granted to the Contractor to withhold payments to the Subcontractor until a properly executed Certificate of Insurance providing insurance as required herein, accompanied by a signed Subcontract is received by the Contractor.

(9) Subcontractor's Indemnity and Insurance Requirements set forth herein shall become and be part of any purchase order or subcontract issued by Contractor to Subcontractor as though fully set forth in said purchase order or subcontract.

(10) Subcontractor shall obtain an Installation Floater Insurance Policy, if required by the terms of the Prime Contract, in an amount not less than the total Subcontracted materials, supplies, labor and profit against All-risks" of loss or damage, excluding earthquake and flood but including coverage while in transit or at temporary locations other than the construction premises.  Deductibles shall be the responsibility of the Subcontractor.

ARTICLE X;
During the performance of this Subcontract, the Subcontractor agrees not to discriminate against any employee because of race, color, creed or national origin, as outlined in the Equal Opportunity Clause of the Regulations of Executive Order 11246 of September 24, 1965, as amended by subsequent Executive Order.
These executive orders and their regulations are hereby made a part of this Subcontract by reference. However, if any employee discriminates

Page No. 7

Exhibit 2

**EXHIBIT "D"**
**Page 21 of 52**

against another or conducts himself in such a manner as to interfere with or harass the program at the job site or uses words to the detriment of the success of this contract, he shall promptly be removed from the job.

ARTICLE XI:
Shop drawings and submittals shall be furnished strictly in accordance with the applicable Plans and Specifications, including Drawing Submission Requirements and Procedures and the specification section(s) governing the Subcontractor's work. Separate submittal packages should be prepared for each specification section complete and each package should include all submittal items required by the specification section. Partial or incomplete submittals are not acceptable. Copies of submittals must be in complete collated packages ready for distribution by the Contractor to other parties without further sorting or processing.   A minimum of six (6) copies of submittals are required   plus the number of copies Subcontractor wants returned.  Submittals shall  be forwarded to the Contractor's Idaho Falls office. Samples (2 each) shall be submitted to the Contractor's Idaho Falls office unless advised otherwise.
If the Contractor receives submittals that are not in accordance with the above requirements, the Contractor may at its discretion return the submittals to the Subcontractor unprocessed for correction and resubmittal. The Subcontractor will be responsible for any delays and/or extra costs that may result.

The final submittal is to be forwarded to the Contractor within ten (10) calendar days of the date of this Subcontract or as necessary to support the construction schedule, whichever is earlier. All submittals of shop drawings together with all other correspondence relating to the job shall be made to the Contractor and in no event shall be made directly to the Architect or Owner.

ARTICLE XII:
Upon receipt of Approved Submittals,  the  Subcontractor within five (5) calendar days after receipt of the approved submittals shall begin ordering all materials required to complete this Subcontract and submit complete material list to Contractor, including the following information: date each item ordered, names, addresses, amounts of each order, invoice numbers of suppliers, and names and routing of carriers and promised delivery dates. a list of the Subcontractor's sub-tier subcontractors and suppliers is to be provided at the end of this Subcontract where noted

The Subcontractor agrees to air freight at his own expense, any item which regular freight would deliver too late to meet the Contractor's construction schedule if said Subcontractor failed to order materials promptly. Contractor reserves the right to request copies of purchase orders and subcontracts at any time. The Subcontractor will promptly comply with said request.

ARTICLE XIII:  The Subcontractor agrees to protect its work from the work of other subcontractors and third parties, and should its work be damaged before final acceptance by the Owner, said Subcontractor agrees to repair said damage at no cost to the Contractor, provided that if said damage is caused by the Contractor or one of its Subcontractors, said Subcontractor shall not be obligated to repair such damage. Refer to Article VII above.

The foregoing shall also apply to tailgate merchandise supplied by others and delivered to Subcontractor. The Subcontractor shall make a record of such merchandise received by it, both as to the condition and the quantity, and shall advise the Contractor of this information promptly. See Daily Report requirements noted below at the Supplemental Conditions

ARTICLE XIV:
The Subcontractor agrees that it will not pledge, assign or otherwise transfer any part or all of this Subcontract, or any moneys payable to Subcontractor hereunder, without advance written permissions and approval of the Contractor, and the approval of such assignment shall in no way relieve or release this Subcontractor from full compliance and responsibility for execution of all the obligations and requirements of this Subcontract

ARTICLE XV
The Subcontractor agrees to perform all clean up; haul-off all trash and debris, policing and housekeeping in connection with all Subcontract work performed hereunder.

If in the opinion of the Contractor's on site supervisor, the Subcontractor's area needs cleaning up, the Subcontractor will be required to perform cleanup within 12 hours of written or verbal notification (given to Subcontractor's field or office representative at Contractor's discretion) to the satisfaction of the Contractor's supervisor or it will be cleaned up by the Contractor, and all associated costs will be charged to the Subcontractor. Materials/Wastes. Etc. are to be hauled off and legally disposed of by the Subcontractor.

ARTICLE XVI:
If requested by the Contractor, the Subcontractor agrees to furnish 100% Performance and Payment Bonds from a Surety acceptable to the Contractor. Except as noted below, the initial costs of any bond as required by the Contractor will be paid by the Contractor from an invoice submitted by the Subcontractor separate from the Subcontract value. The bond costs paid by the Contractor will not exceed the rates published by the Surety Association of America at the time the bonds are requested, and any bond costs in excess of the published rates will be paid by the Subcontractor.

In the event that bonds are provided by the Subcontractor, then any future pricing submitted by the Subcontractor for extra/change order work shall include the incremental bond costs for that  potential change  order and all executed Change Orders shall be deemed to include such incremental bond costs whether itemized by the Subcontractor or not.

It is agreed that Subcontractor is an independent contractor and is not the agent of Contractor.  Subcontractor agrees that he will not pledge, or
Page No. 8

Exhibit 2

attempt to pledge, the credit of Contractor or in any way bind or obligate Contractor in any way whatsoever.

**ARTICLE XVII:**
Subcontractor shall defend and indemnify Contractor from liability of any nature or kind for or on account of the use of any patented or unpatented invention, article, appliance, or process furnished or used in or in connection with the performance of the work required by this Subcontract.

**ARTICLE XVIII:**
Subcontractor shall, as necessary and appropriate, provide, erect, and maintain proper warning signals, signs, lights, barricades, and fences on and along the line of Subcontractor's work and shall take all other necessary precautions for the protection of the work and the safety of the public and workers. Subcontractor shall fully comply with all safety regulations imposed by Owner, Contractor, statute, administrative agencies, judicial opinions and other requirements.

Subcontractor specifically agrees to comply with OSHA MSDS Hazard Communication, Crane Operator Certification Regulations., competent person designation (as required by OSHA) for excavation, scaffolding, personal protective equipment, etc. Subcontractor agrees to hold weekly safety meetings for Subcontractor's entire crew with written minutes and list of attendees of each meeting to be submitted to Contractor field office that day.

The Subcontractor shall assign an on-site safety coordinator. This assignment shall be made in writing to the Contractor before work begins. Subcontractor will immediately notify Contractor of any accidents on the jobsite. Subcontractor is responsible to maintain all OSHA logs and records in accordance with Federal Regulations. The Subcontractor shall be held responsible for any fines, etc. issued by OSHA against the Contractor as a result of violations caused by the Subcontractor. A Deductive Change Order will be issued to the Subcontract to allow for reimbursement of these fines.

**ARTICLE XIX:**
In the event that there is any conflict between the terms of the Subcontract, the terms of an attachment to the Subcontract, and /or the terms of the Principal Contract, the most stringent requirement shall take precedence. In the event that the most stringent requirement is subject to interpretation, the order of precedence shall be the Subcontract, the Principal Contract, and then the attachments (if any) to the Subcontract.

Should any provision of this Subcontract, or any portion thereof, be at any time in conflict with any law, regulation, or ruling, such provision shall continue in effect only to the extent that it remains valid. In the event that any provision of this Subcontract, or any portion thereof, is or becomes inoperative, the remaining portions and all other provisions shall remain in full force and effect.

**ARTICLE XX:**                          **Supplemental Conditions**

1) The Subcontractor shall furnish drinking water for its own personnel

2) Hard hats, work boots and proper clothing (short pants, cut off pants or tank top shirt are prohibited) are required to be worn at all times while on the job. There is NO SMOKING, Radios, nor pets allowed within the Project limits nor within 25 feet of the Building. First offense will result in a verbal warning to the supervisor, second offense will result in a written warning to the supervisor, third notice will require removal from the job site of offending party.

3) SE/Z Construction LLC. has in place a Drug Free Work Place Policy in accordance with the "Drug Free Work Place Act" of 1988. All subcontractors on site shall comply with this Act.

4) The Subcontractor shall provide a list of emergency points of contact and their telephone numbers. This list shall include home office and site supervisor home telephone numbers.

5) Prior to use of cranes, shovels, derricks, draglines, pile driver equipped cranes, pile drivers, pavers, scrapers, graders, pans, loaders, dump trucks, trucks, automobiles, and any other motorized equipment for hauling, lifting, or transporting of material or personnel, the Subcontractor must contact the Contractor to obtain any required safety inspection checklist or other documentation required to be completed by the Subcontractor

6) The Subcontractor is to turn in daily reports to the Contractor's Field Superintendent each day. A sample form can be found at Attachment 4. Failure to turn in the daily reports is grounds for withholding payment to the Subcontractor.

7) READ, SIGN, AND RETURN NOTICE TO VENDORS AND SUBCONTRACTORS AS SHOWN AT ATTACHMENT 5. RETURN WITH SIGNED COPY OF THE SUBCONTRACT.

8) READ, SIGN, AND RETURN SUBCONTRACTOR CERTIFICATIONS/AGREEMENTS: SUBCONTRACTOR CERTIFICATION FOR THE STORM WATER POLLUTION PREVENTION PLAN AS SHOWN AT ATTACHMENT 6. RETURN WITH SIGNED COPY OF THE SUBCONTRACT. A COPY OF THE SWPPP WILL BE PROVIDED UPON REQUEST.

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract as of the day and year first above written.

Page No. 9

Exhibit 2

**EXHIBIT "D"**
**Page 23 of 52**

Witness or Attest:

SE/Z Construction, LLC.

Signature: Steve Zambarano

Title: President

Date: 4/2/13

Xtreme Electric, Inc.

Signature: _____

Title: Owner

Date: 4-2-13

North Dakota Contractors License No. 46571 Class A

Xtreme Electric, Inc.

THE FOLLOWING IS TO BE COMPLETED BY THE SUBCONTRACTOR WHEN RETURNING THIS SUBCONTRACT AGREEMENT FOR FULL EXECUTION BY THE CONTRACTOR.

FEDERAL EMPLOYER NO.: 45-4878233

DATE QUALIFIED TO DO BUSINESS: April 2012

PUBLIC WORKS CONTRACTOR LICENSE NO.: _____ (LIMIT: _____)

NORTH DAKOTA CONTRACTORS LICENSE NO.: 47012 Class A

BUSINESS OPERATES AS: (PARTNERSHIP ___) (SOLE PROPRIETORSHIP ___) (CORPORATION ___) (LIMITED LIABILITY CORPORATION X) (OTHER ___ (specify)_____)

BUSINESS CLASSIFICATION: (LARGE BUSINESS ___), (SMALL BUSINESS X), (DBE ___), (WBE ___),

(DVBE ___), (MBE ___), (HUBZone Small Business ___), (OTHER specify ___)

POINT OF CONTACT INFORMATION REQUIRED:

NAME: Blake Larsen          TITLE: Owner

OFFICE PHONE NUMBER: _____    CELL PHONE NUMBER: 208-313-3003

E-MAIL ADDRESS: Xtreme3003@gmail.com

THE SUBCONTRACTOR IS TO LIST ITS SUB-TIER SUBCONTRACTORS AND SUPPLIERS HERE IN ACCORDANCE WITH SUBCONTRACT ARTICLE VI; ARTICLE 9.

| Subtier Subcontractor/Supplier Name | Address | Phone Number |
|---|---|---|

Page No. 10

Exhibit 2

**EXHIBIT "D"
Page 24 of 52**

ATTACHMENT 1

TO SE/Z CONSTRUCTION, LLC
SUBCONTRACT

FOR

WILLISTON, ND FEDEX STATION 588

WILLISTON, ND

Exhibit 2

EXHIBIT "D"
Page 25 of 52



# QUOTE Proposal

**XTREME ELECTRIC CONTRACTORS**
• COMMERCIAL
• INDUSTRIAL
• INSTRUMENTATION
P.O. Box 86   Rigby, Idaho   83442

• AGRICULTURAL
• RESIDENTIAL

Owner: Blake Larsen
Cell: 208-313-3003
xtreme3003@gmail.com

Estimator: Randy Chambers
Cell: 406-698-4148
rchambers@xtremelec.com

**Project Name: FED EX Williston facility**

SEIZ Construction Mike Tracy
703 John Adams Parkway
Idaho Falls, Id 83401

703-528-9449   208-881-8423 cell

Proposal number:   435-4
DATE   January 17, 2013
EXPIRATION DATE   2/17/2013

## DESCRIPTION

21,860 sq foot office and warehouse facility
Includes:
Housing for electricians in Williston, Material and labor to install the following
1 Dry Type Transformer 3 PHASE, 75 KVA, 480 Primary Volts, 208Y/120 Secondary Volts, D: T-1
1 Dry Type Transformer 3 PHASE, 45 KVA, 480 Primary Volts, 208Y/120 Secondary Volts, NEMA 2 D: T-2
2 Heater Control NEMA 1 7.5 HP, 460V Designations: EF-04, F-1
3 Control Lighting, NEMA 1 460V, Designations: C3, C2 C3
1 TIME CLOCK and 1 PHOTO CELL
1 400 A Circuit Panel 18 Circuits, 480Y/277V 3Ph 4W, Designations: MSB
1 250A Branch Circuit Panel 42 Circuits, 480Y/277V 3Ph 4W, Designation: HA
1 225A Multi-Section Panel 2 Sections, 84 Circuits, 208Y/120V 3Ph 4W, Designations: LA1/LA2
1 225A Circuit Panel 30 Circuits, 225A, 208Y/120V 3Ph 4W, Designations: LB
1 600V 30A 3 Pole NEMA 1, Safety Switches Designations: F-1
4 240 V 30A 2pole NEMA 1 Safety Switches Designations: ACU-01, ACU-02, ACU-03, ACU-04
4 600V 30A 3 Pole Nema 3R Safety Switches Designations: CU-01, CU-02, CU-03, CU-04
Lights per schedule drawings 12/31
Exterior lights and branching per drawing
Fire Alarm System
Concrete pad for transformers and post bases for lights and head bolt heaters (pipe provided by other)
Traffic signal system per para 16.19
700 linear feet of trenching, 100A temp power service pole and connections
Revised with firm fire alarm quote, signal system and lighting quotes
Revised to add conduit for low voltage temperature control connections.
Revised to provide 3)- 1/2 H 120V 1 Ph high velocity fans and switches and connections
Revised to add Radiant Heater and element above Waiting Package Cage
* no Explosion proof light fixtures identified
* no security hardware provided, wiring to devices is provided

TOTAL ████████ $326,500

*Base Bid excludes:*
1. Performance and payment bond.
2. Temporary power to subcontractor's construction trailers.
3. Temperature control conduit and wire.
4. Temporary sanitary facilities.
5. Furnishing and installing exhaust fans.
6. All utility company fees (service connection fees, winter construction fees, fuel charges, etc.) and temporary power consumption fees.
7. Providing garbage dumpster or landfill fees for our waste; cleanup or rubbish removal, other than to haul our own identifiable scrap to one central location for disposal by others
8. Telephone and data head-end termination and equipment, telephone and data hubs, routers, switches and telephone and data wiring unless specifically identified and included in bid.
9. Motor control for all mechanical systems (VFD's provided by HVAC contractor).
10. Fire alarm system and all conduit/cabling associated with fire alarm system unless specifically identified and included in bid.
11. Security System
12. Connection to equipment shown on plans without electrical designations taken them.
13. Bonding not included

*Terms and Conditions:*
1. This quote is valid for 30 days. After 30 days, we reserve the right to adjust our bid to reflect current material prices. A down payment of 16% of the contract price is required at time of execution of contract.
2. Insurance Provided: Workers Compensation: State Limits/Requirements; Automobile Policy: $1,000,000 combined single limit; General Liability: $1,000,000 per occurrence $2,000,000 aggregate. Additional fee shall be charge _____ for additional insured above these stated requirements.
3. Retainage: No more than five percent (5%)

Quotation prepared by: Randy Chambers _____

1/17/2013   To accept this quotation; sign here, date and return: _____
THANK YOU FOR YOUR BUSINESS!

*(handwritten notes at right:)*
+ 24,000  No Down
$228,750  Signal &
Control
# = See
x-treme's Signal
Notes 1/18/13

Exhibit 2

**EXHIBIT "D"
Page 26 of 52**

## SCHEDULE

1.    The work to be performed under the Agreement shall be commenced immediately after Owner gives the Contractor notice to proceed.

2.    Subject to adjustments authorized by Owner, Substantial Completion and Certificate of Occupancy shall be achieved no later than August 30, 2013.  Subject to adjustments authorized by Owner, completion of the project punchlist generated August 30, 2013, shall be achieved no later than September 30, 2013.

3.    The following Project deadlines will be met or Contractor will be in default:

A.    **March 8, 2013 (Material Handling):** So that the building shall be erected, weather-tight with concrete floor in place with permanent power available, all overhead doors and personnel doors in place, building secure, and Lessee's conveyor system may be timely installed, Contractor shall complete the work in the following categories:

1.    Earthwork shall be completed;

2.    Foundation, concrete pillars and concrete perimeter walls shall be in place;

3.    Distribution Area concrete slab shall be in place;

4.    Distribution Area floor slab shall be sealed;

5.    Building structure, roofing, and wall panels shall be erected, and roof insulation installed;

6.    All overhead and personnel doors, including hardware (lockable), as required to provide a secure building shall be in place;

7.    Underslab utilities, trench drains, and trench drain covers shall be in place;

8.    Permanent electric power distribution, equipment and devices shall be available with main power panel energized;

9.    All Distribution Area overhead utilities, including conduit and wiring, shall be installed;

10.    Distribution Area overhead lighting shall be operational;

11.    Fire protection piping shall be installed;

12.    Contractor shall provide a drivable access way from the existing facility entrance to one (1) <u>new</u> overhead dock door and one (1) <u>new</u> drive-in door for truck deliveries of conveyor system equipment; and

13.    Site fencing modifications, if any, shall be completed in order to maintain

Exhibit 2

**EXHIBIT "D"
Page 27 of 52**

site security.

B.      **August 30, 2013 (Certificate of Occupancy):**    In addition to those items required for the receipt of Certificate of Occupancy, the following work shall be completed:

    1.   Remaining earthwork shall be completed;

    2.   Remaining Distribution Area overhead utilities shall be operational;

    3.   Dock equipment, including bent checkered plates, dock bumpers and dock seals, and dock lights and fans, shall be installed;

    4.   Office Area expansion and modifications shall be installed; and

    5.   Asphalt yard shall be completed.

4.    In addition to all other rights and remedies of Owner hereunder, Contractor agrees to indemnify and hold harmless Owner from and against the rights of Tenant under those portions of the lease between Owner and Lessee for any delays in completion of the Project. Those remedies include the right of Lessee to complete the work and charge the costs to Owner (Lessor), the right of Lessee to collect liquidated damages from Owner (Lessor) in the amount of $2,500 per day, and the right of Lessee to terminate the Lease. This indemnification will extend to all claims, damages, losses and expenses, including reasonable attorney's fees.

In addition to the indemnification set forth above, Contractor shall pay to Owner the sum of $2,500 as liquidated damages for each calendar day of delay beyond the dates required in Paragraphs 2 and 3 above. The sum set forth herein is intended to compensate Owner for lost rent and interest charges and other expenses and not as a penalty.

Exhibit 2

**EXHIBIT "D"
Page 28 of 52**

# ATTACHMENT 2

## TO SE/Z CONSTRUCTION, LLC
### SUBCONTRACT

### FOR

### WILLISTON, ND FEDEX STATION 588

### WILLISTON, ND

Exhibit 2

## UNCONDITIONAL SUBCONTRACTOR, LOWER-TIER SUBCONTRACTOR
## OR MATERIALMAN INTERIM LIEN/CLAIM WAIVER

*In consideration of the sum of $_____ by _____ (the 'Payee")
from _____ (the 'Payor'), receipt of which is hereby acknowledged,
Payee hereby waives, releases and relinquishes to the extent of the amount set forth above, any and all
claims or rights of lien which the undersigned may now have by reason of any labor, material, supplies,
equipment, or work furnished to the construction project commonly known as Williston, ND Fed Ex
Ground Distribution Facility Station 58B*(the "Project") and located at Bakken Industrial Park, Lot 4,
Block 4, Williston ND, 58801, from project inception through _____ 2013 . If this
constitutes a partial payment for materials or services rendered through the above date, the
undersigned states that the remaining balance due for materials or services rendered through the above
date is $_____.*

*Further, Payee, in consideration of the payment of said sum does hereby release and forever discharge
FedEx Ground Package System, Inc., The Westmoreland Company (the 'Owner'), the Payor, and SE/Z
Construction, LLC (the 'General Contractor' if different from Payor), and their respective successors,
affiliates, agents, and assigns, all of their respective subsidiaries, general partners, lenders, and
employees from any and all claims, demands, suits, causes of action of whatever kind or nature, whether
based on contract, tort or otherwise, which now exist or which arise out of or which are in any way
connected to the portion of the Project performed by Payee, except for those claims specifically reserved
below:*

NONE

SUBCONTRACTOR,   LOWER-TIER   SUBCONTRACTOR   OR
MATERIALMAN:

BY: _____

ITS: _____
     *A duly authorized and constituted representative*

DATED: _____

State of Idaho

County of _____

Sworn to and subscribed before me, a Notary Public on this _____day of_____, 201\_\_

_____
     *Notary Public*

Exhibit 2

**EXHIBIT "D"
Page 30 of 52**

# ATTACHMENT 3

## TO SE/Z CONSTRUCTION, LLC
## SUBCONTRACT

### FOR

## WILLISTON, ND FEDEX STATION 588

## WILLISTON, ND

Exhibit 2

**EXHIBIT "D"**
**Page 31 of 52**

XTREM-2    OP ID: JJM

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
01/25/13

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | | |
|---|---|---|---|---|
| Premier Insurance - BF | Phone: 208-782-1464 | **CONTACT NAME:** | | |
| P.O. Box 968 | Fax: 208-782-1062 | **PHONE (A/C, No, Ext):** | | **FAX (A/C, No):** |
| Blackfoot, ID 83221 | | **E-MAIL ADDRESS:** | | |
| Tracy Hawker | | | | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| | | INSURER A : United Fire & Casualty | 10324 |
| **INSURED** Xtreme Electric Contractors LLC dba XEC, LLC 5835 Interstate Ave - Unit D Billings, MT 59101 | | INSURER B : Tower Insurance Company of | |
| | | INSURER C : | |
| | | INSURER D : | |
| | | INSURER E : | |
| | | INSURER F : | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE X OCCUR | X | | 60424613 | 01/01/13 | 01/01/14 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY ☐ PRO-JECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | $ | |
| A | **AUTOMOBILE LIABILITY** X ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS | | | 60424613 | 01/01/13 | 01/01/14 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | $ | |
| | **UMBRELLA LIAB** ☐ OCCUR **EXCESS LIAB** ☐ CLAIMS-MADE ☐ DED ☐ RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | $ | |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | WCN000010403 | 08/15/12 | 08/15/13 | X WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |
| A | Equipment Floater | | | 60424613 | 01/01/13 | 01/01/14 | | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, If more space is required)**
Project: Willston, ND FedEx Ground Co-Location Manual Station Expansion
Station Number 588. Location: Bakken Industrial Park, Lot 4 Block 4,
Williston, ND  58801. FedEx Ground Package Systems, Inc., The Westmoreland
Company, Inc., and SE/Z Construction, LLC are Additional Insured per Form
CG7151 attached.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| | **SEZCONS** | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| SE/Z Construction, LLC 705 John Adams Parkway Idaho Falls, ID 83401 | | |
| | | **AUTHORIZED REPRESENTATIVE** Tracy Hawker |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

Exhibit 2

**EXHIBIT "D"**
**Page 32 of 52**

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 20 10 10 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name of Person or Organization: |
| --- |
|   |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2. Exclusions

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

# Example

Exhibit 2

EXHIBIT "D"
Page 33 of 52

# ATTACHMENT 4

## TO SE/Z CONSTRUCTION, LLC SUBCONTRACT

### FOR

### WILLISTON, ND FEDEX STATION 588

### WILLISTON, ND

Exhibit 2

| DAILY LOG – FORMAL CONTRACT | SITE LOCATION: BAKKEN INDUSTRIAL PARK, WILLISTON, ND |
|---|---|
| PROJECT TITLE: WILLISTON, ND FED EX GROUND DIST. FACILITY | CONTRACTOR NAME: |
| WEATHER:           TEMPERATURE: | CONTRACT NO.:           NA |
| DATE:    DAY: (CIRCLE ONE)    PROJECT DAY: | PROJECT NO.:           NA |

| CONTRACTOR NAME | SCOPE OF WORK: | # OF WORKERS ON SITE: | LOCATION & DESCRIPTION OF WORK: |
|---|---|---|---|
|  |  |  |  |

DAY: M T W T F S S   OF ____

| TOTAL | DELIVERY OF MATERIALS |
|---|---|
| VISITORS ON PROJECT: | EQUIPMENT ON SITE: |
| DIRECTIONS FROM A/E: | IMPACTS / DELAYS: |

MISC. COMMENTS:

| SIGNATURE OF SUBCONTRACTOR |  SIGNATURE OF SUPERVISOR |
|---|---|
| DATE: | DATE: |

Exhibit 2

**EXHIBIT "D"**
**Page 35 of 52**

# ATTACHMENT 5

# TO SE/Z CONSTRUCTION, LLC
## SUBCONTRACT

### FOR

## WILLISTON, ND FEDEX STATION 588

### WILLISTON, ND

Exhibit 2

**EXHIBIT "D"**
**Page 36 of 52**

NOTICE TO VENDORS AND SUBCONTRACTORS

TO: _____SE/Z Construction, LLC_____

DATE: Uphil 2, 2013

SE/Z Construction, LLC is a government contractor subject to Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973, as amended, and Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 (38 USC 2012) and their implementing regulations.

As a government contractor, SE/Z Construction, LLC will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, disabled veteran or veteran of the Vietnam era status; or because of physical or mental handicap. We take Affirmative action to ensure that applicants considered for employment and employees are treated without regard to race, color, religion, sex, national origin, veteran or handicap status. Such action shall include, but not be limited to the following actions: employment, upgrading, demotions, transfer, recruitment, recruitment advertising, layoff, termination, rates or pay and/or other forms of compensation, and selection for training including apprenticeship.

All implementing regulations of the above are hereby incorporated by reference.

This letter is to notify you that as a vendor/subcontractor to SE/Z Construction, LLC you are subject to the above referenced regulations, as applicable. Please sign, date, and return this letter indicating that you are in compliance with the Order and Acts referenced in this Notice.

Returned By: _____Xtreme Electric, Inc._____

Company

Signature: _____   Date: 4-2-13

Exhibit 2

**EXHIBIT "D"**
**Page 37 of 52**

ATTACHMENT 6

# TO SE/Z CONSTRUCTION, LLC
## SUBCONTRACT

FOR

WILLISTON, ND FEDEX STATION 588

WILLISTON, ND

Exhibit 2

**EXHIBIT "D"**
**Page 38 of 52**

## Appendix H – Subcontractor Certifications/Agreements

SUBCONTRACTOR CERTIFICATION
STORMWATER POLLUTION PREVENTION PLAN

Project Title: FedEx Ground Distribution Center – Williston, ND

Operator(s):    Mike Tracy – SE/Z Construction

As a subcontractor, you are required to comply with the Stormwater Pollution Prevention Plan (SWPPP) for any work that you perform on-site. Any person or group who violates any condition of the SWPPP may be subject to substantial penalties or loss of contract. You are encouraged to advise each of your employees working on this project of the requirements of the SWPPP. A copy of the SWPPP is available for your review at the office trailer.

Each subcontractor engaged in activities at the construction site that could impact stormwater must be identified and sign the following certification statement:

I certify under the penalty of law that I have read and understand the terms and conditions of the SWPPP for the above designated project and agree to follow the BMPs and practices described in the SWPPP.

This certification is hereby signed in reference to the above named project:

Company:  XTRєме Electric Contractors

Address:  Po Box  343   Iona, ID 83427

Telephone Number:  406-437-1835

Type of construction service to be provided:  electrical.

Signature:  _____

Title:  owner

Date:  4-2-13

Exhibit 2

**EXHIBIT "D"**
**Page 39 of 52**

## SE/Z CONSTRUCTION, L.L.C.

### 705 JOHNS ADAMS PARKWAY
### IDAHO FALLS, IDAHO 83401
### TELEPHONE: 208-528-9449
### CHANGE ORDER NO. 1

Monday, September 02, 2013

Randy Chambers
Xtreme Electric, Inc.
PO Box 343
Iona, ID 83427                               Fax:

Re: Williston, ND FedEx Facility
    FedEx Station No. 588
    Williston, ND 58801

Contract For: Electrical
SE/Z Accounting Information: Subjob No.: Williston FedEx-01, Phase Code: 16100

You are hereby directed to make the following change(s) in this Contract:
We are hereby adding $9,683.00 to your Subcontract to Furnish and Install an Emergency Generator
Disconnect as directed by the Owner. Reference your cost proposal dated April 26, 2013 as attached.

In consideration of this Change Order, the Subcontractor hereby agrees that compensation provided
herewith is complete and is an equitable adjustment for the subcontractor's work, delays and impacts
(direct and indirect). The Subcontractor hereby releases SE/Z Construction, L.L.C. and The
Westmoreland Company from any and all liability under this Subcontract for further equitable adjustments
to such facts or circumstances giving rise to this Change Order and scope of work. This Change Order is
for full and final accord with the work described above.

This additional work shall be in accordance with your original Subcontract, Plans and Specifications.

| | |
|---|---|
| ORIGINAL CONTRACT AMOUNT: | $228,780.00 |
| CHANGE BY PRIOR CHANGE ORDER(S): | $    -0- |
| CONTRACT SUM PRIOR TO THIS CHANGE: | $228,780.00 |
| CONTRACT SUM WILL BE CHANGED BY: | $   9,683.00 |
| NEW CONTRACT SUM WITH THIS CHANGE: | $238,463.00 |
| THE CONTRACT TIME WILL BE UNCHANGED | |

*Sign & return 1 copy to SE/Z Construction. Payment cannot be made until a signed copy is
returned.*

SE/Z Construction, L.L.C.                    Subcontractor

                                             XTREME Electric (Contractor)
Steve Zambarano                              Name:
President                                    Title: Logistics Manager

cc: sub file
    field file
    S. Keuffer

North Dakota Contractors License No. 46571 Class A

Exhibit 2

**EXHIBIT "D"**
**Page 40 of 52**



| Commercial Industrial ID 208.313.3003 | **XTREME ELECTRIC CONTRACTORS** | Agricultural Residential Mt 406.437.1835 |

PO Box 343  Iona, ID 83427-0343

# CHANGE ORDER FORM

DATE:   26-Apr                                                    Change Order #  41304-01

**PROJECT:** FedEx Williston Facility
**Description:**
Add a stand alone manual switch enabling generator to be used for power outages

| Qty | Description | | |
|-----|-------------|---|---|
| 22 | Labor (12 hours @$90/hour) | $ | - |
| 1 | Circuit breaker Manual Disconnect Switch | $ | 3,900.00 |
| 50 | Conduit and wire to connect (ft) | $ | 200.00 |
| 125 | Conduit and wire to Generator location (ft) | $ | 750.00 |
| 1 | Material handling mark up | $ | 813.00 |
| 1 | Overhead | $ | 995.47 |
| | | $ | - |

4-6 week delivery ARO

|  |  |
|---|---|
| **Total Material including Tax:** | $  7,203.31 |
| **Total Labor:** | $  1,980.00 |
| **Other:** | $  500.00 |
| **Total:** | $  9,683.31 |

Xtreme Electric is hereby authorized to proceed with the change order as described herein.  It is agreed
that costs or credits as described herein are to be in addition to the original contract amount.

Upon authorized signature below, this Change Order and attachments shall become part of the original
contract documents and all terms and conditions of the Original Contract, not inconsistent with this Change
Order, shall apply.

| PO (Number if necessary) | Print Name |
|---|---|
| Date: | Signature |

THE NUMBER OF DAYS ADDED TO SCHEDULE SHALL BE DETERMINED AFTER RECEIPT OF APPROVED
CHANGE ORDER AND MATERIALS TO IMPLEMENT THE CHANGE.

Exhibit 2

**EXHIBIT "D"**
**Page 41 of 52**

## SE/Z CONSTRUCTION, L.L.C.

### 705 JOHNS ADAMS PARKWAY
### IDAHO FALLS, IDAHO 83401
### TELEPHONE: 208-528-9449
### CHANGE ORDER NO.  2

Wednesday, October 09, 2013

Randy Chambers
Xtreme Electric, Inc.
PO Box 343
Iona, ID 83427                                    Fax:

Re: Williston, ND FedEx Facility
    FedEx Station No. 508
    Williston, ND 58801

Contract For: Electrical
SE/Z Accounting Information: Subjob No.: Williston FedEx-04, Phase Code: 16100

You are hereby directed to make the following change(s) in this Contract:
We are hereby adding $2,585.00 to your Subcontract to Furnish and Install power to the Owner
Furnished Fan at the Conveyor Line as directed by the Owner. Reference your cost proposal dated Sept.
26, 2013 as attached.

In consideration of this Change Order, the Subcontractor hereby agrees that compensation provided
herewith is complete and is an equitable adjustment for the subcontractor's work, delays and impacts
(direct and indirect). The Subcontractor hereby releases SE/Z Construction, L.L.C and The
Westmoreland Company from any and all liability under this Subcontract for further equitable adjustments
to such facts or circumstances giving rise to this Change Order and scope of work. This Change Order is
for full and final accord with the work described above.

This additional work shall be in accordance with your original Subcontract, Plans and Specifications.

| | |
|---|---|
| ORIGINAL CONTRACT AMOUNT: | $228,780.00 |
| CHANGE BY PRIOR CHANGE ORDER(S): | $   9,683.00 |
| CONTRACT SUM PRIOR TO THIS CHANGE: | $238,463.00 |
| CONTRACT SUM WILL BE CHANGED BY: | $   2,585.00 |
| NEW CONTRACT SUM WITH THIS CHANGE: | $241,048.00 |
| THE CONTRACT TIME WILL BE UNCHANGED | |

*Sign & return 1 copy to SE/Z Construction. Payment cannot be made until a signed copy is
returned.*

SE/Z Construction, L.L.C.                        Subcontractor

Steve Zambarano                                  Name: RANDY CHAMBERS
President                                        Title: ESTIMATOR

cc: sub file
    field file
    S. Keuffer

North Dakota Contractors License No. 46571 Class A

Exhibit 2

**EXHIBIT "D"**
**Page 42 of 52**

## SE/Z CONSTRUCTION, L.L.C.

### 705 JOHNS ADAMS PARKWAY
### IDAHO FALLS, IDAHO 83401
### TELEPHONE: 208-528-9449

## CHANGE ORDER NO.  3

Wednesday, October 09, 2013

Randy Chambers
Xtreme Electric, Inc.
PO Box 343
Iona, ID  83427                                   Fax:

Re: Williston, ND FedEx Facility
    FedEx Station No. 588
    Williston, ND 58801

Contract For: Electrical
SE/Z Accounting Information: Subjob No.: Williston FedEx-04, Phase Code: 16100

You are hereby directed to make the following change(s) in this Contract:
We are hereby adding $875.00 to your Subcontract to Furnish and Install power to the Records Storage
Cage as directed by the Owner. Reference your cost proposal dated Sept. 19, 2013 as attached.

In consideration of this Change Order, the Subcontractor hereby agrees that compensation provided
herewith is complete and is an equitable adjustment for the subcontractor's work, delays and impacts
(direct and indirect). The Subcontractor hereby releases SE/Z Construction, L.L.C. and The
Westmoreland Company from any and all liability under this Subcontract for further equitable adjustments
to such facts or circumstances giving rise to this Change Order and scope of work. This Change Order is
for full and final accord with the work described above.

This additional work shall be in accordance with your original Subcontract, Plans and Specifications.

| | |
|---|---|
| ORIGINAL CONTRACT AMOUNT: | $228,780.00 |
| CHANGE BY PRIOR CHANGE ORDER(S): | $ 12,268.00 |
| CONTRACT SUM PRIOR TO THIS CHANGE: | $241,048.00 |
| CONTRACT SUM WILL BE CHANGED BY: | $     875.00 |
| NEW CONTRACT SUM WITH THIS CHANGE: | $241,923.00 |
| THE CONTRACT TIME WILL BE UNCHANGED | |

*Sign & return a copy to SE/Z Construction. Payment cannot be made until a signed copy is
returned.*

SE/Z Construction, L.L.C.                          Subcontractor

Steve Zambarano                                    Name: RANDY CHAMBERS
President                                          Title: ESTIMATOR

cc: sub file
    field file
    S. Keuffer

North Dakota Contractors License No. 48571 Class A

## SE/Z CONSTRUCTION, L.L.C.

### 705 JOHNS ADAMS PARKWAY
### IDAHO FALLS, IDAHO 83401
### TELEPHONE: 208-528-9449
## CHANGE ORDER NO.  4

Friday, October 25, 2013

Randy Chambers
Xtreme Electric, Inc.
PO Box 343
Iona, ID  83427                                        Fax:

Re: Williston, ND FedEx Facility
    FedEx Station No. 588
    Williston, ND 58801

Contract For: Electrical
SE/Z Accounting Information: Subjob No.: Williston FedEx-08, Phase Code: 16100

You are hereby directed to make the following change(s) in this Contract:
We are hereby adding $1,245.00 to your Subcontract to Furnish and Install retracting cord reels as
requested by the Owner.

In consideration of this Change Order, the Subcontractor hereby agrees that compensation provided
herewith is complete and is an equitable adjustment for the subcontractor's work, delays and impacts
(direct and indirect). The Subcontractor hereby releases SE/Z Construction, L.L.C. and The
Westmoreland Company from any and all liability under this Subcontract for further equitable adjustments
to such facts or circumstances giving rise to this Change Order and scope of work. This Change Order is
for full and final accord with the work described above.

This additional work shall be in accordance with your original Subcontract, Plans and Specifications.

| | |
|---|---|
| ORIGINAL CONTRACT AMOUNT: | $228,780.00 |
| CHANGE BY PRIOR CHANGE ORDER(S): | $ 13,143.00 |
| CONTRACT SUM PRIOR TO THIS CHANGE: | $241,923.00 |
| CONTRACT SUM WILL BE CHANGED BY: | $  1,245.00 |
| NEW CONTRACT SUM WITH THIS CHANGE: | $243,168.00 |
| THE CONTRACT TIME WILL BE UNCHANGED | |

***Sign & return 1 copy to SE/Z Construction. Payment cannot be made until a signed copy is
returned.***

SE/Z Construction, L.L.C.                          Subcontractor


Steve Zambarano                                    Name:
President                                          Title:

cc: sub file
    field file
    S. Keuffer

North Dakota Contractors License No. 46571 Class A

Exhibit 2

**EXHIBIT "D"
Page 44 of 52**

## NOTICE OF INTENTION TO FILE CONSTRUCTION LIEN

TO:    SE/Z Construction, LLC
       705 John Adams Parkway
       Idaho Falls, ID 83401

TO:    The Westmoreland Company, Inc.
       Registered Agent: Karl W Leo
       200 Randolph Avenue
       Huntsville, AL 35801

NOTICE HEREBY IS GIVEN of the intention of Xtreme Electric Contractors, LLC to claim a construction lien for the agreed price and the value of all contributions for improvements upon the following described premises located in the County of Williams in the State of North Dakota, to Wit:

Station 588 at Bakken Industrial Park Subdivision, Lot 4, Block 4, Corner of Energy Street and Oil Avenue, Williston, ND 58801

YOU FURTHER ARE NOTIFIED that the amount of said contribution for materials and labor furnished for improvements upon the above-described premises for which payment is due and owing is the sum of **$151,526.60**, that such labor and materials were furnished pursuant to an agreement with **SE/Z Construction, LLC**, and that the date of the first contributions performed pursuant to said agreement by Xtreme Electric Contractors, LLC, was **April 5th, 2013**, and that the date of the last contributions performed was the **7th day of October, 2013**. Additional amounts for finance charges, legal fees, and other charges may also be sought.

YOU FURTHER ARE NOTIFIED that a construction lien against the above-described premises, including the building and other improvements, will be perfected according to law unless the above account shall have been paid; and that the person in possession of said premises, to the best of knowledge of the undersigned is **The Westmoreland Company, Inc.**

DEMAND IS MADE upon **The Westmoreland Company, Inc** as owner of record of the premises, for payment of said account. If payment is not made within **ten (10) days** of mailing of this notice, a lien will be perfected against the premises pursuant to law.

Dated this 29th day of October, 2013

Xtreme Electric Contractors, LLC

By: _____
Blake Larsen, Member/Principal

STATE OF IDAHO      )
                    ss
COUNTY OF BINGHAM   )

The foregoing instrument was acknowledged before me this 29th day of October, 2013, by BLAKE LARSEN of XTREME ELECTRIC CONTRACTORS, LLC, and says that he is the principal and member of the claimant named in the foregoing Notice of Intention to File Construction Lien; that he has read the foregoing Notice of Intention to File Construction Lien and knows the contents thereof; that the statements contained therein are true to his knowledge; and that the sum of $151,526.60 claimed therein is justly due and owing.

SUBSCRIBED AND SWORN TO before me this _____ day of October, 2013.

_____
Notary Public for Idaho (SEAL)
Residing at Blackfoot
My Commission Expires: _____

Exhibit 3

**EXHIBIT "D"**
**Page 45 of 52**



**UNITED STATES**
**POSTAL SERVICE.**

Date: December 18, 2013

Misty Taylor:

The following is in response to your December 18, 2013 request for delivery information on your Certified Mail™ item number 70122920000153184629. The delivery record shows that this item was delivered on December 2, 2013 at 11:03 am in IDAHO FALLS, ID 83401. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

Exhibit 3

**EXHIBIT "D"**
**Page 46 of 52**



Exhibit 3

**EXHIBIT "D"**
**Page 47 of 52**

## NOTICE OF INTENTION TO FILE CONSTRUCTION LIEN

TO:   SE/Z Construction, LLC
      705 John Adams Parkway
      Idaho Falls, ID 83401

TO:   The Westmoreland Company, Inc.
      Registered Agent: Karl W Leo
      200 Randolph Avenue
      Huntsville, AL 35801

NOTICE HEREBY IS GIVEN of the intention of Xtreme Electric Contractors, LLC to claim a construction lien for the agreed price and the value of all contributions for improvements upon the following described premises located in the County of Williams in the State of North Dakota, to Wit:

Station 588 at Bakken Industrial Park Subdivision, Lot 4, Block 4, Corner of Energy Street and Oil Avenue, Williston, ND 58801

YOU FURTHER ARE NOTIFIED that the amount of said contribution for materials and labor furnished for improvements upon the above-described premises for which payment is due and owing is the sum of **$151,526.60**, that such labor and materials were furnished pursuant to an agreement with **SE/Z Construction, LLC**, and that the date of the first contributions performed pursuant to said agreement by Xtreme Electric Contractors, LLC, was **April 5th,2013**, and that the date of the last contributions performed was the **7th day of October, 2013**. Additional amounts for finance charges, legal fees, and other charges may also be sought.

YOU FURTHER ARE NOTIFIED that a construction lien against the above-described premises, including the building and other improvements, will be perfected according to law unless the above account shall have been paid; and that the person in possession of said premises, to the best of knowledge of the undersigned is **The Westmoreland Company, Inc.**

DEMAND IS MADE upon **The Westmoreland Company, Inc** as owner of record of the premises, for payment of said account. If payment is not made within **ten (10) days** of mailing of this notice, a lien will be perfected against the premises pursuant to law.

Dated this 29th day of October, 2013

                    Xtreme Electric Contractors, LLC

                    By: _____
                    Blake Larsen, Member/Principal

STATE OF IDAHO        )
                       ss
COUNTY OF BINGHAM     )

The foregoing instrument was acknowledged before me this 29th day of October, 2013, by BLAKE LARSEN of XTREME ELECTRIC CONTRACTORS, LLC, and says that he is the principal and member of the claimant named in the foregoing Notice of Intention to File Construction Lien; that he has read the foregoing Notice of Intention to File Construction Lien and knows the contents thereof; that the statements contained therein are true to his knowledge; and that the sum of $151,526.60 claimed therein is justly due and owing.

SUBSCRIBED AND SWORN TO before me this ____ day of October, 2013.

                    _____
                    Notary Public for Idaho (SEAL)
                    Residing at Blackfoot
                    My Commission Expires: _____

**EXHIBIT "D"**
**Page 48 of 52**

Exhibit 4

Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND



**UNITED STATES**
**POSTAL SERVICE**

Date: November 4, 2013

Misty Taylor:

The following is in response to your November 4, 2013 request for delivery information
on your Certified Mail™ item number 70121640000110281293. The delivery record
shows that this item was delivered on November 4, 2013 at 4:11 pm in HUNTSVILLE, AL
35801. The scanned image of the recipient information is provided below.

Signature of Recipient :


Address of Recipient :


Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal
representative.

Sincerely,
United States Postal Service

Exhibit 4

**EXHIBIT "D"**
**Page 49 of 52**

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

HUNTSVILLE AL 35801

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $1.25 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $4.81 |

*Sent To* The Westmoreland Co., Inc.
*Street, Apt No.; or PO Box No.* 200 Randolph Ave.
*City, State, ZIP+4* Huntsville, AL 35801

EXHIBIT "D"
Page 50 of 52

Exhibit 4



**774453**
Page: 1 of 3
11/20/2013 2:03 PM
WILLIAMS COUNTY, ND                         CL          $16.00

# CONSTRUCTION LIEN

I, Blake Larsen, on behalf of XEC, LLC also known as Xtreme Electric Contractors, LLC, whose address is P.O. Box 343, ID 83427-0343, hereby claims a construction lien pursuant to Section 35-27 of the North Dakota Century Code.

I claim this lien against the property located at 513 Energy Street, Williston, North Dakota and more particularly described as:

> Station 588 at Bakken Industrial Park Subdivision, Lot 4, Block 4, Corner of Energy Street and Oil Avenue, Williston, ND 58801.

The owner of the property, to the best of undersigned's knowledge, is The Westmoreland Company, Inc., Registered Agent: Kari W. Leo, 200 Randolph Avenue, Huntsville, AL 35801; Registered Agent: CT Corporation System, 314 E. Thayer Ave., Bismarck, ND 58501-4018.

At the request of the general contractor, SE/Z Construction, LLC, 705 John Adams Parkway, Idaho Falls, ID 83401, I provided the following to the property listed above:

> Labor and material to complete the electrical portion of a facility at the location listed above.

The amount remaining unpaid after deducting change orders and finance charges is $151,526.60.

I first furnished these services and materials on April 5, 2013 and last furnished services or materials on October 7, 2013.

I provided a Notice of Intention to File Construction Lien to the General Contractor, SE/Z and to the Owner, The Westmoreland Company, Inc., by Certified Mail at least ten days prior to filing this lien.

DATED this November 15, 2013.

by: _____

Blake Larsen, Authorized Representative of XEC, LLC

## VERIFICATION

STATE OF IDAHO   }
                      :ss.
County of Bingham   }

Blake Larsen, authorized agent of XEC, LLC, being first duly sworn upon oath deposes and says:

Exhibit 5

**EXHIBIT "D"**
**Page 51 of 52**

Filed - Clerk of District Court
9/17/2014 5:17:10 PM
Williams County, ND



**774453**
Page: 2 of 3
11/20/2013 2:03 PM
CL        $16.00

WILLIAMS COUNTY, ND

That he is the authorized agent of the Claimant herein, and makes this verification that he has read the foregoing Construction Lien and knows the contents thereof and believes the same to be true and just.

Blake Larsen

SUBSCRIBED AND SWORN TO before me this _15th_ day of November, 2013

Daniel R Acevedo
Notary Public for Idaho
Residing at: Blackfoot, ID 83221
My Commission Expires: 4/16/2019

## NOTARIZATION

STATE OF IDAHO    )
                  :ss.
County of Bingham  )

On this _15th_ day of November, 2013, before me the undersigned, a Notary Public for Idaho, personally appeared Blake Larsen, known to me to be the authorized agent for XEC, LLC, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same on behalf of XEC, LLC. LLC.

IN WITNESS WHEREOF, I hereunto have set my hand and affixed my official seal the day and year first above written.

Daniel R Acevedo
Notary Public for Idaho
Residing at: Blackfoot, ID 85221
My Commission Expires: 4/16/2019

Exhibit 5

**EXHIBIT "D"**
**Page 52 of 52**